# Exhibit A

Case 1:21-cv-05297-AKH    Document 1-1    Filed 06/15/21    Page 2 of 114

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
------------------------------------------------------------------X
TOLL BROTHERS, INC., TOLL BROS., INC., TOLL
NY II LLC, TOLL BROTHERS REAL ESTATE, INC.,                    Index No.
and TOLL BROTHERS BARROW STREET, LLC,

                Plaintiff,                                    **SUMMONS**

        - against -

THE TRAVELERS INDEMNITY COMPANY OF
CONNECTICUT,

             Defendants.

------------------------------------------------------------------X

**TO THE ABOVE NAMED DEFENDANT:**

**YOU ARE HEREBY SUMMONED** to appear and answer the Complaint of the Plaintiffs TOLL

BROTHERS, INC., TOLL BROS., INC., TOLL NY II LLC, TOLL BROTHERS REAL

ESTATE, INC., and TOLL BROTHERS BARROW STREET, LLC, a copy of which is hereby

served upon you, and to serve copies of your Answer upon the undersigned attorneys within

twenty (20) days after the service of this summons, exclusive of the day of service (or within

thirty (30) days after the service is complete if this summons is not personally delivered to you

within the State of New York); and in case of your failure to appear or answer, judgment will be

taken against you by default for the relief demanded in the Complaint.

Plaintiffs designate New York County as the place of trial. The basis of venue designated is the

venue of the underlying action and that Defendant conducts business in New York County.

Dated: New York, New York
      February 26, 2021

1

#81921586_v1

**HOLLAND & KNIGHT, LLP**

By:     *Ellen S. Marcus*
        Robert S. Bernstein
        Ellen S. Marcus
        Attorneys for Plaintiffs
        TOLL BROTHERS, INC., TOLL
        BROS., INC., TOLL NY II LLC,
        TOLL BROTHERS REAL ESTATE,
        INC., and TOLL BROTHERS
        BARROW STREET, LLC
        31 West 52nd Street
        New York, New York 10019
        (212) 513-3358

TO:

The Travelers Indemnity Company of Connecticut
1 Tower Square
Hartford, CT 06183

2

#81921586_v1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------X
TOLL BROTHERS, INC., TOLL BROS., INC., TOLL
NY II LLC, TOLL BROTHERS REAL ESTATE, INC.,          Index No.
and TOLL BROTHERS BARROW STREET, LLC,

                                                   **COMPLAINT**

              Plaintiffs,

        - against -

THE TRAVELERS INDEMNITY COMPANY OF
CONNECTICUT,

              Defendant.

--------------------------------------------------------------------X

        Plaintiffs, TOLL BROTHERS, INC., TOLL BROS., INC., TOLL NY II LLC, TOLL

BROTHERS REAL ESTATE, INC. and TOLL BROTHERS BARROW STREET, LLC,

(collectively "TOLL") by their attorneys, Holland & Knight L.L.P., for their complaint for

Declaratory Judgment against Defendant, THE TRAVELERS INDEMNITY COMPANY

OF CONNECTICUT ("TRAVELERS") allege, upon information and belief, as follows:

## INTRODUCTION

        1.      This is an action for declaratory judgment to have declared the rights and other

legal relationships by and between TOLL and TRAVELERS pursuant to CPLR § 3001.

        2.      TRAVELERS issued commercial general liability insurance policy number

DTECO-2N400171 (the "Policy") covering the period from March 5, 2019 through March 5,

2020 to R&S United Services, Inc. ("R&S United"), which provides primary coverage to TOLL

as an additional insured(s), in connection with the underlying lawsuit captioned *Chmela v. Toll*

*NY II, L.P. et al.*, Index No. 151526/2020 (the "Underlying Suit"), currently pending in the

Supreme Court of New York, New York County.

1

#81925227_v1

Case 1:21-cv-05297-AKH    Document 1-1    Filed 06/15/21    Page 5 of 114

## PARTIES

3.      At all times hereinafter mentioned, Plaintiff TOLL BROTHERS, INC. was and is a foreign corporation organized and existing under the laws of the State of Delaware with its principle place of business located at 1140 Virginia Drive, Fort Washington, PA 19034.

4.      At all times hereinafter mentioned, Plaintiff TOLL BROS., INC. was and is a foreign corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principle place of business located at 1140 Virginia Drive, Fort Washington, PA 19034.

5.      At all times hereinafter mentioned, Plaintiff TOLL NY II LLC was and is a domestic limited liability company organized and existing under the laws of the State of New York.

6.      At all times hereinafter mentioned, Plaintiff TOLL BROTHERS BARROW STREET LLC was and is a domestic limited liability company organized and existing under the laws of the State of New York.

7.      At all times hereinafter mentioned, Plaintiff TOLL BROTHERS REAL ESTATE, INC. was and is a foreign corporation organized and existing under the laws of the Commonwealth of Pennsylvania with its principle place of business located at 1140 Virginia Drive, Fort Washington, PA 19034.

8.      TOLL NY II LLC, TOLL BROTHERS REAL ESTATE, INC., and TOLL BROTHERS BARROW STREET LLC are subsidiaries and/or affiliates of TOLL BROTHERS, INC. and TOLL BROS., INC.

9.      Upon information and belief, at all times hereinafter mentioned, Defendant TRAVELERS was and still is a domestic corporation with a principal place of business in the State of New York.

2

#81925227_v1

10.      Upon information and belief, at all times hereinafter mentioned, Defendant TRAVELERS was and still is a domestic corporation authorized to do business in the State of New York.

11.      Upon information and belief, at all times hereinafter mentioned, Defendant TRAVELERS was and still is a domestic corporation doing business in the State of New York.

12.      Upon information and belief, at all times hereinafter mentioned, Defendant TRAVELERS was and still is a foreign corporation.

13.      Upon information and belief, at all times hereinafter mentioned, Defendant TRAVELERS was and still is a foreign corporation with its headquarters located at 1 Tower Square, Hartford, CT 06183.

14.      Upon information and belief, at all times hereinafter mentioned, Defendant TRAVELERS was and still is a foreign corporation authorized to do business in the State of New York.

15.      Upon information and belief, at all times hereinafter mentioned, Defendant TRAVELERS was and still is a foreign corporation doing business in the State of New York.

## **JURISDICTION AND VENUE**

16.      Jurisdiction and venue are proper as this action involves TOLL's entitlement to insurance coverage under a policy issued by TRAVELERS for the claims made against TOLL in the Underlying Suit which is pending in New York County.

17.      TRAVELERS is authorized to do business within New York, has done or transacted business in New York and/or issued and/or sold the Policy to R&S United in New York.

3

#81925227_v1

## FACTS

### The Underlying Action

18.     On or about February 11, 2020, Scott Chmela ("Chmela") and Nicole Chmela commenced the Underlying Suit against TOLL NY II, L.P., TOLL BROTHERS REAL ESTATE, INC. and TOLL BROTHERS BARROW STREET, LLC.  In the complaint, Chmela seeks damages for injuries allegedly suffered at 77 Charlton Street, New York, New York (the Project") on November 25, 2019 (the "Claims") in the course of his employment by R&S United.  A copy of the Verified Complaint is annexed hereto as Exhibit A.

19.     On or about April 29, 2020, TOLL interposed a Verified Answer in the Underlying Suit.  A copy of the Verified Answer is annexed hereto as Exhibit B[1].

20.     The Underlying Suit is presently undisposed by trial, settlement or otherwise.

### TRAVELERS Commercial General Liability Policy

21.     R&S United entered a trade subcontract with TOLL NY II LLC dated March 30, 2018 (the "Contract") to perform work at the Project.  A copy of the Contract is annexed hereto as Exhibit D.

22.     Pursuant to the Contract, R&S United was required to maintain insurance coverage against claims for injuries by persons "which arise out or result from the performance of the work" by R&S United, or anyone employed by it, among others.

23.     Further, pursuant to the Contract, R&S United was required to name TOLL BROTHERS, INC., TOLL BROS, INC. and their subsidiaries and affiliates as additional insureds on all general liability policies.

---

[1] On October 29, 2013, the entity known as TOLL NY II, L.P. became TOLL NY II LLC.  (See NYS Department of State Division of Corporations Entity Information annexed hereto as Exhibit C).  Accordingly, this firm answered on behalf of TOLL NY II LLC f/k/a TOLL NY II L.P., TOLL BROTHERS REAL ESTATE, INC. and TOLL BROTHERS BARROW STREET, LLC.

4

#81925227_v1

24.     TRAVELERS issued the Policy to R&S United for the period of March 5, 2019 through March 5, 2020.

25.     The Certificate of Liability Insurance names TOLL BROTHERS, INC., TOLL BROS., INC and their subsidiaries and affiliates as additional insureds on the Policy.  A copy of the Certificate of Liability Insurance is annexed hereto as Exhibit E.

**TOLL's Tender to TRAVELERS**

26.     On or about February 13, 2020, TOLL sent letters to TRAVELERS and R&S United requesting coverage and benefits pursuant to the Policy.  Copies of the letters to TRAVELERS and R&S United are annexed hereto as Exhibits F and G, respectively.

27.     On or about March 20, 2020, TRAVELERS denied TOLL's tender request arguing that Mr. Chmela's injuries did not arise from R&S United's work because R&S United did not create the hole that Mr. Chmela allegedly fell through and that R&S United was not responsible for overall site safety at the Project.  A copy of TRAVELERS' March 20, 2020 letter is annexed hereto as Exhibit  H.

28.     The TRAVELERS' March 20, 2020 letter indicated that the Policy, in pertinent part, provides as follows:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.      Insuring Agreement

 a.     We will pay those sums that the insured be-comes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

b.      This insurance applies to "bodily injury" and "property damage" only if:

(1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(2)    The "bodily injury" or "property damage" occurs during the policy period;

SECTION V – DEFINITIONS

3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

BLANKET ADDITIONAL INSURED (CONTRACTORS)

1.    Who is an Insured- (section II) is amended to include any person or organization that you agree in a written contract requiring insurance to include as an additional insured on this coverage part, but:
    a.    Only with respect to liability for bodily injury, property damage or personal injury; and
    b.    If and only to the extent that, the injury or damage is caused by acts or omissions of you or your subcontractor in the performance of your work to which the written contract requiring insurance applies.

29.    On or about July 7, 2020, this firm sent a letter to TRAVELERS stating that it had no proper basis for denying TOLL's tender request as the Underlying Suit alleges bodily injury that occurred on November 25, 2019 which clearly falls within the term of the Policy, and because the Policy clearly states that the insurance applies to bodily injury caused by the acts or omissions of R&S United, of which Plaintiff was an employee. The letter also explained that there can be more than one proximate cause of a Plaintiff's injury.  A copy of the July 7, 2020 letter is annexed hereto as Exhibit  I.

30.    Under the doctrine of respondeat superior, an employer is liable for an employee's negligent actions or omissions that occur during the course and scope of the employee's employment.  Couillard v. Shaw Environmental & Infrastructure Engineering, 125 A.D.3d 509 (2015).

31.    In fact, in Guiga v. JLS Const. Co. Inc., 255 A.D.2d 244 (1998), the court found fault apportioned to subcontractor's employee in employee's personal injury suit against general contractor for injuries he sustained at construction site, based upon employee's failure to heed warning not to use defective ladder, was **properly imputed to subcontractor under**

6

#81925227_v1

**respondeat superior principles**, for purposes of general contractor's third-party **claim against subcontractor for contribution and indemnification**.

32. Additionally, in <u>Burlington Ins. Co. v. NYC Transit Authority</u>, 29 N.Y.3d 313 (2017), the Court examined an Additional Insured endorsement that used the same "caused, in whole or in part, by" language as the Policy, and concluded that coverage was triggered for the Additional Insured as long as **the Named Insured was a proximate cause of the injury alleged**.

33. The Court in <u>Burlington</u> also specifically noted that "there may be more than one proximate cause of an injury". Once coverage was triggered, the Court did not find that the "caused, in whole or in part, by" language created any limitation on coverage based on the extent of active negligence, nor is there any prohibition on obtaining insurance coverage for active negligence as TOLL did in this case through R&S United.

34. There is no question that R&S United, through its employee, Chmela, was at least **a proximate cause of the injury**. Mr. Chmela failing to observe and avoid the hole is a proximate cause of the accident attributable to R&S United. Accordingly, the insurance applies and Travelers is obligated to defend and indemnify Toll in the Underlying Suit.

35. As the Claims in the Underlying Suit were caused in part by Chmela's acts or omissions on behalf of R&S United, the Named Insured, TRAVELERS is required to provide TOLL defense and indemnification under the Policy.

**AS AND FOR A FIRST CAUSE OF ACTION**
**FOR DECLARATORY JUDGMENT**

36. TOLL repeats, reiterates and realleges each and every allegation of the preceding paragraphs as if fully set forth at length herein.

37. An Insured under the Policy is "any person or organization that you agree in a written contract requiring insurance to include as an additional insured".

7

#81925227_v1

38.     TOLL qualifies as an Insured under the Policy.

39.     An Insured is covered under the Policy for bodily injury, property damage or personal injury **caused by acts or omissions of you or your subcontractor** in the performance of your work to which the written contract requiring insurance applies.

40.     Chmela was acting in the scope of his employment and on behalf of R&S United, the Named Insured.

41.     The Policy requires TRAVELERS to defend and indemnify TOLL for injury caused by the acts or omissions of Chmela.

42.     TOLL requests a declaration that TRAVELERS is obligated under the Policy to defend and indemnify TOLL in the Underlying Suit.

**WHEREFORE,** it is respectfully requested that this court issue a declaratory judgment, determining and declaring that TRAVELERS is obligated to defend and indemnify TOLL in the Underlying Suit and for such other and further relief as the Court may seem just and proper.

Dated: New York, New York
        February 26, 2021

                                **HOLLAND & KNIGHT, LLP**


                                By:     *Ellen S. Marcus*
                                        Robert S. Bernstein
                                        Ellen S. Marcus
                                        Attorneys for Plaintiffs
                                        TOLL BROTHERS, INC., TOLL
                                        BROS., INC., TOLL NY II LLC,
                                        TOLL BROTHERS REAL
                                        ESTATE, INC. and TOLL
                                        BROTHERS BARROW
                                        STREET, LLC
                                        31 West 52nd Street
                                        New York, New York 10019
                                        (212) 513-3358

8

#81925227_v1

Case 1:21-cv-05297-AKH   Document 1-1   Filed 06/15/21   Page 12 of 114

TO:

The Travelers Indemnity Company of Connecticut
1 Tower Square
Hartford, CT 06183

9

#81925227_v1

# Exhibit A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------------------X

SCOTT CHMELA and NICOLE CHMELA,

Plaintiffs,

- against –

TOLL NY II, L.P., TOLL BROTHERS REAL ESTATE, INC.,
and TOLL BROTHERS BARROW STREET, LLC.

Defendants.

-------------------------------------------------------------------------------X

**Index No.:** 151526/2020

**SUMMONS**

**Plaintiff designates:**
**New York County as the**
**place of trial.**

**Plaintiff's basis for venue is:**
**Location of the Accident:**
**77 Charlton Street, New**
**York, NY 10014**

**TO THE ABOVE-NAMED DEFENDANTS:**

*YOU ARE HEREBY SUMMONED* to answer the Complaint of Plaintiff in this action, which is served herewith upon you, and to Answer upon the undersigned attorneys for the Plaintiff, within **twenty (20) days** after the service of the Summons and Complaint, exclusive of the day of service, or within **thirty (30) days** if such service is made by any method other than personal delivery upon you and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the Complaint.

Dated: New York, New York
February 11, 2020

                                        ZAREMBA BROWN PLLC

By:
                                        Lisa Pigeon, Esq.
                                        *Attorneys for Plaintiffs*
                                        40 Wall Street, 52nd Floor,
                                        New York, New York 10005
                                        T: (212) 380-6700
                                        F: (212) 871-6395

TO:     **TOLL NY II, L.P.**
        C/O UNITED AGENT GROUP INC.
        15 North Mill Street
        Nyack, New York, 10960

        **TOLL BROTHERS REAL ESTATE, INC.**
        C/O UNITED AGENT GROUP INC.
        15 North Mill Street
        Nyack, New York, 10960

1

**TOLL BROTHERS BARROW STREET LLC**
C/O UNITED AGENT GROUP, INC.
15 North Mill Street
Nyack, New York, 10960

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------------------X
SCOTT CHMELA and NICOLE CHMELA,

                        Plaintiffs,

**Index No.:**

**VERIFIED COMPLAINT**

     - against –

TOLL NY II, L.P., TOLL BROTHERS REAL ESTATE, INC.,
and TOLL BROTHERS BARROW STREET, LLC.

               Defendants.
-----------------------------------------------------------------------------X

     Plaintiffs, **SCOTT CHMELA** and **NICOLE CHMELA**, by his attorneys, ZAREMBA

BROWN, PLLC, complaining of the Defendants, alleges as follows:

     1.    At all times relevant herein, Plaintiffs **SCOTT CHMELA** and **NICOLE**

**CHMELA** ("Plaintiffs") were and still are residents of 2 Cully Street, Port Jefferson, NY 11776.

     2.    Defendant, **TOLL NY II, L.P.** ("**TOLL NY**"), is a foreign limited liability

company duly organized under the laws of the state of New York, with its principal place of

business at 15 North Mill Street, Nyack, New York, 10960.

     3.    At all times relevant herein, Defendant, **TOLL NY** is a foreign limited liability

company authorized to do business in the State of New York.

     4.    At all times relevant herein, Defendant, **TOLL NY** is a foreign limited liability

company doing business in the state of New York.

     5.    Defendant, **TOLL BROTHERS REAL ESTATE, INC.** ("**TOLL BROTHERS**

**REAL ESTATE**"), is a domestic limited liability company duly organized under the laws of the

state of New York, with its principal place of business at 15 North Mill Street, Nyack, New York,

10960.

     6.    At all times relevant herein, Defendant, **TOLL BROTHERS REAL ESTATE**, is

3

a domestic limited liability company authorized to do business in the State of New York.

7.      At all times relevant herein, Defendant, **TOLL BROTHERS REAL ESTATE**, is a domestic limited liability company doing business in the state of New York.

8.      Defendant, **TOLL BROTHERS BARROW STREET, LLC. ("TOLL BROTHERS BARROW STREET"**), is a foreign limited liability company duly organized under the laws of the state of New York, with its principal place of business at 15 North Mill Street, Nyack, New York, 10960.

9.      At all times relevant herein, Defendant, **TOLL BROTHERS BARROW STREET** is a foreign limited liability company authorized to do business in the State of New York.

10.     At all times relevant herein, Defendant, **TOLL BROTHERS BARROW STREET** is a foreign limited liability company doing business in the state of New York.

11.     On or about November 25, 2019, Plaintiff **SCOTT CHMELA** was severely injured at the premises located at 77 Charlton Street, New York, NY 10301. ("premises").

12.     At the time of the incident in which Plaintiff **SCOTT CHMELA** sustained his injuries, he was in the course of his employment with R&S United Services Inc. ("R&S"), a subcontractor performing construction, renovation, and/or demolition work at the premises.

13.     That at the aforesaid time and place, Plaintiff **SCOTT CHMELA**, while in the course of his employment, was injured and suffered severe injuries due to Defendants' negligence, carelessness and recklessness.

14.     Upon information and belief, and at the time of the Plaintiff's incident, defendant **TOLL NY** was the owner of the premises.

15.     Upon information and belief, at the time of Plaintiff's incident, defendant **TOLL**

4

NY was the general contractor at the premises.

16. Upon information and belief, at the time of Plaintiff's incident, defendant **TOLL NY** was the construction manager at the premises.

17. At the time of Plaintiff's accident, defendant **TOLL NY** was a general contractor and/or construction manager for the construction, renovation, and/or repair work being done at the premises.

18. At the time of Plaintiff's accident, defendant **TOLL NY** maintained, managed, supervised, and/or controlled the construction site located at the premises.

19. Upon information and belief, and at the time of the Plaintiff's accident, defendant **TOLL BROTHERS REAL ESTATE** was the owner of the premises.

20. Upon information and belief, at the time of Plaintiff's accident, defendant **TOLL BROTHERS REAL ESTATE** was the general contractor at the premises.

21. Upon information and belief, at the time of Plaintiff's accident, defendant **TOLL BROTHERS REAL ESTATE** was the construction manager at the premises.

22. At the time of Plaintiff's accident, defendant **TOLL BROTHERS REAL ESTATE** was a general contractor and/or construction manager for the construction, renovation and/or demolition work being done at the premises.

23. At the time of Plaintiff's accident, defendant **TOLL BROTHERS REAL ESTATE** maintained, managed, supervised, and/or controlled the construction site located at the premises.

24. Upon information and belief, and at the time of the Plaintiff's incident, defendant **TOLL BROTHERS BARROW STREET** was the owner of the premises.

25. Upon information and belief, at the time of Plaintiff's incident, defendant **TOLL**

5

**BROTHERS BARROW STREET** was the general contractor at the premises.

26.     Upon information and belief, at the time of Plaintiff's incident, defendant **TOLL BROTHERS BARROW STREET** was the construction manager at the premises.

27.     At the time of Plaintiff's accident, defendant **TOLL BROTHERS BARROW STREET** was a general contractor and/or construction manager for the construction, renovation, and/or repair work being done at the premises.

28.     At the time of Plaintiff's accident, defendant **TOLL BROTHERS BARROW STREET** maintained, managed, supervised, and/or controlled the construction site located at the premises.

29.     Defendants, **TOLL NY, TOLL BROTHERS REAL ESTATE** and **TOLL BROTHERS BARROW STREET**, were responsible for ensuring compliance with sections 200, 240(1) and 241(6) of the New York State Labor Law, and the regulations relating thereto.

### AS AND FOR A FIRST CAUSE OF ACTION

30.     Plaintiffs, **SCOTT CHMELA and NICOLE CHMELA** hereby incorporate by reference the allegations of each preceding paragraph as though the same were set forth here in their entirety.

31.     Plaintiff **SCOTT CHMELA**'s severe injuries were caused by Defendants, **TOLL NY**, **TOLL BROTHERS REAL ESTATE** and **TOLL BROTHERS BARROW STREET**'s violation of all applicable statutes, laws, codes, ordinances and administrative regulations, including section 200 of the New York State Labor Law.

32.     That as a result of the aforesaid statutory violation, Plaintiffs were damaged in a monetary sum far exceeding the jurisdictional limitations of all lower courts of the State of New York, which would otherwise have jurisdiction over this action.

6

## AS AND FOR A SECOND CAUSE OF ACTION

33.     Plaintiffs, **SCOTT CHMELA** and **NICOLE CHMELA** hereby incorporate by reference the allegations of each preceding paragraph, as though the same were set forth here in their entirety.

34.     Plaintiff **SCOTT CHMELA**'s severe injuries were caused by Defendants, **TOLL NY**, **TOLL BROTHERS REAL ESTATE** and **TOLL BROTHERS BARROW STREET**'s violation of section 240(1) of the New York State Labor Law.

35.     That as a result of the aforesaid statutory violation, Plaintiffs were damaged in a monetary sum far exceeding the jurisdictional limitations of all lower courts of the State of New York, which would otherwise have jurisdiction over this action.

## AS AND FOR A THIRD CAUSE OF ACTION

36.     Plaintiffs, **SCOTT CHMELA** and **NICOLE CHMELA** hereby incorporate by reference the allegations of each preceding paragraph, as though the same were set forth here in their entirety.

37.     Plaintiff **SCOTT CHMELA**'s severe injuries were caused by Defendants, **TOLL NY**, **TOLL BROTHERS REAL ESTATE** and **TOLL BROTHERS BARROW STREET**'s violation of section 241(6) of the New York State Labor Law.

38.     That as a result of the aforesaid statutory violation, Plaintiffs were damaged in a monetary sum far exceeding the jurisdictional limitations of all lower courts of the State of New York, which would otherwise have jurisdiction over this action.

## AS AND FOR A FOURTH CAUSE OF ACTION

39.     Plaintiffs, **SCOTT CHMELA** and **NICOLE CHMELA** hereby incorporate by reference the allegations of each preceding paragraph as though the same were set forth here in

7

their entirety.

40.　　　That Defendants, **TOLL NY**, **TOLL BROTHERS REAL ESTATE** and **TOLL BROTHERS BARROW STREET**, were negligent, reckless and careless, in that they violated their duties to persons at the aforesaid premises, including Plaintiff **SCOTT CHMELA** in particular, in knowingly permitting, suffering and allowing a dangerous, trap-like condition to be present at the aforesaid premises, to allow said condition to become and remain defective and unsafe, and were further negligent in failing to take suitable precautions for the safety of persons lawfully at the aforesaid premises, including failing to give any notice or warning to Plaintiff of said dangerous condition.

41.　　　That the aforesaid incident and the injuries resulting therefrom were due solely and wholly as a result of the careless and negligent manner in which Defendants, **TOLL NY**, **TOLL BROTHERS REAL ESTATE** and **TOLL BROTHERS BARROW STREET**, owned, operated, maintained, managed, supervised, inspected and controlled the aforesaid premises, without Plaintiff in any way contributing thereto.

42.　　　That by reason of the foregoing, Plaintiff **SCOTT CHMELA** was compelled to and did necessarily require medical aid and attention, and did necessarily pay and become liable therefore, for medicines. Upon information and belief, Plaintiff will necessarily incur similar expenses.

43.　　　That by reason of the foregoing, Plaintiff **SCOTT CHMELA** has been unable to attend to his usual occupation in the manner required.

44.　　　That one or more of the provisions of §1602 of the Civil Practice Law and Rules do apply to the within action.

45.　　　That as a result of the foregoing, Plaintiff **SCOTT CHMELA** sustained damages

8

in an amount which exceeds the jurisdictional limits of all other Courts, which would otherwise have jurisdiction.

46.     That by reason of the foregoing and as a direct and proximate result of Defendants' negligence and violations of Labor Law sections 200, 240(1) & 241(6) and all other applicable statues, rules, laws and ordinances, Plaintiff **SCOTT CHMELA** has been severely injured and damaged, rendered sick, sore, lame and disabled, sustained severe nervous shock and mental anguish, great physical pain and emotional upset, some of which injuries are permanent in nature and duration, and Plaintiff will be permanently caused to suffer pain, inconvenience and other effects of such injuries. Plaintiff required surgical procedures and will require future surgeries, which have and will result in significant scarring. Plaintiff incurred and in the future will necessarily incur further significant hospital and/or medical expenses in an effort to be cured of said injuries. Additionally, Plaintiff has suffered, and in the future will necessarily suffer, additional loss of time and earnings from employment. Further, Plaintiff will be unable to pursue the usual duties with the same degree of efficiency as prior to this occurrence, all to Plaintiff's great damage.

47.     That Plaintiff **SCOTT CHMELA**'s pain, suffering, and injuries were directly, proximately, and/or indirectly caused by Defendants' violations of Labor Law sections 200, 240(1) & 241(6) and all other applicable statues, rules, laws and ordinances.

48.     That the injuries Plaintiff **SCOTT CHMELA** sustained were in no way contributed to by any act or omission on his part and said injuries were sustained without any fault, want of care, or culpable conduct on the part of Plaintiff. Rather, said injuries were caused solely by virtue of the neglect, omission, willful, or culpable negligence of Defendants in failing to comply with statutes, ordinances, rules, codes, orders and/or other requirements of the State, City and/or local

9

governments then and there existing.

## AS AND FOR A FIFTH CAUSE OF ACTION

49.     Plaintiffs, **SCOTT CHMELA** and **NICOLE CHMELA** hereby incorporate by reference the allegations of Paragraphs 1 through 48 above as though the same were set forth here in their entirety.

50.     At all times relevant herein Plaintiff, **NICOLE CHMELA**, was and is married to and cohabitating with Plaintiff, **SCOTT CHMELA**.

51.     Because of the accident and injuries to Plaintiff, **SCOTT CHMELA**, Plaintiff, **NICOLE CHMELA**, has been deprived of his services and his comfort, happiness and companionship has been impaired.

52.     Plaintiff's severe injuries were caused by defendants' **TOLL NY II, L.P.**, **TOLL BROTHERS REAL ESTATE, INC.** and **TOLL BROTHERS BARROW STREET, LLC.**, negligence.

53.     That as a result of the aforesaid statutory violations, plaintiffs were damaged in a monetary sum far exceeding the jurisdictional limitations of all lower courts of the State of New York which would otherwise have jurisdiction over this action.

**WHEREFORE**, Plaintiffs demands judgment in each cause of action against Defendants, **TOLL NY II, L.P.**, **TOLL BROTHERS REAL ESTATE, INC.** and **TOLL BROTHERS BARROW STREET, LLC.**, as follows:

(a)     Compensatory damages, together with interest, costs and disbursements as provided by law;

(b)     The amount of relief sought exceeds the jurisdictional limits of all lower courts, which would otherwise have jurisdiction.

Dated: February 11, 2020
New York, NY

10

By:    _____
       Lisa Pigeon, Esq.
       *Attorneys for Plaintiffs*
       40 Wall Street, 52ⁿᵈ Floor
       New York, New York 10005
       T: (212) 380-6700
       F: (212) 871-6395

TO:    **TOLL NY II, L.P.**
       C/O UNITED AGENT GROUP INC.
       15 North Mill Street
       Nyack, New York, 10960

       **TOLL BROTHERS REAL ESTATE, INC.**
       C/O UNITED AGENT GROUP INC.
       15 North Mill Street
       Nyack, New York, 10960

       **TOLL BROTHERS BARROW STREET LLC**
       C/O UNITED AGENT GROUP, INC.
       15 North Mill Street
       Nyack, New York, 10960

11

## VERIFICATION

Lisa Pigeon, Esq, an attorney duly admitted to practice law before the Courts of the State of New York, affirms as follows, with knowledge of the penalties for perjury:

1.     Affirmant is a partner of the law firm of ZAREMBA BROWN PLLC, attorneys for **SCOTT CHMELA and NICOLE CHMELA**, plaintiff in the within action.

2.     I am fully familiar with the facts and circumstances involved in this matter from reviewing the file regarding same maintained in the offices of the above named law firm.

3.     I have read the foregoing Verified Complaint, know the contents thereof, and the same are true to the best of my knowledge.

4.     Affirmant further states that the reason this Verification is made by the undersigned and not by plaintiff is because said party does not reside in New York County, where the offices of said attorneys are located.

5.     The grounds of Affirmant's belief as to all matters not stated to be upon Affirmant's knowledge are investigate materials contained in the files of the above named law firm.

Dated: New York, New York
       February 11, 2020

_____
LISA PIGEON, ESQ.

12

Case 1:21-cv-05297-AKH   Document 1-1   Filed 06/15/21   Page 26 of 114

Index No.:                                                        Year:

# SUPREME COURT OF THE STATE OF NEW YORK
# COUNTY OF NEW YORK

SCOTT CHMELA and NICOLE CHMELA,

               Plaintiffs,

   - against –

TOLL NY II, L.P., TOLL BROTHERS REAL ESTATE, INC.,
and TOLL BROTHERS BARROW STREET, LLC.

               Defendants.

## SUMMONS & VERIFIED COMPLAINT

**ZAREMBA BROWN PLLC**
*Attorneys for Plaintiff*
*Office and Post Office Address, Telephone*
40 Wall Street, 52nd Floor
New York, New York 10005
Tel: (212) 380-6700  -  Fax: (212) 871-6395

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-------------------------------------------------------------------X
SCOTT CHMELA and NICOLE CHMELA,

                      Plaintiffs,

        - against -

TOLL NY II, L.P., TOLL BROTHERS REAL ESTATE, INC.,
and TOLL BROTHERS BARROW STREET, LLC,
                      Defendants.

-------------------------------------------------------------------X

Index No. 151526/2020

**VERIFIED ANSWER
TO VERIFIED
COMPLAINT**

       Defendants TOLL NY II LLC f/k/a TOLL NY II, L.P., TOLL BROTHERS REAL ESTATE,

INC., and TOLL BROTHERS BARROW STREET, LLC (collectively "Answering Defendants") by

and through their attorneys Holland & Knight, LLP, as and for their Verified Answer to Plaintiffs

SCOTT CHMELA and NICOLE CHMELA's ("Plaintiff") Verified Complaint dated February 11,

2016 (the "Complaint") states as follows, upon information and belief:

       1.      Answering Defendants deny having knowledge or information sufficient to form a

belief as to the truth of the allegations contained in paragraph "1" of the Complaint.

       2.      Answering Defendants deny the allegations contained in paragraph "2" of the

Complaint.

       3.      Answering Defendants deny the allegations contained in paragraph "3" of the

Complaint.

       4.      Answering Defendants deny the allegations contained in paragraph "4" of the

Complaint.

       5.      Answering Defendants deny the allegations contained in paragraph "5" of the

Complaint.

       6.      Answering Defendants deny the allegations contained in paragraph "6" of the

Complaint.

#73941029_v1

7.     Answering Defendants deny the allegations contained in paragraph "7" of the Complaint.

8.     Answering Defendants deny the allegations contained in paragraph "8" of the Complaint.

9.     Answering Defendants deny the allegations contained in paragraph "9" of the Complaint.

10.    Answering Defendants deny the allegations contained in paragraph "10" of the Complaint.

11.    Answering Defendants deny the allegations contained in paragraph "11" of the Complaint.

12.    Answering Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "12" of the Complaint.

13.    Answering Defendants deny the allegations contained in paragraph "13" of the Complaint.

14.    Answering Defendants deny the allegations contained in paragraph "14" of the Complaint, except admit that TOLL NY II LLC was the owner of the premises.

15.    Answering Defendants deny the allegations contained in paragraph "15" of the Complaint.

16.    Answering Defendants deny the allegations contained in paragraph "16" of the Complaint.

17.    Answering Defendants deny the allegations contained in paragraph "17" of the Complaint.

18.    Answering Defendants deny the allegations contained in paragraph "18" of the Complaint, and respectfully refer all questions of law to the Court.

#73941029_v1

19.     Answering Defendants deny the allegations contained in paragraph "19" of the Complaint.

20.     Answering Defendants deny the allegations contained in paragraph "20" of the Complaint.

21.     Answering Defendants deny the allegations contained in paragraph "21" of the Complaint.

22.     Answering Defendants deny the allegations contained in paragraph "22" of the Complaint.

23.     Answering Defendants deny the allegations contained in paragraph "23" of the Complaint, and respectfully refer all questions of law to the Court.

24.     Answering Defendants deny the allegations contained in paragraph "24" of the Complaint.

25.     Answering Defendants deny the allegations contained in paragraph "25" of the Complaint.

26.     Answering Defendants deny the allegations contained in paragraph "26" of the Complaint.

27.     Answering Defendants deny the allegations contained in paragraph "27" of the Complaint.

28.     Answering Defendants deny the allegations contained in paragraph "28" of the Complaint, and respectfully refer all questions of law to the Court.

29.     Answering Defendants deny the allegations contained in paragraph "29" of the Complaint.

## **AS AND FOR AN ANSWER TO THE FIRST CAUSE OF ACTION**

30.     Answering Defendants repeat and reallege each and every response to the allegations contained in paragraphs "1" to "29" with the same force and effect as if set forth herein at length.

#73941029_v1

31.     Answering Defendants deny the allegations contained in paragraph "31" of the Complaint.

32.     Answering Defendants deny the allegations contained in paragraph "32" of the Complaint.

### AS AND FOR AN ANSWER TO THE SECOND CAUSE OF ACTION

33.     Answering Defendants repeat and reallege each and every response to the allegations contained in paragraphs "1" to "32" with the same force and effect as if set forth herein at length.

34.     Answering Defendants deny the allegations contained in paragraph "34" of the Complaint.

35.     Answering Defendants deny the allegations contained in paragraph "35" of the Complaint.

### AS AND FOR AN ANSWER TO THE THIRD CAUSE OF ACTION

36.     Answering Defendants repeat and reallege each and every response to the allegations contained in paragraphs "1" to "35" with the same force and effect as if set forth herein at length.

37.     Answering Defendants deny the allegations contained in paragraph "37" of the Complaint.

38.     Answering Defendants deny the allegations contained in paragraph "38" of the Complaint.

### AS AND FOR AN ANSWER TO THE FOURTH CAUSE OF ACTION

39.     Answering Defendants repeat and reallege each and every response to the allegations contained in paragraphs "1" to "38" with the same force and effect as if set forth herein at length.

40.     Answering Defendants deny the allegations contained in paragraph "40" of the Complaint.

41.     Answering Defendants deny the allegations contained in paragraph "41" of the Complaint.

#73941029_v1

Case 1:21-cv-05297-AKH    Document 1-1    Filed 06/15/21    Page 32 of 114

42.    Answering Defendants deny the allegations contained in paragraph "42" of the Complaint.

43.    Answering Defendants deny the allegations contained in paragraph "43" of the Complaint.

44.    Answering Defendants deny the allegations contained in paragraph "44" of the Complaint.

45.    Answering Defendants deny the allegations contained in paragraph "45" of the Complaint.

46.    Answering Defendants deny the allegations contained in paragraph "46" of the Complaint.

47.    Answering Defendants deny the allegations contained in paragraph "47" of the Complaint.

48.    Answering Defendants deny the allegations contained in paragraph "48" of the Complaint.

### AS AND FOR AN ANSWER TO THE FIFTH CAUSE OF ACTION

49.    Answering Defendants repeat and reallege each and every response to the allegations contained in paragraphs "1" to "48" with the same force and effect as if set forth herein at length

50.    Answering Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "50" of the Complaint.

51.    Answering Defendants deny having knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph "51" of the Complaint.

52.    Answering Defendants deny the allegations contained in paragraph "52" of the Complaint.

53.    Answering Defendants deny the allegations contained in paragraph "53" of the Complaint.

#73941029_v1

Case 1:21-cv-05297-AKH     Document 1-1     Filed 06/15/21     Page 33 of 114

## RESERVATION OF RIGHTS

Answering Defendants hereby give notice to Plaintiffs as stated in this Answer that they lack sufficient knowledge or information upon which to form a belief as to the truth of certain allegations contained in the Verified Complaint or specific knowledge of actions on the part of Plaintiffs or other persons that contributed to or caused Plaintiffs' alleged damages. Until these Answering Defendants fully avail themselves of their rights of discovery, it cannot be determined whether or not the below-stated Affirmative Defenses will be asserted at trial. These Answering Defendants assert these defenses in their Answer to preserve their rights to assert these affirmative defenses and to give all parties notice of their intention to assert these defenses, and avoid waiver of any defenses

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Whatever injuries and/or damages the Plaintiff may have sustained at the time and place mentioned in the Complaint and/or as a result of the occurrence alleged in the Complaint, all of which are denied by the Answering Defendants, were caused in whole or in part by the culpable conduct of the Plaintiff. The amount of damages recovered, if any, shall therefore be diminished in the proportion which the culpable conduct, attributable to Plaintiff, bears to the culpable conduct which caused said injuries.

### SECOND AFFIRMATIVE DEFENSE

All risks and danger of loss or damages connected with the occurrence alleged in the Complaint were at the time and place mentioned in the Complaint obvious and apparent and were known by the Plaintiff and voluntarily assumed by Plaintiff.

### THIRD AFFIRMATIVE DEFENSE

The injuries and damages alleged were caused by the culpable conduct of some third person or persons over whom the Answering Defendants neither had nor exercised control.

#73941029_v1

## FOURTH AFFIRMATIVE DEFENSE

The Answering Defendants' liability, if any, is limited by the provisions of Article 16 of the Civil Practice Law and Rules.

## FIFTH AFFIRMATIVE DEFENSE

Plaintiff failed to mitigate his damages.

## SIXTH AFFIRMATIVE DEFENSE

In the event Plaintiff recovers a verdict or judgment against any of the Answering Defendants, then said verdict or judgment must be reduced pursuant to CPLR 4545 by those amounts which have been, or will, with reasonable certainty, replace or indemnify Plaintiff, in whole or in part, for any past or future claimed economic loss, from any collateral source such as Insurance, Social Security, Workers' Compensation or employee benefit program.

## SEVENTH AFFIRMATIVE DEFENSE

The Answering Defendants liability, if any, to Plaintiffs for non-economic loss is limited to its equitable share, determined in accordance with the relative culpability of all persons or entities contributing to the total liability for non-economic loss, including others over whom Plaintiffs could have obtained personal jurisdiction with due diligence pursuant to Article 16 of the CPLR.

## EIGHTH AFFIRMATIVE DEFENSE

The Complaint fails to state a cause of action.

## NINTH AFFIRMATIVE DEFENSE

The negligence of those responsible for the accident or occurrence alleged in the Complaint constituted a separate, independent, superseding, intervening culpable act or acts which constitute the sole proximate cause of the accident or occurrence alleged.

## TENTH AFFIRMATIVE DEFENSE

Plaintiff failed to exercise the degree of care required of reasonable persons under the circumstances giving rise to these claims.

#73941029_v1

## ELEVENTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because the Answering Defendants did not breach any duty owed by them to the Plaintiff.

## TWELFTH AFFIRMATIVE DEFENSE

Plaintiffs' claims are barred because there is no conduct of the Answering Defendants that is the proximate cause or cause in fact of the injuries alleged by Plaintiff.

## THIRTEENTH AFFIRMATIVE DEFENSE

This Court lacks jurisdiction over the person of the Answering Defendants.

## FOURTEENTH AFFIRMATIVE DEFENSE

Service of the Summons and Complaint in this matter was not accomplished in the proper and designated manner set forth in the Civil Practice Law and Rules and therefore the Court has not obtained personal jurisdiction over the Answering Defendants.

## FIFTEENTH AFFIRMATIVE DEFENSE

Each claim asserted in this action is barred by the applicable Statute of Limitations.

**WHEREFORE**, Defendants TOLL NY II LLC f/k/a TOLL NY II, L.P., TOLL BROTHERS REAL ESTATE, INC., and TOLL BROTHERS BARROW STREET, LLC demand judgment dismissing the Complaint against TOLL NY II LLC f/k/a TOLL NY II, L.P., TOLL BROTHERS REAL ESTATE, INC., and TOLL BROTHERS BARROW STREET, LLC, and granting them all such other and further relief as the Court shall deem just equitable and proper.

Dated: New York, New York
April 29, 2020

HOLLAND & KNIGHT, LLP

By: *Ellen S. Marcus*

Ellen S. Marcus
Attorneys for Defendants
TOLL NY II LLC f/k/a TOLL NY II,
L.P., TOLL BROTHERS REAL

#73941029_v1

ESTATE, INC., and TOLL BROTHERS
BARROW STREET, LLC
31 West 52nd Street
New York, New York 10019
(212) 513-3358

TO:

Lisa Pigeon
Zaremba Brown, PLLC
40 Wall Street, 52nd Floor
New York, New York 10005
(212) 380-6700
*Attorneys for Plaintiff*

#73941029_v1

## ATTORNEY'S VERIFICATION

STATE OF NEW YORK      )
                                            ss:
COUNTY OF NASSAU        )

ELLEN S. MARCUS, hereby affirms the truth of the following under penalties of perjury:

I am an attorney with Holland & Knight, LLP representing TOLL NY II LLC f/k/a TOLL NY II, L.P., TOLL BROTHERS REAL ESTATE, INC., and TOLL BROTHERS BARROW STREET, LLC.

I have read the attached Verified Answer to Verified Complaint and the same is true to my own belief, except as to matters alleged on information and belief, and as to those matters, I believe them to be true to the best of my knowledge.

That your deponent's sources of information are the files and records and reports and records of investigations, parties and witnesses, with which deponent is fully familiar.

That this verification is made by deponent because the client is not presently within the county where affirmant maintains her office.

Dated: New York, New York
            April 29, 2020

_Ellen S. Marcus_____
Ellen S. Marcus

#73941029_v1

## ATTORNEY'S AFFIRMATION OF SERVICE

STATE OF NEW YORK        )
                         ) ss.:
COUNTY OF NASSAU         )

Ellen S. Marcus, an attorney duly admitted to practice law before the courts of the State of New York, affirms under penalty of perjury, that on April 29, 2020, I served the within **VERIFIED ANSWER TO VERIFIED COMPLAINT** upon:

> Lisa Pigeon
> Zaremba Brown, PLLC
> 40 Wall Street, 52nd Floor
> New York, New York 10005

by Electronic Means.  Deponent served copies of the above mentioned document by E-Mail to Lisa Pigeon at lpigeon@zarembabrown.com, the E-Mail Address provided by Ms. Pigeon for such purpose.

Dated: East Rockaway, New York
        April 29, 2020

                                        ___*Ellen S. Marcus*___
                                             Ellen S. Marcus

#73941029_v1

Case 1:21-cv-05297-AKH    Document 1-1    Filed 06/15/21    Page 39 of 114

# Exhibit C

# NYS Department of State
## Division of Corporations
## Entity Information

The information contained in this database is current through February 24, 2021.

Selected Entity Name: **TOLL NY II LLC**

### Selected Entity Status Information

**Current Entity Name:** TOLL NY II LLC

**DOS ID #:** 3619489

**Initial DOS Filing Date:** JANUARY 17, 2008

**County:** DUTCHESS

**Jurisdiction:** NEW YORK

**Entity Type:** DOMESTIC LIMITED LIABILITY COMPANY

**Current Entity Status:** ACTIVE

### Selected Entity Address Information

**DOS Process** (Address to which DOS will mail process if accepted on behalf of the entity)

C/O UNITED AGENT GROUP INC.
600 MAMARONECK AVENUE,
SUITE 400
HARRISON, NEW YORK, 10528

**Registered Agent**

UNITED AGENT GROUP INC.
600 MAMARONECK AVENUE,
SUITE 400
HARRISON, NEW YORK, 10528

e does not require or maintain information regarding the names and addresses of members or managers of nonprofessional limited
ompanies. Professional limited liability companies must include the name(s) and address(es) of the original members, however this
information is not recorded and only available by viewing the certificate.

| Stock Information | | | Name History | | |
|---|---|---|---|---|---|
| **ype of Stock** | **$ Value per Share** | | **Filing Date** | **Name Type** | **Entity Name** |
| ormation Available | | | OCT 29, 2013 | Actual | TOLL NY II LLC |
| | | | JAN 17, 2008 | Actual | TOLL NY II L.P. |
| applicable to domestic business | | | | | |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must us
when conducting its activities or business in New York State.

Case 1:21-cv-05297-AKH    Document 1-1    Filed 06/15/21    Page 41 of 114

# EXHIBIT D

TRADE SUBCONTRACT

BETWEEN

Toll NY II, LLC
("OWNER")

AND

Subcontractor's Name:

R&S United Services, Inc.

("SUBCONTRACTOR")

FOR

Project Name:

77 Charlton

Type of Work Being Performed

HVAC Water & Air Work

The Architect is:

S9 Architecture

2



## Exhibits to Construction Agreement

| | |
|---|---|
| Exhibit A | Scope of Work |
| Exhibit B | Drawings and Specifications |
| Exhibit C | Trade Specific Insurance Limit Requirements |
| Exhibit D | Subcontractor First Time Vendor Set-Up forms |
| Exhibit E | General Conditions |
| Exhibit F | Partial Waiver of Lien Form |
| Exhibit G | General Release and Final Waiver of Lien |
| Exhibit H | Capital Improvement Tax Certificate |
| Exhibit I | Joint Check Addendum |
| Exhibit J | Good Neighbor Policy |
| Exhibit K | Storm Water Compliance Program |



THIS TRADE SUBCONTRACT is entered into and made effective as of the 30th day of March , 20 1% , by and between R&S United Services Inc., a ("Subcontractor"), having its office at 15 Ranch Drive West, Amityville NY 11701 and Toll NY II, LLC, a subsidiary of Toll Brothers, Inc., having its office at 75 Broad Street, Suite 2100, New York NY 10004 ("Owner").

**WHEREAS,** Owner has entered into this contract on its own behalf and is also referred to as "Contractor" herein;

**WHEREAS,** this contract is for construction services in connection with the construction of      at a site located at 77 Charlton Street New York NY 10014 (the "Project");

**WHEREAS,** Owner has awarded this Trade Subcontract ("Subcontract") as hereinafter defined, to Subcontractor and Subcontractor has agreed to enter into this Subcontract, and to perform the Work required or described herein or reasonably inferable from the Contract Documents in order to achieve the intended results;

**WHEREAS,** Owner reserves the right to and may, from time to time, administer this Subcontract through an affiliated or third-party Construction Manager or Contractor;

**NOW, THEREFORE,** in consideration of the foregoing and of the mutual covenants contained herein, Subcontractor and Owner agree as follows:

**ARTICLE 1: Subcontract Price: Scope of the Work**

1.1     Subject to all of the terms and conditions herein contained, Subcontractor shall receive the total lump sum Contract Price of _____ DOLLARS AND _____ CENTS ($ _____) (the "Contract Price") (which price includes all applicable taxes) for the full and faithful performance and completion of all of its obligations under this Subcontract, including but not limited to the performance and completion of all requirements of the Contract Documents, as hereinafter defined, all labor necessary to complete such construction, all materials and equipment (whether for temporary or permanent use) incorporated or to be incorporated in such construction, all tools, equipment, supplies, superintendence, insurance, bonds, taxes and all other services and facilities necessary to complete and perform the work in accordance with all applicable laws, statutes, ordinances, regulations, codes, rules and orders of public authorities ("Laws") and as described in the Contract Documents, and reasonably inferable therefrom and necessary to achieve the intended results or otherwise customarily provided by a subcontractor of this trade (the "Work"). The Contract Price includes all increases in cost, foreseen or unforeseen, including, without limiting the generality of the foregoing taxes, labor and materials, the cost of all of which is to be borne by Subcontractor.

1.2     The Work shall include, without limitation, any and all necessary preparation, delivery and installation or erection, as the case may be, of materials, machinery, scaffolding, tools, equipment and all transportation cartage, loading and hoisting, patterns, models, surveys, field measurements or other measurements, shop drawings, temporary light and heat protection of work and labor from winter conditions, safety requirements, payment of royalties, and all temporary relocations and construction. Without limiting the foregoing, the Contract Documents are

Bond as
Add R/t
+1.25%
(A.P.)
M

TRM

complementary, not limiting, and are intended to include all items required for proper execution of the Work. Any Work shown on drawings and not mentioned in specifications, or described in specifications and not shown on drawings, or included in the attached Scope of Work and not included in either the drawings or the specifications, shall be included in the Work. To the extent the Scope of Work expressly modifies the terms of any other Contract Document, the Scope of Work shall control. Subcontractor shall faithfully and diligently undertake and complete the Work to comply in every respect with this Subcontract and the other Contract Documents.

1.3     In addition to the Trade Subcontract the "Contract Documents" shall consist of:

(a)     Subcontractor's Scope of Work annexed hereto as Exhibit A.

(b)     Drawings and Specifications as set forth in the list annexed hereto as Exhibit B.

(c)     Modifications, if any, to Insurance Requirements set forth in the General Conditions which modifications are annexed hereto as Exhibit C.

(d)     Subcontractor 1st time Vendor Set-Up annexed hereto as Exhibit D.

(e)     General Conditions annexed hereto as Exhibit E.

(f)     Partial Waiver of Lien form annexed hereto as Exhibit F.

(g)     General Release and Final Waiver of Lien form annexed hereto as Exhibit G.

(h)     Capital Improvement Tax Certificate, annexed hereto as Exhibit H.

(i)     Joint Check Addendum annexed hereto as Exhibit I.

(j)     Good Neighbor Policy annexed hereto as Exhibit J.

(k)     Storm Water Prevention Program annexed hereto as Exhibit K.

**ARTICLE 2: Certain Obligations of Subcontractor**

2.1     Subcontractor affirms that it has visited the site and has become familiar with all conditions at the site. Without limiting any other provision hereof, Subcontractor shall perform the Work and its obligations under this Subcontract in accordance with and subject to each of the provisions of the Contract Documents to the fullest extent that each such provision is applicable to the Work. In the event of any inconsistency between or among the terms and conditions of the Contract Documents, the more restrictive provision or the greater quantity, as applied to Subcontractor, shall govern.

Subcontractor Initials 



2.2    Subcontractor represents that it is fully qualified to perform the Work, and acknowledges that, prior to the execution of this Subcontract, it has (a) by its own independent investigation ascertained (i) the Work required by this Subcontract, (ii) the conditions involved in performing the Work, and (iii) the obligations of this Subcontract and the Contract Documents; and (b) verified all information furnished by Contractor or others satisfying itself as to the correctness and accuracy of that information. Any failure by Subcontractor to independently investigate and become fully informed will not relieve Subcontractor from its responsibilities hereunder.

2.3    Subcontractor shall undertake and complete the Work to the entire satisfaction of Owner and Contractor. Contractor shall provide Subcontractor with one set of drawings and specifications for the Work. Additional copies of drawings and specifications will be provided at Subcontractor's expense. Owner's Architect may provide such additional drawings, details and explanations as may be necessary to detail and illustrate the Work, and Subcontractor shall conform to and abide by any such drawings, details and explanations, at no additional cost.

2.4    Subcontractor and its Sub-subcontractors (as used in the Contract Documents, the term "Sub-subcontractor" means any subcontractor of Subcontractor and any subcontractor of such Sub-subcontractors of any tier), shall attend coordination meetings as and when scheduled by Contractor and shall participate (or prepare if required elsewhere herein) and cooperate in the preparation of composite drawings detailing the interrelationship of the various components of Subcontractor's Work with the work to be performed by others. Subcontractor acknowledges that the Drawings and Specifications may not be fully coordinated and, as such, Subcontractor recognizes the importance of its participation in the coordination process and preparation (by a designated Subcontractor) of composite drawings.

## ARTICLE 3: Terms of Payment

If Subcontractor is making satisfactory progress with the Work in compliance with all requirements of the Contract Documents and is in compliance with all the documentation requirements of the Contract Documents, Contractor, will, following receipt of a properly completed Application for Payment and, if and to the fullest extent permitted by law, contingent upon receipt of payment from Owner, make monthly payments to Subcontractor with thirty (30) days of receipt of an Application for Payment in accordance with Exhibit E, General Conditions. Applications for Payment shall be submitted on or before the _20th_ day of each calendar month.

## ARTICLE 4: Scheduling

Promptly upon execution of this Subcontract, Subcontractor shall commence without delay and shall submit to Contractor a proposed detailed time and manpower schedule ("Subcontractor's Schedule"), providing for completion of the Work within the time and consistent with the milestone dates provided for in Section 7, Scheduling in Exhibit A, which milestone and completion dates are in Subcontractor's reasonable opinion, adequate and sufficient to allow for completion of the Project by the date specified by Contractor. Subcontractor shall take into account the work of all other subcontractors necessary to complete the Project. At Contractor's

TRM



request, Subcontractor shall, from time to time, revise Subcontractor's Schedule and sequences approved by Contractor in accordance with the time and place requirements of the Project as determined by Contractor in its sole and absolute discretion. Contractor shall use Subcontractor's Schedule in its sole and absolute discretion, including, but not limited to, Contractor's planning and scheduling the Project and listing the sequences and dates for completion of the various segments of the Work. Subcontractor shall complete the Work in a timely matter and within Contractor's schedules for the Project and/or any other scheduling requirements directed by Contractor from time to time, so as not to delay, impede, obstruct, hinder or interfere with the commencement, progress or completion of the whole or any part of the Work or other work on the Project, and in such a manner as necessary or requested by Contractor from time to time to ensure that Contractor satisfies its obligations in a timely manner under its contract with the Owner. Contractor exclusively shall control scheduling, including the periodic updating thereof, if any, and Subcontractor shall comply therewith. Contractor shall have the right to schedule other work at the same time and in the same areas as Subcontractor's Work. Subcontractor shall coordinate its Work with any other work in such manner as Contractor may direct to avoid conflict or interference with such work of others, shall participate in the preparation of coordinated drawings of congested areas and shall conform the Work to the work of other subcontractors to prevent discrepancies (and to avoid unnecessary cutting or patching) with contiguous work. At its sole discretion, Contractor may schedule Work during a time of, and from time to time during, winter conditions. The determination of when winter conditions exist shall rest exclusively with Contractor.

## ARTICLE 5: Progress

5.1    Subcontractor shall keep itself informed at all times of the progress of the Work, and of the progress of others whose work may affect, or who may be affected by, its progress. At Contractor's request, Subcontractor shall inform Contractor about materials on hand, progress made in the manufacturing and fabricating of materials for the Work, or any other matters relating to the condition or progress of the Work. Contractor, Owner and Architect and their representatives at all times shall have access to the office, shops and yards of Subcontractor to verify any information about the Work given by Subcontractor.

5.2    Subcontractor, upon twenty-four (24) hours notice, in person or by duly authorized representative having power to act and acceptable to Contractor, shall attend, at its own expense, all meetings or conferences that Contractor or Architect may call, at the building site or elsewhere, for the purpose of discussing progress of the Work, safety at the site, or ways to expedite the completion of the Project.

## ARTICLE 6: Timing

6.1    **TIME IS OF THE ESSENCE IN THE PERFORMANCE OF THIS SUBCONTRACT.** Contractor or Owner or both may sustain financial loss if the whole Project or any part thereof is delayed because Subcontractor fails to perform any part of the Work in accordance with the Contract Documents, or the milestone dates and Substantial and Final Completion dates set forth in the Progress Schedule ("Milestone Dates"), as same may be modified from time to time. Subcontractor shall begin the Work at the time directed by Contractor, and shall

5.121.18 03435                                      4                  Subcontractor Initials _A.P._



perform its obligations under this Subcontract with, diligence and with sufficient manpower to maintain the progress of the Work as scheduled, without delaying other trades or areas of work. At the request of Contractor, Subcontractor shall perform certain parts of the Work before other parts, add extra manpower, or, order overtime labor in order to comply with the Progress Schedule, all without any increase in the Contract Price (unless otherwise specifically provided in the Contract Documents).

## ARTICLE 7: Subcontracts and Purchase Orders

Subcontractor, if it subcontracts any part of the Work, shall enter into agreements with each such Sub-subcontractor substantially similar to this Subcontract and shall require that each such Sub-subcontractor read and expressly agree in writing to be bound by all provisions of the Contract Documents applicable to its portion of the Work. Within five (5) days of the award of this Subcontract or such earlier time as Contractor may direct, Subcontractor shall provide to Contractor a complete list of all its Sub-subcontractors and suppliers for all parts of the Work for Contractor's approval. Subcontractor shall notify Contractor in writing of any proposed changes in its Sub-subcontractors or suppliers not less than five (5) days prior to such change, which notice shall specify the reasons for such proposed change. Without limiting, diminishing or otherwise affecting Subcontractor's obligations hereunder, any such change shall be subject to the approval of Contractor, which approval shall not be unreasonably withheld or delayed. Subcontractor shall ensure that all of its Sub-subcontractors, vendors and suppliers are bound by the General Conditions and Project Schedule.

## ARTICLE 8:     Default and Termination

8.1    Any one or more of the following shall constitute an event of default by Subcontractor:

A.    Subcontractor shall fail or refuse to perform the Work or comply with any term, condition or provision of this Subcontract or of any of the Contract Documents.

B.    Subcontractor shall fail or refuse to pay any of its Sub-subcontractors, suppliers or workers for any materials, labor or other things incorporated into, or used in connection with the Work when such payments are due; provided, however, that if Subcontractor disputes the amount due to a worker, Sub-subcontractor, vendor or supplier, and Subcontractor, within two (2) days of the due date of such payment, at its own expense, posts a bond for the disputed payment in amount and form satisfactory to Contractor as security for such payments, then such non-payment shall not constitute an event of default hereunder.

C.    Subcontractor shall abandon the Work or reduce its labor force to a number insufficient, in Contractor's opinion, to complete the Work within the scheduled time.

D.    Subcontractor fails to perform in accordance with the Project Schedule or is unable



Subcontractor Initials 

to provide adequate assurance that it will complete the Work in a timely manner to Contractor's satisfaction.

E.    Subcontractor files for or has been put into bankruptcy under the Federal Bankruptcy Code either voluntarily or involuntarily or similar proceeding under state law, seeks receivership on account of insolvency or makes an assignment for the benefit of creditors.

F.    Subcontractor fails to provide required bonds in accordance with the General Conditions.

G.    Without limitation of the foregoing, any of the events described in Exhibit E (the "General Conditions") as an event of default shall occur.

H.    Subcontractor is in default under any other contract with Owner, Contractor or any companies owned by or affiliated with Owner or Contractor.

8.2    If any event of default described in Section 8.1 above occurs, then Contractor, at its option, at any time may:

8.2.1    Order Subcontractor immediately to comply with any term, condition or provision of this Subcontract or such other Contract Document;

8.2.2    Order Subcontractor, within a specified time, to remove any defective work or materials and to replace such work or materials with satisfactory work or materials;

8.2.3    Accept any defective work or materials and reduce the Contract Price accordingly;

8.2.4    Perform or arrange to have performed any of Subcontractor's duties or obligations hereunder, at Subcontractor's cost and expense.

8.2.5    Make any payments to satisfy Subcontractor's obligations relating to the Work for labor, materials, equipment, or insurance or other items;

8.2.6    Refuse to make any payments to Subcontractor for Work performed until the event of default is cured to the satisfaction of Contractor; and/or

8.2.7    Upon three (3) days' written notice to Subcontractor, terminate in whole or in part this Subcontract and take possession of all materials, tools, equipment and appliances of Subcontractor and cause all the Work to be finished by whatever means, method or agency which Contractor, in its sole discretion, may choose and take any other steps Contractor, in its sole discretion, may choose to secure any labor, materials, equipment and services and, in any event, Contractor shall have a lien on and may take over all Subcontractor's equipment, tools, appliances and materials (whether on or off-site) and complete the Work; provided, however, that if the default involves any breach of safety laws, regulations or requirements, only one (1) day's written

5.121.18 03435                                    6

Subcontractor Initials 

notice shall be required.

    8.3    If Contractor terminates this Subcontract, as aforesaid, Contractor (to the extent provided herein) shall have no obligation to pay for any Work performed after such termination, and will have no obligation to make any further payments to Subcontractor for Work performed before such termination until the Work has been completed, and accepted by Contractor, and Contractor determines to its complete satisfaction that potential expenses, charges and claims relating to the performance of the Work have been satisfied or satisfactorily bonded over. Such payments to Subcontractor shall in any event be reduced by all amounts due Contractor under the terms of the Contract Documents.

    8.4    Contractor's choice of any remedy shall not operate to waive any other rights or remedies of Contractor provided hereunder, or by law, against Subcontractor or its surety. Contractor, at his option, may choose more than one remedy or choose one or more particular remedies at different times.

    8.5    In the event of Subcontractor's default, Subcontractor shall pay immediately upon demand, all costs, losses, damages and expenses, including, without limitation, all administrative, architectural/engineering, management, overhead and other direct or indirect expenses, including reasonable attorneys' fees (collectively, the "Costs") incurred by Contractor in connection with and as a result of any default by Subcontractor or the exercise of any right or remedy upon Subcontractor's default. If Subcontractor does not pay the Costs immediately, Contractor may withhold and deduct all Costs from any payments of the Contract Price. If Payments due to Subcontractor for completed portions of the Work are not sufficient to cover the Costs, Subcontractor immediately shall pay to Contractor the full amount of any such excess with interest thereon at the maximum interest rate permitted by law. Subcontractor's liability hereunder shall extend to and include the full amount of Costs incurred and obligations assumed by Contractor in good faith under the reasonable belief that such Costs or obligations were necessary or required, whether actually necessary or required or not (i) in protecting and completing the Work and providing labor, materials, equipment, supplies and other items in connection therewith or in re-contracting the Work, and (ii) in settlement, discharge or compromise of any claims, demands, suits and judgments pertaining to or arising out of Work. An itemized statement of such obligations and payments shall be prima facie evidence of Subcontractor's liability.

    8.6    This Subcontract may be terminated by Contractor without cause upon five (5) days prior written notice. In the event of such termination, pursuant to this Section 8.6, Subcontractor shall be reimbursed such amount as shall be due Subcontractor for (1) that portion of the Work satisfactorily performed prior to the effective date of termination, and (2) reasonable costs directly incurred (but specifically excluding lost overhead, profits and consequential damages or other lost opportunity costs) as a direct result of such termination; it being understood that in no event shall payments to Subcontractor exceed the Contract Price, as allocated to the Work actually performed, inasmuch as Subcontractor hereby waives any entitlement to quantum merit.

    8.7    In the event a termination for cause under Section 8.2.7 is judged to be improper by binding dispute resolution, then such termination shall be converted to a termination without cause pursuant to Section 8.6 and Contractor's sole liability and Subcontractor's exclusive remedy

Subcontractor Initials  

TRM

shall be reimbursement as set forth in Section 8.6.

**ARTICLE 9: No Waiver Except in Writing**

No action or failure to act by Contractor shall constitute a waiver of any default in that or any other instance, except to the extent Contractor specifically states in writing.

**ARTICLE 10: Assignments**

10.1    Subcontractor shall not assign this Subcontract, in whole or in part, or hypothecate, pledge or assign any payments due it under this Subcontract, without Contractor's prior written consent, nor shall Subcontractor assign any monies due or to become due to him under this Subcontract without the prior written consent of Contractor which may be withheld in Contractor's sole and absolute discretion.  Any such assignment made without the prior written consent of Contractor shall be void and the assignee(s) in any such case shall acquire no rights in this Subcontract. Any such consent, if given, shall not relieve Subcontractor from its obligations under the Contract Documents or change any of the terms thereof.

10.2    This Subcontract may, upon written notice, be assigned to another entity designated by Contractor and/or Owner (as may change from time-to-time) ("Assigned Contractor") without the need for any action by the Contractor, Assigned Contractor, or approval by Subcontractor and in such event Subcontractor agrees to and shall continue to be bound by this Subcontract, and shall look solely to Assigned Contractor for payment and performance hereunder.

10.3    Notwithstanding the provisions of this Article 10, Subcontractor hereby consents to and shall execute customary documents conditionally assigning this Subcontract to Owner and/or Owner's Lender, in the event of a default by Contractor or any Assigned Contractor.

**ARTICLE 11: Merger**

This Subcontract constitutes the entire agreement between the parties hereto.  No oral representations or other agreements have been made by Contractor except as stated in the Subcontract.  All previous date orders, proposals, bids, letters, oral or written promises and understandings relating to the subject matter of this Subcontract, are hereby declared to be null and void. This Subcontract is complete and shall not be interpreted by any reference to any previous letter, proposal, document or understanding, written or oral, or other document or agreement, except as specifically provided in this Subcontract.

**ARTICLE 12: Amendments**

No amendments to this Subcontract shall change or modify this Subcontract unless in writing and signed by both Contractor and Subcontractor.

**ARTICLE 13: Captions**

5.121.18 0343S

8.

Subcontractor Initials  

TRM

The captions to the provisions of this Subcontract and General Conditions are for convenience only and are not a part of the Contract Documents and shall not be considered in any interpretation thereof.

**ARTICLE 14: Notices**

Any notice required to be given by the terms and provisions of this Subcontract or by any law or governmental regulation, either by Contractor or Subcontractor (or which either party may desire to give hereunder), shall be in writing and shall be personally delivered or forwarded by overnight express mail or registered or certified mail, return receipt requested, and shall be addressed to the party hereto to whom directed, at its address as follows:

If to Contractor:

Toll Brothers
New York City Living Division Office
75 Broad Street, Suite 2100
New York, NY 10004
Attn: David Von Spreckelsen, Division President

With Copies to:
Toll Brothers
New Jersey City Living Division
95 Christopher Columbus Drive, Floor 12A,
Jersey City, NJ 07302
Attn: Thomas Mulvey, President, Toll Brothers City Living

Toll Brothers
250 Gibraltar Road
Horsham, PA 19044
Attn: John McDonald, Esq., Senior Vice President and General Counsel

If to Subcontractor:

Name: _R&S United Services Inc._

Address: _15 Ranch Drive West_

_Amityville  NY  11701_

Telephone: _631  841  1525_

Fax: _631  841  1529_

Attention: _Avi Polischuk_

Subcontractor Initials  

Either party may change the address to which any notice referred to herein is to be sent by giving written notice of such change of address to the other party in the manner provided above. Notice personally delivered or forwarded by overnight express mail pursuant to this Article 16 shall be effective on the date of delivery. Notice given by mail shall be effective on the date of receipt appearing on the return receipt; or, in the absence of a return receipt, the date of attempted delivery.

**ARTICLE 15: Miscellaneous**

15.1     Each of the Exhibits attached hereto is hereby made a part hereof. If any provision of this Subcontract, or the application thereof to any person or situation, to any extent shall be held invalid or unenforceable, the remainder of said Subcontract, and the application of such provision to persons or situations other than those to which it shall have been held invalid or unenforceable, shall not be affected thereby, but shall continue valid and enforceable to the fullest extent permitted by law. All provisions of this Subcontract which by their terms require performance by either party hereto after termination of this Subcontract shall survive any such termination.

15.2     Subcontractor shall provide a competent English-speaking representative who shall be assigned to the site on a full-time basis during the performance of the Work to represent Subcontractor for the purpose of receiving notices, orders and instructions and who will, when requested by Contractor, report upon the progress of the Work.

15.3     This Subcontract and all other Contract Documents shall be construed under the laws of the State of where the Project is located without regard to its conflict of laws principles.

**ARTICLE 16:  No Third-Party Beneficiary.**  Except as otherwise expressly provided herein, no provision of the Contract Documents shall in any way inure to the benefit of any third party (including the public at large) so as to constitute any such person a third-party beneficiary of this Subcontract, any other Contract Documents or any one or more of the terms thereof or otherwise give rise to any cause of action in any person not a party hereto.

**IN WITNESS WHEREOF**, the parties hereto have executed this Subcontract as of the day and year first above written.

OWNER:

By: _____

Print Name: THOMAS MULVEY

Title: PRESIDENT

Date: 03/30/2018

SUBCONTRACTOR:

By: _____

Print Name: Avi Polischuk

Title: President

Date: 03/30/2018

5.121.18 03435

10

Subcontractor Initials A.P.



TRM

# EXHIBIT "A"

## SCOPE OF WORK

TRM





# EXHIBIT "A" HVAC WATER & AIR Work

Contract for:        HVAC WATER & AIR

Project:              77 Charlton St
                      New York City, NY

Subcontractor:        R&S United Services Inc.

Contractor:           Toll NY II, LLC

Scope of Work

1.    It is understood that:
   1.1    All defined terms used herein are to have the same meaning as those terms
          defined in the Trade Subcontract between, R&S United Services Inc. and Toll
          GC LLC. In the event that there is a discrepancy between the two, the trade
          Subcontract shall control.
   1.2    This Exhibit A (the "Scope of Work") shall supersede and take precedence over
          all documents, plans, specifications and other items considered part of the
          contract documents or inferred to be part of the contract documents.
   1.3    The intent of this Exhibit "A" is not to delineate the complete scope of
          work but only to emphasize certain items that were discussed and agreed
          to during the bid and subsequent award of this Agreement. The Contract
          Scope of Work is comprised of all of the Contract Documents and whatever
          is necessary to complete the HVAC WATER & AIR Work in accordance
          with the drawings and specifications as amended by this Exhibit "A".
   1.4    This Exhibit A and its specific contents shall take precedence over the
          plans and specifications should there be discrepancy between them.
   1.5    This Subcontractor acknowledges that the site conditions and cleanliness
          of the same are of the paramount importance to the Contractor. This
          Subcontractor shall cooperate and keep all frontages of this job site, areas
          of material storage and trailer free from trash, litter, detritus and extra or
          discarded materials. Subcontractor shall be responsible for the cleanliness
          of the Subcontractors own employees and their waste from breaks, coffee
          and lunch.
   1.6    This is a lump sum price and as such, and unless directed in writing by the
          Contractor, no additional work shall be accepted as an addition to the
          contract amount.
   1.7    Any work, which may be occasioned on a time and material basis, shall be
          submitted on the same day the work is carried out. Under no
          circumstances will time and material tickets be entertained for review if
          they are not submitted within one business day of when the work takes
          place.
   1.8    Any employee deemed inappropriate or unacceptable by the Construction
          Manager shall be removed from the project site upon first demand by the
          Contractor.

Contract for 77 Charlton St HVAC WATER & AIR Work          Sub Initials
Contract between Toll NY II, LLC and R&S UNITED SERVICES INC.    Toll NY II, LLC Initials
Contract dated 03/30/2018

1

## EXHIBIT "A" HVAC WATER & AIR Work

1.9    This is a zero tolerance project with respect to drugs and alcohol. Any parties using these substances shall be required to leave the premises upon demand by the Contractor or its representative.

1.10    This subcontractor shall center pile all debris on a daily basis. Containers provided by others.

1.11    Contractor shall have no obligation to provide parking for subcontractor, his employees or agents.

1.12    This subcontractor understands that the word "Provide" as used herein this Exhibit "A" scope of work shall mean "Furnish and installed" by this subcontractor.

2.    Scope of Work by the Subcontractor shall include, but not be limited by the following:

2.1    Include all HVAC WATER & AIR work (including labor, materials, supervision, equipment, permits, etc. needed to complete installation) as part of the work inclusive of any adjustments, refinements and punch listing that may be required by the Contractor. This Subcontractor shall be responsible for all HVAC WATER & AIR work on this Project as called for on the civil, Plumbing, Sprinkler, Electrical, Mechanical, Architectural, Structural Contract Drawings and respective Specifications.

2.2    Includes all materials, tools, appliances, scaffolds and ladders, lifting devices, screws, fasteners, expendables and each and every item required for a complete and proper job.

2.3    This Subcontractor shall be responsible for all items that are associated with the HVAC WATER & AIR work, whether or not specifically called for in this Scope of Work within the plans and specifications or in the terms of the Contract. This Subcontractor shall include a complete product in every respect.

2.4    This Subcontractor acknowledges that the work must be in compliance with Seismic Code requirements for this area. This Subcontractor shall include all costs for work and materials associated with complying with the Seismic Code in every respect.

2.5    Furnish and install all associated items on equipment, as may be recommended by the manufacturers of said equipment, as required by the contract drawings and/or specifications, or as required by the local authorities having jurisdiction, or as required by the Contractor.

2.5.1    This Scope of Work includes all costs for comeback time to install any equipment at wall, manhole locations including hoist openings and tower crane tiebacks.

2.6    Furnish, receive, handle, install, and pipe approved vertical and horizontal heat pumps and equipment.

2.6.1    Provide sleeves for supply diffuser, diffuser, and return grille, 1 set of construction filters and 1 set of final filters.

2.6.2    Provide top discharge ductwork and diffuser for discharge ductwork

Contract for 77 Charlton St HVAC WATER & AIR Work     Sub Initials
Contract between Toll NY II, LLC and R&S UNITED SERVICES INC.     Toll NY II, LLC Initials
Contract dated 03/30/2018

2

## EXHIBIT "A" HVAC WATER & AIR Work

and diffuser for discharge duct, as applicable.

2.6.3 Provide local controls for these units, including all thermostats and wiring

2.6.4 Provide all condenser water piping and pumps required to service all heat pumps.

2.6.5 Provide, including receiving and handling all required pumps. Include all required hangars, supports, motor starters, variable frequency drives (VFD's), vibration isolators and pads, etc.

2.6.6 Provide, including receiving and handling, all boilers. Include all work called for in the boiler schedule. Provide all boiler control panels and boiler controls. This Subcontractor shall be responsible for a complete local boiler control system, including all controllers, sensors, conduit, wiring, relays, programming and startup, etc.

　2.6.6.1 The electrical subcontractor shall provide power to controllers, starters, and VFD's only.

2.6.7 Provide, including receiving and handling, of the cooling towers and components.

　2.6.7.1 Provide all vibration isolators, basin heaters, control panels, piping connections and valves.

　2.6.7.2 Provide all required supply, return, equalizer, make-up and drain piping.

　2.6.7.3 Furnish and install heat trace, insulate and jacket these exposed condenser water lines on the roof, etc.

　2.6.7.4 Provide local controls required to accomplish the designed sequence of operation.

　2.6.7.5 Provide controllers, control valves, sensors, conduit and wire required to provide a complete and operating local control system.

　　2.6.7.5.1 Electrical subcontractor will provide power wiring only.

　2.6.7.6 This Subcontractor will coordinate cooling tower requirements with steel dunnage. If support beyond the designed provisions is required, it will be the responsibility of this Subcontractor to provide said support.

　　2.6.7.6.1 This Subcontractor is responsible for coordinating final locations of this designed dunnage.

2.6.8 Provide all expansion tanks and air separators. Provide drains for the air separators to the floor drains.

2.6.9 Provide all required heating supply, return, and drain piping.

2.6.10 Provide all required condenser water supply, return and drain piping.

2.6.11 Provide all control valves, gate valves, shut off valves, check valves, triple duty valves, circuit setters, strainers, thermometers, gauges, etc.

Contract for 77 Charlton St HVAC WATER & AIR Work
Contract between Toll NY II, LLC and R&S UNITED SERVICES INC.
Contract dated 03/30/2018

Sub Initials
Toll NY II, LLC Initials 

TRM

3

EXHIBIT "A" HVAC WATER & AIR Work

2.6.12 Provide all required pipe insulation.
2.6.13 Provide make up water connections for boiler and condenser water system.
  2.6.13.1 Make up water connections to be within 5' of boiler, 2 independent make up water lines.
2.6.14 Provide all vibration isolation for all equipment and on all piping hangers.
2.6.15 Provide all local control wiring and interlocking wiring required for a code compliant system.
  2.6.15.1 Local controls shall be able to perform the sequence of operation as per the specifications.
  2.6.15.2 The electrical subcontractor will provide power wiring to the controller only.
2.6.16 Provide a complete local control system for all equipment installed under this contract.
  2.6.16.1 This Subcontractor will submit control drawings, components, and engineering data for approval.
  2.6.16.2 System shall operate per the engineer's sequence of operation.
  2.6.16.3 Subcontractor shall perform all testing and start-up of the system.
  2.6.16.4 Provide training on the operation of the systems to the Contractor and building super.
2.6.17 Provide all testing and balancing of all water source equipment.
  2.6.17.1 Provide all circuit setters required to properly water balance the system, providing applicable reports.
2.6.18 Provide heat tracing on all exterior piping installed by this Subcontractor.
  2.6.18.1 The electrical subcontractor will provide power connection only.
2.6.19 Hot water system piping 2-1/2" or larger shall be schedule 40 steel pipe. All hot water piping outside the mechanical room shall be welded, soft soldered or threaded pipe. No Victaulic piping shall be used outside the boiler room.
2.6.20 Hot water system piping 2" and smaller shall be copper L pipe. Copper pope could be soft soldered and does not need to be brazed. Subcontractor has the option of soft soldering or brazing.
2.6.21 All boiler room piping will be welded.
2.6.22 All Condenser water piping larger than 2-1/2" shall be welded outside the boiler room. All condenser water piping is acceptable in black steel schedule 40 for pipe, except for the condensate risers which shall be copper.
2.6.23 All condenser water piping below 2-1/2" shall be threaded schedule 40 steel.
2.6.24 Condenser water supply and return piping does not need to be

## EXHIBIT "A" HVAC WATER & AIR Work

insulated.

2.6.25 Subcontractor shall install all condensate risers in copper and insulate them with 1" thick fiberglass insulation.

    2.6.25.1   Using CPVC schedule 80 will be acceptable as long as all applicable codes are satisfied.

2.6.26 Cooling tower supply and return express riser shall be welded. These risers will not be insulated.

2.6.27 Cooling tower piping outside/exposed on the roof shall be heat traced, insulated and have an aluminum weather proof jacket.

2.6.28

2.7 Provide sheet metal ductwork for all supply, return, exhausts, sleeves, blank-off and plenums.

2.7.1 Provide, including receiving and handling, all required fans. Include all fan accessories, including vibration isolators and guards.

2.7.2 Provide all ductwork accessories, including connectors, hangers, safing angles, wire mesh screens, flex connections, etc.

2.7.3 Provide all required corridor and common area supply and return ductwork.

2.7.4 Provide all rooftop ductwork with specified waterproofing material and supports.

    2.7.4.1   Provide prefabricated 12" insulated metal curbs at all duct penetrations through the roof. Provide all flashing required to waterproof the ductwork at the curb.

2.7.5 All duct thicknesses shall be as per SMACNA standards.

2.7.6 Provide all mechanical louvers, insulated blank off panels, and motorized dampers. All louvers shall be submitted for approval of finish, color and type.

    2.7.6.1   Provide all louvers, except for those glazed in to a window or storefront system.

2.7.7 Provide all required boots, fire and smoke dampers, retaining angles, control dampers with actuators, back draft dampers, volume dampers, ductwork access doors, etc.

    2.7.7.1   All dampers provided by this Subcontractor shall be furnished with factory mounted actuators.

2.7.8 Provide all flex connections to fans and horizontal heat pumps.

2.7.9 Provide cable operator dampers where possible to eliminate volume dampers and access doors.

2.7.10 Provide fire dampers close to the face of grills, where not limited by fire wrap, to eliminate ceiling access doors.

2.7.11 Provide required gas meter room.

2.7.12 Provide all ductwork insulation.

2.7.13 Provide all acoustical liners.

2.7.14 Provide two hour rated fire wrap. Fire wrap is required on all horizontal transfers of duct risers not able to receive fire dampers. This Subcontractor shall submit this wrap for approval. Installation

Contract for 77 Charlton St HVAC WATER & AIR Work
Contract between Toll NY II, LLC and R&S UNITED SERVICES INC.
Contract dated 03/30/2018

Sub Initials
Toll NY II, LLC Initials

TRM

5

## EXHIBIT "A" HVAC WATER & AIR Work

shall be per manufacturer's recommendations.

2.7.15 Install all required duct detectors.

2.7.15.1 Detectors will be wired by electrical subcontractor. This Subcontractor will coordinate detector installation with the electrical subcontractor.

2.7.15.2 This Subcontractor will furnish all required duct detectors if not provided by the electrical subcontractor.

2.7.16 Provide all boiler breeching. Flues shall be 100% code compliant, inclusive of all components required to exhaust the boilers.

2.7.16.1 Provide insulation for boiler breeching.

2.7.16.2 Include all testing of boiler breeching as required for code and specification compliance.

2.7.17 Provide all grilles, registers, and diffusers.

2.7.17.1 Vertical heat pump diffusers and return grilles will be furnished and installed by this Subcontractor.

2.7.17.1.1 This Subcontractor shall provide all ductwork and diffusers that attach to the top of the vertical heat pumps.

2.7.18 Provide all required elevator smoke vents, fire and smoke dampers, and louvers required for elevator shaft venting.

2.7.19 Provide dryer exhaust system, complete with wiring and controls work related to this system.

2.7.19.1 Power wiring shall be installed by the electrical subcontractor.

2.8 Additional items

2.8.1 All electric unit heaters and electric convection heaters provided by the electrical subcontractor. No electric unit heaters are required by this Subcontractor.

2.8.2 Provide all roof rails and curbs for all roof work

2.8.3 Provide all testing at specified pressures. All testing shall be witnessed by a Contractor's representative. Provide a log of each individual approved test.

2.8.4 This Subcontractor shall cap all duct and piping when not actively being worked on to prevent dirt, dust, debris and foreign objects from entering the duct/piping systems.

2.8.5 Provide all valve tags and three framed valve tag charts.

2.8.6 Furnish all architect approved access doors required for proper access, for this Subcontractor's work, to be installed by the carpenter subcontractor.

2.8.6.1 Provide door locations, by drawing and field flagging all locations.

2.8.7 Provide a complete chemical cleaning of the entire boiler system and cooling system once the system has been tested and signed off.

2.8.8 Furnish all motor starters, hand-off-auto starters, service disconnects, and VFD's as required.

Contract for 77 Charlton St HVAC WATER & AIR Work
Contract between Toll NY II, LLC and R&S UNITED SERVICES INC.
Contract dated 03/30/2018

Sub Initials
Toll NY II, LLC Initials

6

EXHIBIT "A" HVAC WATER & AIR Work

2.8.9  Provide all fire-stopping for this contract work.
    2.8.9.1  Provide all fire-stopping of all work penetrating through floors and walls to maintain fire rating.
    2.8.9.2  Include all patching of fire wrap.
    2.8.9.3  Firestop all duct penetrations through all floors and rated walls.
    2.8.9.4  If ductwork is installed tight to slab, this Subcontractor will not fire wrap all four sides of the duct work. This Subcontractor will fire wrap the duct by means of an approved three-sided detail.
    2.8.9.5  All fire-wrap and fire stopping shall be from a single source, 3M, unless otherwise approved by the Contractor.

2.8.10  Include all filings, permits, self-certifications, inspections, engineers reports, final signoffs required to properly complete your work.
    2.8.10.1  All testing and inspections as required by the DOB.
    2.8.10.2  All controlled inspections for HVAC and boiler sign offs.
    2.8.10.3  All boiler inspections and filings of 900A Schedule C.
    2.8.10.4  All DOB/DEP/FDNY filings required by agencies.
    2.8.10.5  All testing and balancing required by the Contractor and engineer, to contractually meet the TCO, C of O, and DOB requirements.

2.8.11  Acquire DOB/FDNY permits for storage/use of compressed gases.
    2.8.11.1  Maintain fire extinguishers and fire watch for all hot work.

2.8.12  Include all filings, permits, self-certifications, inspections, engineers reports, final signoffs required to properly complete your work.

2.8.13  Provide pad layout drawings for any equipment pads required under this contract.

2.8.14  Provide sleeve shop drawings for all its ductwork and piping of each floor for coordination and approval.
    2.8.14.1  The superstructure subcontractor will fabricate and install all duct opening boxes per this Subcontractor's opening drawings. This Subcontractor will verify boxes have been placed in the correct locations.
    2.8.14.2  Openings and sleeves incorrectly laid out, missed, or incorrectly sized, for slabs and CMU & Drywall walls, will be relocated by this Subcontractor at no additional cost to the Contractor. This may require chopping an opening bigger, cutting a new opening, or closing an opening because it is too large. This Subcontractor shall submit to the structural engineer any modifications to concrete for written approval, and shall be responsible for any additional costs for associated with any related structural

TRM

Contract for 77 Charlton St HVAC WATER & AIR Work
Contract between Toll NY II, LLC and R&S UNITED SERVICES INC.
Contract dated 03/30/2018

Sub Initials
Toll NY II, LLC Initials

7

## EXHIBIT "A" HVAC WATER & AIR Work

repairs.

2.8.15 Provide one set of construction filters, to be delivered with the unit upon installation.

2.8.16 Provide one set of MERV 8 permanentfilters for all vertical and horizontal heat pumps.

2.8.17 Once construction is completed, this Subcontractor will, clean and install the set of permanent filters, prior to turnover.

2.8.18 Provide factory start-up of all equipment, including but not limited to the vertical and horizontal heat pumps, cooling tower, boilers, pumps, etc.

2.8.19 Provide commissioning of all equipment and systems included as per specifications and manufacturer requirements.

2.8.20 All work shall be sequenced in a manner that all inspections and signoffs can be phased floor by floor.

2.8.21 Contractor will provide the following means of lifting equipment:

    2.8.21.1 A material hoist

    2.8.21.2 Contractor will provide two scheduled weekends for picking this Subcontractor's equipment with the superstructure subcontractor's mobile crane. This Subcontractor shall schedule and coordinate its equipment deliveries and picks with the superstructure subcontractor, and all other subcontractors that will be also using those weekends for lifting their respective equipment. If this Subcontractor fails to appropriately coordinate and schedule it's equipment deliveries to make use of these scheduled weekends, this Subcontractor shall be responsible for lifting it's equipment at no additional cost to the Contractor.

2.8.22 Include rigging of all materials that do not fit in provided hoist elevator. This includes all rigging of equipment to be picked using the cranes provided by others.

2.8.23 This Subcontractor shall include receiving, handling and rigging all equipment and material furnished by this Subcontractor, for installation by others. As-builts, operational and maintenance manuals, and Attic stock as specified.

2.8.24 Labor relations to avoid work stoppage.

2.8.25 Replace fall protection if removed by this Subcontractor.

2.8.26 All OSHA approved protection and 10-hour OSHA Certifications for all employees.

2.8.27 All required layout of equipment and materials (axis and benchmark lines provided by Contractor). Any and all overtime or premium time required for a 6-day schedule, including Saturdays if deemed falling behind schedule. All applicable insurances and taxes. Include two out of sequence hoist-line apartments at each floor. Subcontractor is aware that the hoists shall be located on the

Contract for 77 Charlton St HVAC WATER & AIR Work          Sub Initials
Contract between Toll NY II, LLC and R&S UNITED SERVICES INC.     Toll NY II, LLC Initials
Contract dated 03/30/2018

8

TRM

## EXHIBIT "A" HVAC WATER & AIR Work

courtyard face of each tower.

2.8.28 Subcontractor shall comply with all federal and local laws regarding noise control. Mufflers, whisperized compressors, etc. shall be used throughout as and when requested by the Contractor or as required by the Authorities having jurisdiction, whether at the local, municipal, county, State or federal levels.

2.8.29 Subcontractor will provide all required approved enclosures for fuel storage.

2.8.30 This Subcontractor shall include all OSHA, NYC building code and B.E.S.T. Squad safety requirements for construction operations.

2.8.31 Subcontractor includes all applicable insurance as required per exhibit "C" of the contract.

2.8.32 Subcontractor shall be afforded no parking for the benefit of Subcontractors employees.

2.9 Joint check addendum paperwork has been attached to this contract as an exhibit. Subcontractor understands that joint checks will not be issued as the standard form of monthly payments on this project. In the event this subcontractor fails to meet its financial obligations with its suppliers, labor force, etc., and these entities reach out to the Contractor for payment, the Contractor shall have the right to issue joint checks to both this subcontractor and the entity.

2.10 This subcontractor understands that it is responsible for the protection and maintenance of all material, tools, and equipment delivered to the job site.

2.10.1 Any breakage that occurs prior to the material being installed shall be the responsibility of this subcontractor to replace unless deliberate vandalism is acknowledged by the Contractor.

2.11 Included in this agreement is the furnishing and installation of the Work based on the following guarantees all of which are subject to the various definitions of defective materials and workmanship listed in the specification. It is expressly understood that all punch-list items and operating deficiencies in the HVAC WATER & AIR work shall be remedied prior to the acceptance of the work by the Contractor. No guarantee period shall commence until Contractor has accepted the work by way of final payment.

2.12 Subcontractor to provide a two (2) year field labor guarantee above and beyond any manufacturer's warranty from TCO of each floor or final acceptance of the work (whichever is later).

2.12.1 If any failures occur pertaining to the above warranty items or any related items, this subcontractor shall provide all field and/or shop labor required to remove, discard and replace any defective material.

2.13 This Subcontractor shall furnish competent representation at all project meetings, held with the Architect and/or Contractor.

2.14 This subcontractor shall be responsible for providing layout for their own work. Contractor will provide a North/South and east/West

Contract for 77 Charlton St HVAC WATER & AIR Work
Contract between Toll NY II, LLC and R&S UNITED SERVICES INC.
Contract dated 03/30/2018

Sub Initials
Toll NY II, LLC Initials

TRM

9

## EXHIBIT "A" HVAC WATER & AIR Work

        property lines and benchmark on each floor only.

2.15    The base contract price for this agreement shall include all required Workers compensation, General Liability and Auto Insurance as per the limitations and additional insured requirements as set forth by the Contractor. Rigger's liability insurance is specifically included in this contract for this subcontractor's picks and crane time. If this subcontractor provides crane picks for other subcontractors, only certified riggers will be used by that subcontractor and that subcontractor shall be required to sign a hold harmless and indemnification form issued by this subcontractor. The Contractor shall also issue an insurance addendum to that subcontractor so as to have the Owners builders risk policy cover that material in case of damage to said material. Subcontractors shall coordinate with each other as well as the contractor to schedule these picks but crane subcontractor shall not unnecessarily delay picks if properly notified.

2.16    The base contract price shall include all applicable taxes.

2.17    Retainage will be held at 10% until this Subcontractor has billed 50% complete, after which point no additional retainage shall be held.

2.18    This subcontractor will protect its own material onsite during construction. Contractor will not protect its installed work or adjacent property and/or tools, equipment, etc.

2.19    This subcontractor will be responsible for field measuring and fabrication of its work per the sizes specified on the contract documents and/or approved shop drawings.

3.0    Submittals, shop drawings, testing, manuals, guarantees, warranties, filing, permits, etc:

3.1    Subcontractor shall include all modifications to and logical compilation of Subcontractor's specifications, performance and product data, installation and maintenance manuals, etc. as part of the scope of this of this Agreement.

3.2    Shop drawings shall be produced in a sequence consistent with job progress as approved by the Contractor. Subcontractor shall submit a shop drawing submittal schedule for the Contractor's approval no later than five (5) business days after execution of the Contract. At a minimum, Subcontractor shall submit electronically produced pdf (unalterable copies) of each drawing along with six (6) prints of each drawing or submittal to Contractor or his designee.

3.3    Subcontractor shall agree to maintain contractor's electronic file naming convention for electronic submittals. The convention is as follows: Division #-Item #-Revision #_Date Submitted_Contractor's Name_Brief Description.

3.4    All design and engineering work for this Subcontractor shall be performed by duly licensed Professional Engineer licensed in the State of New York and other qualified professionals and is subject to approval by Contractor or his designee. Dimensional errors or omissions by this Subcontractor on

Contract for 77 Charlton St HVAC WATER & AIR Work          Sub Initials
Contract between Toll NY II, LLC and R&S UNITED SERVICES INC.    Toll NY II, LLC Initials
Contract dated 03/30/2018

10

# EXHIBIT "A" HVAC WATER & AIR Work

its submissions are this Subcontractor's responsibility even if Contractor or his designee has provided approval. Subcontractor shall make changes in design or details as required by Contractor or his designee. Subcontractor shall remain solely responsible for the adequacy of the Work, including design, engineering and the production of plans, drawings and specifications, and for compliance with all applicable codes, restrictions, laws, rules and regulations.

3.5    This Subcontractor shall prepare and submit three (3) operating and maintenance manuals for all equipment to be submitted for Contractor's review and use.

4.0    Coordination:

4.1    This Subcontractor shall coordinate the work of this Contract with the work of other trades prior to the installation of the Work. This Subcontractor will not be reimbursed for the cost of field changes required for clearance of other trades work resulting from improper coordination.

4.2    This Subcontractor is to coordinate all work with the Contractor to correct work caused by poor or erroneous coordination or delay caused by late submissions of this Subcontractor's shop drawings. This Subcontractor will not be reimbursed for any field changes required for clearance, etc. of the work of other trades resulting from improper coordination.

5.0    Safety and Authorities Having Jurisdiction

5.1    This Subcontractor shall be responsible for any and all requirements, whether published or a requirement of an inspector from the local government, the County, the State or the Federal authorities presenting themselves as having jurisdiction.

5.2    Subcontractor shall in the performance of the work of this Agreement (including temporary protection) fully comply with the requirements of OSHA and fully understands and agrees to assume all responsibility for any New York Department of Buildings, OSHA and any other governmental agency citations, penalties, fines, judgments, work stoppages and resultant legal fees imposed upon the Contractor as a result of Subcontractor's non-compliance. The amount of the cost of any of the aforementioned penalties, work stoppages and legal fees, shall be charged to Subcontractor's account.

5.3    All temporary protection methods required by the nature of Subcontractor's work to protect and prevent injury or damage to other persons or property shall be the responsibility of Subcontractor and Subcontractor shall perform its work in such a manner so as to avoid such injury or damage. All personnel shall wear approved hardhats and provide other safety provisions as required by New York City and OSHA.

5.4    All subcontractor's employees on site personnel shall have OSHA 10-hour training cards.

5.5    Subcontractor must wear personal protective harnesses and tie into the existing leading edge fall protection (i.e D rings on carabineers cast into

Contract for 77 Charlton St HVAC WATER & AIR Work          Sub Initials
Contract between Toll NY II, LLC and R&S UNITED SERVICES INC.    Toll NY II, LLC Initials
Contract dated 03/30/2018

11

EXHIBIT "A" HVAC WATER & AIR Work

the concrete at each column) whenever performing perimeter edge work.

5.6 Subcontractor shall provide the required flagmen to be utilized to stop vehicular and/or pedestrian traffic during all lifting or hoisting operations as required. During normal operations, this Subcontractor shall limit all operations to the interior of the fence line. Should flagmen be required due to "street crossing" for safety, this Subcontractor shall properly supervise and provide OSHA trained flagmen for same. For trucking entering and leaving the job site, provide adequate supervision and flagmen. Police, if necessary, shall be provided by owner.

5.7 Subcontractor will be responsible to obtain any and all permits, other than the general building permit, including but not limited to street or sidewalk closings, crane operations, road closing, etc. as may be required for the performance of this work, and as required by the authorities having jurisdiction.

5.8 Subcontractor will maintain safe working conditions throughout. Subcontractor will follow the directives of Contractor and/or Contractor's insurance company's personnel immediately when safety deficiencies are noted.

5.9 This Subcontractor shall be responsible for protecting the person and property of the general public from harm and damage caused by his operations.

5.10 This Subcontractor shall perform the work in the safest possible manner and erect light and maintain in safe condition all areas of work and include all other safeguards required by any and all laws, codes, ordinances, rules, regulations, and requirements of public authorities, and take all other measures necessary or proper to protect human life and property. All such safeguards shall in all respects be satisfactory to Contractor and comply with all legal requirements.

5.11 This Subcontractor's field personnel will be responsible to participate in pre-planning meetings as and when required for the various tasks this Subcontractor will be perform in the field.

5.12 Proper work attire shall be required. This shall include but not be limited to proper work boots, pants, shirts, hard hats, etc. No shorts or sleeveless shirts will be allowed. Reflective safety vests shall be worn, regardless of weather, when ever working in or adjacent to the street, when loading, and directing street operations s or in wheel machinery on the street.

5.13 All workers will be expected to participate in weekly safety meetings and tool box talks.

6 Deliveries, rigging, handling, etc.:

6.1 Provide labor to ensure that all tools and materials and temporary staging of any type is removed from their locations if said locations are disrupting the progress of other trades in the opinion of the Contractor. Apartments shall not be used as shanties by this trade in any circumstance unless permitted in writing by the Contractor.

Contract for 77 Charlton St HVAC WATER & AIR Work
Contract between Toll NY II, LLC and R&S UNITED SERVICES INC.
Contract dated 03/30/2018

Sub Initials
Toll NY II, LLC Initials

TRM

12

# EXHIBIT "A" HVAC WATER & AIR Work

    6.2 Take care to handle all finished materials and store same in a manner consistent with the manufacturer's requirements. Take all reasonable precautions to ensure that the finished material is located on the project site in areas free from likely damage by others, the elements or other sources impacting these products.

    6.3 This Subcontractor shall be responsible for all rigging and hoisting of material and equipment and shall coordinate with the Contractor's field personnel.

    6.4 Subcontractor shall notify Contractor or his designee twenty-four (24) hours in advance of any delivery of material to the Project site.

7   Scheduling:

    7.1 Subcontractor shall not perform Work that creates noise before 7:00 am or after 6:00 pm. on weekdays. Subcontractor shall not perform any Work on Saturday or Sunday without expressed written permission from the New York City Building Department or the Contractor.

    7.2 Time is of the essence of this Contract. This Subcontractor agrees to complete its work within the schedule parameters and requirements established by the Contract Documents.

    7.3 This Subcontractor agrees to comply with all requirements of the "the Schedule" as stipulated herein. The Contractor may modify the start dates as indicated on the Schedule. This Subcontractor shall nonetheless comply with the activity sequences and activity durations as indicated on the Schedule, unless directed otherwise by the Contractor. This Subcontractor further agrees to perform such other work as may not be indicated on the Schedule in accordance with such schedule requirements as the Contractor may direct. This Subcontractor shall coordinate its work with all other subcontractors and with the Contractor.

    7.4 Subcontractor shall furnish a trade payment breakdown (Schedule of Values) within ten (10) days from execution of the Contract for approval by Contractor.

    7.5 This Subcontractor shall work in such areas where work has been scheduled with a sufficient workforce to complete the work within the scheduled duration. A shortage of labor in the industry shall not be accepted as an excuse for not properly manning the job.

    7.6 This Subcontractor understands that it is essential that many of its activities be performed in close coordination with, at the same time as, or in close sequence with the work of other trades. If the Contractor directs that certain work be performed on a certain day and/or at a certain time, this Subcontractor shall arrange to perform the work accordingly. This Subcontractor shall be responsible for any costs arising out of its failure to so perform the work.

    7.7 If the Contractor directs that the work in certain locations be performed before the work in other locations, or that the work be performed in certain sequences, then this Subcontractor shall perform its work accordingly. In the event that the work in certain areas must be delayed, then this Subcontractor

Contract for 77 Charlton St HVAC WATER & AIR Work    Sub Initials
Contract between Toll NY II, LLC and R&S UNITED SERVICES INC.    Toll NY II, LLC Initials
Contract dated 03/30/2018

13

## EXHIBIT "A" HVAC WATER & AIR Work

shall perform all of its other work and return to the location(s) when directed to perform the work, which had been delayed. If the Contractor directs that work be left out, this Subcontractor shall leave such work out and return when directed to complete the work left out.

7.8 All costs to comply with the schedule requirements described herein are included within the Contract Price. This Subcontractor shall be responsible for all costs arising out of its failure to perform in accordance with these requirements.

7.9 There shall be no escalation of price for duration of the Contract, nor there any additional cost due to the delayed start or protracted duration of installation as required by the progress of the project.

7.10 Work under this Contract shall commence immediately when directed by the Contractor. This Subcontractor shall proceed when and where directed with sufficient labor and manpower to maintain the Contractor's schedule.

7.11 This Subcontractor will submit a detailed construction schedule for this trade's work within one (1) week from request of same by the Contractor, and this schedule shall be further established and coordinated with the Contractor. This Subcontractor will update schedule on a weekly basis to indicate job progress.

7.12 This Subcontractor shall provide adequate manpower to keep up with the progress of the job. If any time this Subcontractor falls behind the schedule due to his own fault, he is to immediately commence whatever additional overtime and/or weekend work required to bring the status of his Work back to the schedule approved by the Contractor. If this Subcontractor falls behind schedule due to his own fault, the extra costs including premium time costs for the other trades to make up such lost time shall be the responsibility of this Subcontractor at no additional cost to the Contractor.

7.13 Subcontractor shall furnish submittals within two (2) weeks after contract award.

7.14 This Subcontractor has reviewed the site logistics plans provided by the Contractor and will accommodate erection in accordance with the schedule on a regular time basis.

8 Schedule:

8.1 The Subcontractor shall submit the following to The Contractor:

8.1.1 Name and experience history of proposed sub-Subcontractors and suppliers

8.1.2 Material availability.

8.1.3 Equipment availability.

8.1.4 Subcontractor's Labor Rate Sheets for all trades and all classifications.

8.1.5 Proposed project manager and field superintendent.

8.1.6 Trade payment breakdown.

8.2 The start date for this Subcontractors scope of work:

8.2.1 August/September 2018

8.3 Mobilization shall be completed within one week of commencement of

Contract for 77 Charlton St HVAC WATER & AIR Work
Contract between Toll NY II, LLC and R&S UNITED SERVICES INC.
Contract dated 03/30/2018

Sub Initials
Toll NY II, LLC Initials

TRM

14

# EXHIBIT "A" HVAC WATER & AIR Work

operations.

8.4 Shop drawings shall be submitted within two weeks of award of contract.

8.5 Contractor shall be prepared to complete all field installation, including punch lists within 12 months of building top out.

8.6 Contractor shall build vertically

9 Excluded from the Scope of Work are the following:

9.1 Professional liability insurance (E&O) for items not designed by this Subcontractor. Professional Liability insurance is specifically included for items design by this Subcontractor or a sub of this Subcontractor.

9.2 Providing a crane for hoisting this Subcontractor's equipment.

9.2.1 This Subcontractor shall be responsible for all rigging associated with hoisting of its own equipment.

10 Alternate prices:

10.1 ADD ALTERNATE:

10.1.1 Additional set of filters for all heat pumps in the building.
10.1.1.1 ▮▮▮▮▮

10.1.2 Provide crane and hoisting of HVAC equipment to the roof
10.1.2.1 ▮▮▮▮▮

10.1.3 Spare Chassis
10.1.3.1 ▮▮▮▮▮

10.1.4 Maintenance Contract. Excludes filter changes and apartment maintenance.
10.1.4.1 ▮▮▮▮ Per Month (TAX EXCLUDED)
10.1.4.2 ▮▮▮ Per Year (TAX EXCLUDED)

10.2 DEDUCT ALTERNATE:

10.2.1 Eliminate fire-stopping work
10.2.1.1 ▮▮▮▮▮

10.3 UNIT RATES

10.3.1 Sheetmetal Journeyman
10.3.1.1 STANDARD TIME:
10.3.1.2 PREMIUM TIME:
10.3.1.3 OVERTIME:

10.3.2 Steamfitters Journeyman
10.3.2.1 STANDARD TIME:
10.3.2.2 PREMIUM TIME:
10.3.2.3 OVERTIME:

10.3.3 Drafting Draftsman
10.3.3.1 STANDARD TIME:
10.3.3.2 PREMIUM TIME:
10.3.3.3 OVERTIME:

10.3.4 Insulator Journeyman
10.3.4.1 STANDARD TIME:
10.3.4.2 PREMIUM TIME:

Contract for 77 Charlton St HVAC WATER & AIR Work
Contract between Toll NY II, LLC and R&S UNITED SERVICES INC.
Contract dated 03/30/2018

Sub Initials
Toll NY II, LLC Initials _____



**TRM**

15

## EXHIBIT "A" HVAC WATER & AIR Work

| | | |
|---|---|---|
| 10.3.4.3 | OVERTIME: | |
| 10.3.5 Controls Journeyman | |  |
| 10.3.5.1 | STANDARD TIME: | |
| 10.3.5.2 | PREMIUM TIME: | |
| 10.3.5.3 | OVERTIME: | |

END OF "EXHIBIT A" SCOPE OF WORK

Contract for 77 Charlton St HVAC WATER & AIR Work
Contract between Toll NY II, LLC and R&S UNITED SERVICES INC.
Contract dated 03/30/2018

Sub Initials
Toll NY II, LLC Initials    _____

 

16

Project in accordance with the Contract Documents. Any and all funds paid to Subcontractor hereunder are hereby declared to constitute trust funds in the hands of Subcontractor, to be applied before application to any other purpose to the payment of: (a) claims of Sub-subcontractors, sub-laborers, suppliers, or other entities performing work and employed directly or indirectly by Subcontractor, (b) to claims for utilities furnished and taxes imposed, and to the payment of premiums on surety bonds and other bonds filed and premiums on insurance accruing during the construction of the Work, and (c) any indemnity obligations of Subcontractor hereunder.

H.    In the event changes or extras to this Subcontract are authorized pursuant to the General Conditions annexed, hereto, Subcontractor shall be entitled to no more than ten (10%) percent of the reasonable cost of the change or extra to cover overhead, supervision, any and all insurance required by the Contract Documents and by law, bond premiums, small tools and profit, unless such mark-up is included within the rates as further outlined in the Scope of Work. Should Subcontractor employ Sub-subcontractors, these Sub-subcontractors shall be likewise limited to 10% mark-up outlined above. Subcontractor shall be limited to a 5% mark-up on Sub-subcontractor's work.

**Waivers of Lien and Affidavits of Payments**

E.    Subcontractor shall, with each Application for Payment submit to Contractor a partial waiver of lien in form approved by Contractor, waiving Subcontractor's right of lien for the Work performed and materials furnished through the date of said Application for Payment. In addition, Subcontractor shall with each Application for Payment furnish an affidavit to Contractor, in form approved by Contractor, verifying that all labor and materials furnished to Subcontractor pursuant to this Subcontract, including all applicable taxes, but less applicable retention, have been paid by Subcontractor up to its last preceding Application for Payment.

F.    **Contractor's Approval.** Contractor, subject to it's right to withhold payment or decline to approve an Application for Payment as hereinafter provided, shall review each of Subcontractor's Application for Payment, together with such supporting documents as Contractor may require (which may include, without limitation, sworn statements), and may certify for payment each such application.

**Stored Material**

G.    (a)    Payments for stored material shall only be made if Contractor specifically approves in advance. If payments are to be made on account of materials and equipment not incorporated in the Work but delivered and suitably stored at the site, or at some other location agreed upon in writing by Contractor ("Stored Materials"), such payments shall be conditioned upon submission by Subcontractor of bills of sale and such other documents satisfactory to Contractor to establish Owner or Contractor's title to such materials or equipment and otherwise protect the Owner or Contractor's interest, including, without limitation, applicable insurance and transportation to the site.



Subcontractor Initials:

# EXHIBIT "B"

## DRAWINGS AND SPECIFICATIONS





## 77Charlton - Drawing Log

| Spec Section/ Sheet No. | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| Drawings: | | | | |
| GENERAL | | | | |
| ARCHITECTURAL | | | | |
| Cover Sheet | Cover Sheet | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-000A | Façade Elevation | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-001 | Drawing List | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-002 | Drawing List | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-003 | Drawing List | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-004 | General Building Codes Compliance Notes | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-005 | GENERAL NOTES, ABBREVIATIONS & SYMBOL LEGEND | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-006 | ACCESSIBILITY DIAGRAMS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-007 | ACCESSIBILITY DIAGRAMS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-010 | Site Plan | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-011 | 2ND AND 3RD-11TH FLR PLANS LIGHT & AIR CALCULATIONS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-012 | 12TH AND 13TH FLR LIGHT & AIR CALCULATIONS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-013 | 14TH AND 15TH FLR LIGHT & AIR CALCULATIONS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-015 | CELLAR FLOOR LIFE SAFETY PLANS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-016 | 1ST FLOOR LIFE SAFETY PLAN | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-017 | A-016 1ST FLOOR LIFE SAFETY PLAN | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-018 | 12TH AND 13TH FLR LIFE SAFETY PLAN | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-019 | 14TH AND 15TH FLR LIFE SAFETY PLANS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-020 | ROOF LIFE SAFETY PLANS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-100 | OVERALL CELLAR AND GROUND FLOOR PLANS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-101 | OVERALL 2ND AND 3RD-11TH FLOOR PLANS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-102 | OVERALL 12TH AND 13TH FLOOR PLANS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-103 | OVERALL 14TH AND 15TH FLOOR PLANS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-104 | OVERALL ROOF AND BULKHEAD PLANS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-110 | CELLAR FLOOR ENLARGED PLAN CHARLTON STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-111 | CELLAR FLOOR ENLARGED PLAN | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-112 | CELLAR FLOOR ENLARGED PLAN KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-113 | FIRST FLOOR ENLARGED PLAN CHARLTON STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-114 | FIRST FLOOR ENLARGED PLAN COURTYARD | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-115 | FIRST FLOOR ENLARGED PLAN KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-116 | 2ND FLOOR ENLARGED PLAN CHARLTON STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-117 | 2ND FLOOR ENLARGED PLAN COURTYARD | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-118 | 3RD-11TH FLOOR ENLARGED PLAN CHARLTON STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-120 | 12TH FLOOR ENLARGED PLAN CHARLTON STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-121 | 13TH FLOOR ENLARGED PLAN CHARLTON STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-122 | 14TH FLOOR ENLARGED PLAN CHARLTON STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-123 | 15TH FLOOR ENLARGED PLAN CHARLTON STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-124 | ROOF FLOOR ENLARGED CHARLTON STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-125 | BULKHEAD ENLARGED PLANS CHARLTON STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-126 | 3RD-11TH FLOOR ENLARGED PLAN KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-127 | 12TH FLOOR ENLARGED PLAN KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-128 | 13TH FLOOR ENLARGED PLAN KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-129 | 14TH FLOOR ENLARGED PLAN KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-130 | 15TH FLOOR ENLARGED PLAN KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-131 | ROOF FLOOR ENLARGED PLAN KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-132 | BULKHEAD ENLARGED PLANS KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-133 | BULKHEAD ROOF ENLARGED PLANS KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-200 | BUILDING KING ST. & CHARLTON ST. ELEVATIONS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-201 | BUILDING COURTYARD ELEVATIONS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-202 | BUILDING WEST ELEVATIONS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-203 | BUILDING EAST ELEVATION | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-210 | BULKHEAD ENLARGED ELEVATIONS -CHARLTON ST | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-211 | BULKHEAD ENLARGED ELEVATIONS -KING ST | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-212 | STOREFRONT-ENLARGED PLAN AND ELEVATION | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-213 | STOREFRONT ENLARGED PLAN AND ELEVATION | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |

Initials AP   TRM

| Spec Section/ Sheet No. | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| A-230 | ENLARGED SECTION AT POOL/PARKING SPACE | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-231 | ENLARGED SECTION AT POOL/LOUNGE | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-232 | ENLARGED SECTION AT GARDEN SPACE | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-300 | OVERALL BUILDING WALL SECTIONS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-301 | OVERALL BUILDING WALL SECTIONS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-302 | OVERALL BUILDING WALL SECTIONS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-303 | OVERALL BUILDING WALL SECTIONS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-305 | ENLARGED WALL SECTION DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-306 | ENLARGED WALL SECTION DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-307 | ENLARGED WALL SECTION DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-308 | ENLARGED WALL SECTION DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-309 | ENLARGED WALL SECTION DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-310 | ENLARGED WALL SECTION DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-311 | ENLARGED WALL SECTION DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-313 | ENLARGED WALL SECTION DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-314 | ENLARGED WALL SECTION DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-315 | ENLARGED WALL SECTION DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-316 | ENLARGED WALL SECTION DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-317 | BULKHEAD ENLARGED WALL SECTION DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-319 | STOREFRONT ENLARGED SECTIO DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-320 | STOREFRONT ENLARGED SECTIO DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-321 | STOREFRONT ENLARGED SECTIO DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-322 | STOREFRONT ENLARGED SECTIO DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-323 | STOREFRONT ENLARGED SECTIO DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-324 | STOREFRONT ENLARGED SECTIO DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-325 | STOREFRONT ENLARGED SECTIO DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-326 | STOREFRONT ENLARGED SECTIO DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-330 | STAIR SECTION CHARLTON STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-331 | STAIR C & D PLANS CHARLTON STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-332 | STAIR SECTION KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-333 | STAIR A & B PLANS KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-334 | TYP. CONCRETE STAIR DETAILS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-335 | ELEVATOR PLANS AND SECTIONS -P1 & P2 SCALE:PAGE:OF 1 | J&H | Bulletin #1 | 01/19/18 |
| A-336 | ELEVATOR PLANS AND SECTIONS -P3 & P4 SCALE:PAGE:OF | J&H | Bulletin #1 | 01/19/18 |
| A-337 | ELEVATOR DETAILS | J&H | Bulletin #1 | 01/19/18 |
| A-340 | AUTOMATED PARKING PLANS | KLAUS | Bulletin #1 | 01/19/18 |
| A-341 | AUTOMATED PARKING SECTIONS | KLAUS | Bulletin #1 | 01/19/18 |
| A-531 | FOUNDATION DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-532 | FOUNDATION DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-533 | FOUNDATION DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-534 | FOUNDATION DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-405 | CELLAR FLOOR ENLARGED RCP CHARLTON STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-406 | CELLAR FLOOR ENLARGED RCP -COURTYARD | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-407 | CELLAR FLOOR ENLARGED RCP KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-408 | FIRST FLOOR ENLARGED RCP CHARLTON STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-409 | FIRST FLOOR ENLARGED RCP COURTYARD | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-410 | FIRST FLOOR ENLARGED RCP KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-411 | 2ND FLOOR ENLARGED RCP CHARLTON STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-412 | 2ND FLOOR ENLARGED RCP -COURTYARD | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-413 | 2ND FLOOR ENLARGED RCP KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-414 | 3RD-10TH FLOOR ENLARGED RCP CHARLTON STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-414A | 11TH FLOOR ENLARGED RCP CHARLTON STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-415 | 12TH FLOOR ENLARGED RCP CHARLTON STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-416 | 13TH FLOOR ENLARGED RCP CHARLTON STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-417 | 14TH FLOOR ENLARGED RCP CHARLTON STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-418 | 15TH FLOOR ENLARGED RCP CHARLTON STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-419 | ROOF FLOOR ENLARGED RCP CHARLTON STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-420 | BULKHEAD ENLARGED RCP CHARLTON STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-421 | 3RD-10TH FLOOR ENLARGED RCP KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-421A | 3RD-10TH FLOOR ENLARGED RCP KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |

Initials AP    

| Spec Section/ Sheet No. | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| A-422 | 12TH FLOOR ENLARGED RCP KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-423 | 13TH FLOOR ENLARGED RCP KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-424 | 14TH FLOOR ENLARGED RCP KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-425 | 15TH FLOOR ENLARGED RCP KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-426 | ROOF FLOOR ENLARGED RCP KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-427 | BULKHEAD ENLARGED RCP KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-500 | TYPICAL PERIMETER DETAILS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-501 | REFUSE CHUTE DETAILS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-502 | MISC. DETAILS - 1 | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-503 | MISC. DETAILS - 2 | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-504 | MISC. DETAILS - 3 | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-505 | ROOF DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-506 | ROOF DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-507 | ROOF DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-508 | ROOF DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-509 | ROOF DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-510 | FACADE DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-511 | FACADE DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-512 | FACADE DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-513 | FACADE DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-515 | STOREFRONT DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-516 | STOREFRONT DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-517 | STOREFRONT DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-518 | STOREFRONT DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-519 | STOREFRONT DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-520 | STOREFRONT DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-521 | STOREFRONT DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-522 | STOREFRONT DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-523 | STOREFRONT DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-524 | STOREFRONT DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-528 | WINDOW WALL SYSTEM DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-529 | WINDOW WALL SYSTEM DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-530 | WINDOW WALL SYSTEM DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-540 | PLAN DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-541 | PLAN DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-542 | PLAN DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-543 | PLAN DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-544 | PLAN DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-545 | PLAN DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-546 | PLAN DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-547 | PLAN DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-548 | PLAN DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-549 | PLAN DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-550 | ENLARGED STOREFRONT PLAN DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-551 | ENLARGED STOREFRONT PLAN DETAILS | GMS | Bulletin #1 | 01/19/18 |
| A-560 | ENLARGED TRASH COMPACTOR ROOM PLANS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-590 | FACILITY PLAN, NOTES, DATA & DETAILS | TRACE | Bulletin #1 | 01/19/18 |
| A-591 | MISCELLANEOUS NOTES, DATA & DETAILS | TRACE | Bulletin #1 | 01/19/18 |
| A-592 | CONSTRUCTION PLAN, DETAILS & SCHEDULES | TRACE | Bulletin #1 | 01/19/18 |
| A-593 | DETAILS & NOTES | TRACE | Bulletin #1 | 01/19/18 |
| A-594 | DETAILS & NOTES | TRACE | Bulletin #1 | 01/19/18 |
| A-595 | PIPOING PLAN & EQUIPMENT SCHEDULE | TRACE | Bulletin #1 | 01/19/18 |
| A-596 | MISCELLANEOUS DETAILS & NOTES | TRACE | Bulletin #1 | 01/19/18 |
| A-597 | SAUNA & STEAM ROOM NOTES & DETAILS | TRACE | Bulletin #1 | 01/19/18 |
| A-598 | SAUNA PLAN ELEVATIONS & DETAILS | TRACE | Bulletin #1 | 01/19/18 |
| A-599 | STEAM ROOM PLAN, ELEVATIONS & DETAILS | TRACE | Bulletin #1 | 01/19/18 |
| A-600 | PARTITION TYPES | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-601 | PARTITION TYPES 2 | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-602 | DOOR DETAILS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-603 | DOOR SCHEDULE | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |

Initials 

TRM

| Spec Section/ Sheet No. | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| A-604 | BOH FINISH SCHEDULE | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-604A | BOH STAFF ROOM BATHROOM & KITCHEN | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-605 | WINDOW SCHEDULE | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-606 | WINDOW SCHEDULE | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-607 | WINDOW SCHEDULE | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-608 | WINDOW SCHEDULE | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-609 | WINDOW SCHEDULE | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-610 | WINDOW SCHEDULE | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-611 | WINDOW SCHEDULE | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-612 | WINDOW SCHEDULE | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-700 | CELLAR FLOOR ENLARGED EDGE OF SLAB CHARLTON ST | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-701 | CELLAR FLOOR ENLARGED EDGE OF SLAB PLAN | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-702 | CELLAR FLOOR ENLARGED EDGE OF SLAB PLAN KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-703 | FIRST FLOOR ENLARGED EDGE OF SLAB PLAN CHARLTON ST | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-704 | FIRST FLOOR ENLARGED EDGE OF SLAB PLAN COURTYARD | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-705 | FIRST FLOOR ENLARGED EDGE OF SLAB PLAN KING ST | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-706 | 2ND FLOOR ENLARGED EDGE OF SLAB PLAN CHARLTON ST | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-707 | 2ND FLOOR ENLARGED EDGE OF SLAB PLAN COURTYARD | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-708 | 2ND FLOOR ENLARGED EDGE OF SLAB PLAN KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-709 | 3RD-11TH FLOOR ENLARGED EDGE OF SLAB PLAN CHARLTON ST | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-710 | 12TH FLOOR ENLARGED EDGE OF SLAB PLAN CHARLTON ST | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-711 | 13TH FLOOR ENLARGED EDGE OF SLAB PLAN CHARLTON ST | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-712 | 14TH FLOOR ENLARGED EDGE OF SLAB PLAN CHARLTON ST | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-713 | 15TH FLOOR ENLARGED EDGE OF SLAB PLAN CHARLTON ST | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-714 | ROOF FLOOR ENLARGED EDGE OF SLAB PLAN CHARLTON ST | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-715 | BULKHEAD ENLARGED EDGE OF SLAB PLANS CHARLTON ST | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-716 | 3RD-11TH FLOOR ENLARGED EDGE OF SLAB PLAN KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-717 | 12TH FLOOR ENLARGED EDGE OF SLAB PLAN KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-718 | 13TH FLOOR ENLARGED EDGE OF SLAB PLAN KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-719 | 14TH FLOOR ENLARGED EDGE OF SLAB PLAN KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-720 | 15TH FLOOR ENLARGED EDGE OF SLAB PLAN KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-721 | ROOF FLOOR ENLARGED EDGE OF SLAB PLAN KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-722 | BULKHEAD ENLARGED EDGE OF SLAB PLANS KING STREET | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-723 | BULKHEAD ROOF EDGE OF SLAB KING ST | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| A-801 | FINISH PLAN - OVERALL - CELLAR | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-802 | FINISH PLAN - ENLARGED - CELLAR -NORTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-803 | FINISH PLAN - ENLARGED - CELLAR -SOUTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-804 | FINISH PLAN - OVERALL - GROUND FLOOR | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-805 | FINISH PLAN - ENLARGED - GROUND FLOOR - NORTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-806 | FINISH PLAN - ENLARGED - GROUND FLOOR - SOUTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-807 | REFLECTED CEILING PLAN - OVERALL -CELLAR | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-808 | REFLECTED CEILING PLAN - OVERALL -GROUND FLOOR | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-810 | ELEVATIONS - CELLAR - NORTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-811 | ELEVATIONS - CELLAR - NORTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-812 | ELEVATIONS - CELLAR - NORTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-813 | ELEVATIONS - CELLAR - NORTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-814 | ELEVATIONS - CELLAR - NORTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-815 | ELEVATIONS - CELLAR - NORTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-816 | ELEVATIONS - CELLAR - NORTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-817 | ELEVATIONS - CELLAR - NORTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-820 | ELEVATIONS - CELLAR - SOUTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-821 | ELEVATIONS - CELLAR - SOUTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-822 | ELEVATIONS - CELLAR - SOUTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-823 | ELEVATIONS - CELLAR - SOUTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-824 | ELEVATIONS - CELLAR - SOUTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-830 | ELEVATIONS - GROUND FLOOR NORTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-831 | ELEVATIONS - GROUND FLOOR NORTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-832 | ELEVATIONS - GROUND FLOOR NORTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |

Initials 



| Spec Section/ Sheet No. | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| A-835 | ELEVATIONS - GROUND FLOOR SOUTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-836 | ELEVATIONS - GROUND FLOOR SOUTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-840 | ENLARGED PLANS - CELLAR - LOCKER ROOM | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-841 | ENLARGED RCP - CELLAR - LOCKER ROOM | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-842 | ELEVATIONS - CELLAR - LOCKER ROOM | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-843 | ELEVATIONS - CELLAR - UNISEX BATHROOMS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-844 | ELEVATIONS - CELLAR - SAUNA ROOM, STEAM ROOM AND TREATMENT ROOM | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-845 | ENLARGED PLANS, ELEVATIONS - CELLAR - KITCHEN | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-846 | ENLARGED PLANS, ELEVATIONS - CELLAR - PET SPA | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-847 | ENLARGED PLANS - CELLAR - SCREENING ROOM | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-848 | ENLARGED ELEVATIONS - CELLAR -SCREENING ROOM | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-850 | ENLARGED PLANS, ELEVATIONS - GROUND FLOOR - MAILROOM NORTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-851 | ENLARGED PLANS, ELEVATIONS, DETAILS -MAILROOM SOUTH | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-852 | ENLARGED PLANS, ELEVATIONS -PACKAGE & POWDER ROOM | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-855 | ENLARGED PLANS - SKY LOUNGE | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-856 | ELEVATIONS - SKY LOUNGE | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-860 | ELEVATOR CAB - PLANS, ELEVATIONS, & DETAILS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-865 | AMENITY STAIR - ENLARGED PLANS, ELEVATIONS , DETAILS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-866 | AMENITY STAIR - ELEVATIONS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-867 | AMENITY STAIR - PLANTERS - PLANS, ELEVATIONS, DETAILS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-868 | AMENITY STAIR - DETAILS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-870 | MILLWORK DETAILS - CELLAR & GROUND FLOOR | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-871 | MILLWORK DETAILS - GROUND FLOOR -RECEPTION DESK | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-875 | AMENITY - TYPICAL DETAILS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-876 | AMENITY - LIGHTING DETAILS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-880 | RESIDENTIAL CORRIDOR - PLANS, RCP, ELEVATIONS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-881 | RESIDENTIAL CORRIDOR - DETAILS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-890 | UNIT - TYPICAL FINISH PLAN, RCP | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-891 | UNIT - TYPICAL FINISH PLAN, RCP | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-892 | UNIT - TYPICAL LAUNDRY & WINDOW | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-893 | UNIT - TYPICAL DETAILS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-894 | RESIDENTIAL STAIR - ENLARGED PLANS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-895 | RESIDENTIAL STAIR - ENLARGED PLANS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-896 | RESIDENTIAL STAIR - ENLARGED ELEVATIONS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-897 | RESIDENTIAL STAIR - DETAILS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-900 | KITCHEN - PLANS, ELEVATIONS, LEGENDS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-901 | KITCHEN - PLANS, ELEVATIONS, LEGENDS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-902 | KITCHEN - PLANS, ELEVATIONS, LEGENDS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-903 | KITCHEN - PLANS, ELEVATIONS, LEGENDS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-904 | KITCHEN - PLANS, ELEVATIONS, LEGENDS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-908 | KITCHEN - TYPICAL RCPS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-909 | KITCHEN - TYPICAL DETAILS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-910 | BATHROOM - PLANS, ELEVATIONS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-911 | BATHROOM - PLANS, ELEVATIONS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-912 | BATHROOM - PLANS, ELEVATIONS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-913 | BATHROOM - PLANS, ELEVATIONS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-914 | BATHROOM - PLANS, ELEVATIONS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-915 | BATHROOM - PLANS, ELEVATIONS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-916 | BATHROOM - PLANS, ELEVATIONS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-917 | BATHROOM - PLANS, ELEVATIONS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-918 | BATHROOM - PLANS, ELEVATIONS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-920 | BATHROOM - VANITIES - PLANS, ELEVATIONS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| A-921 | BATHROOM - TYPICAL DETAILS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |

**ZONING**

| | | | | |
|---|---|---|---|---|
| Z-001 | ZONING ANALYSIS | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| Z-002 | ZONING CODE COMPLIANCE | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| Z-004 | FRONT ELEVATION - KING STREET -ZONING | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |

Initials ___ 

| Spec Section/ Sheet No. | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| Z-005 | FRONT ELEVATION - CHARLTON STREET - ZONING | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| Z-007 | BUILDING SECTION A-A - ZONING | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| Z-008 | ZONING FLOOR AREA CALCULATIONS -CELLAR | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| Z-009 | ZONING FLOOR AREA CALCULATIONS -1ST FLOOR | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| Z-010 | ZONING FLOOR AREA CALCULATIONS -2ND FLOOR | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| Z-011 | ZONING FLOOR AREA CALCULATIONS -3RD-11TH FLOOR | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| Z-012 | ZONING FLOOR AREA CALCULATIONS -12TH FLOOR | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| Z-013 | ZONING FLOOR AREA CALCULATIONS -13TH FLOOR | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| Z-014 | ZONING FLOOR AREA CALCULATIONS -14TH FLOOR | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| Z-015 | ZONING FLOOR AREA CALCULATIONS -15TH FLOOR | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |
| Z-016 | ZONING FLOOR AREA CALCULATION -ROOF | S9 ARCHITECTURE | Bulletin #1 | 01/19/18 |

**PAVEMENT PLAN**

| | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| 0 | Boundary & Topographic Survey | SULLIVAN DESIGN GROUP LLC | | 01/19/18 |
| BPP-001 | DRAWING TITLE: BUILDERS PAVEMENT PLANS | SULLIVAN DESIGN GROUP LLC | Bulletin #1 | 01/19/18 |
| BPP-002 | BUILDERS PAVEMENT PLANS | SULLIVAN DESIGN GROUP LLC | Bulletin #1 | 01/19/18 |
| BPP-003 | DRAWING TITLE: BUILDERS PAVEMENT PLANS | SULLIVAN DESIGN GROUP LLC | Bulletin #1 | 01/19/18 |

**ARCS**

| | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| AR-001 ARCS | SYMBOLS, ABBREVIATIONS AND NOTES | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AR-110 ARCS | CELLAR FLOOR ENLARGED POWER PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AR-111 ARCS | CELLAR FLOOR ENLARGED POWER PLAN - COURTYARD | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AR-112 ARCS | CELLAR FLOOR ENLARGED POWER PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AR-113 ARCS | FIRST FLOOR ENLARGED POWER PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AR-114 ARCS | FIRST FLOOR ENLARGED POWER PLAN COURTYARD | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AR-115 ARCS | FIRST FLOOR ENLARGED POWER PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AR-116 ARCS | 2ND FLOOR ENLARGED POWER PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AR-118 ARCS | 2ND FLOOR ENLARGED POWER PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AR-119 ARCS | 3RD-10TH FLOOR ENLARGED POWER PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AR-120 ARCS | 11TH FLOOR ENLARGED POWER PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AR-121 ARCS | 12TH FLOOR ENLARGED POWER PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AR-122 ARCS | 13TH FLOOR ENLARGED POWER PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AR-123 ARCS | 14TH FLOOR ENLARGED POWER PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AR-124 ARCS | 15TH FLOOR ENLARGED POWER PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AR-126 ARCS | BULKHEAD ENLARGED POWER PLANS CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AR-127 ARCS | 3RD-10TH FLOOR ENLARGED POWER PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AR-128 ARCS | 11TH FLOOR ENLARGED POWER PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AR-129 ARCS | 12TH FLOOR ENLARGED POWER PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AR-130 ARCS | 13TH FLOOR ENLARGED POWER PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AR-131 ARCS | 14TH FLOOR ENLARGED POWER PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AR-132 ARCS | 15TH FLOOR ENLARGED POWER PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AR-133 ARCS | ROOF FLOOR ENLARGED POWER PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AR-134 ARCS | BULKHEAD ENLARGED POWER PLANS KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |

**ELECTRICAL**

| | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| E-003 | LIGHTING FIXTURE SCHEDULES 2 | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-004A | LIGHTING ZONING SCHEDULES #1 | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-004B | LIGHTING ZONING SCHEDULES #2 | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-004C | LIGHTING ZONING SCHEDULES #3 | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-004D | LIGHTING ZONING SCHEDULES #4 | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-005 | APARTMENT LOAD SCHEDULE | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-006 | APARTMENT LOAD SCHEDULE | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-110 | CELLAR FLOOR ENLARGED POWER PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-111 | CELLAR FLOOR ENLARGED POWER PLAN -COURTYARD | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-112 | CELLAR FLOOR ENLARGED POWER PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-113 | FIRST FLOOR ENLARGED POWER PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-114 | FIRST FLOOR ENLARGED POWER PLAN COURTYARD | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-115 | FIRST FLOOR ENLARGED POWER PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-116 | 2ND FLOOR ENLARGED POWER PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |

Initials AP
TRM

| Spec Section/ Sheet No. | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| E-117 | 2ND FLOOR ENLARGED POWER PLAN COURTYARD | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-118 | 2ND FLOOR ENLARGED POWER PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-119 | 3RD-10TH FLOOR ENLARGED POWER PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-120 | 11TH FLOOR ENLARGED POWER PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-121 | 12TH FLOOR ENLARGED POWER PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-122 | 13TH FLOOR ENLARGED POWER PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-123 | 14TH FLOOR ENLARGED POWER PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-124 | 15TH FLOOR ENLARGED POWER PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-125 | ROOF FLOOR ENLARGED POWER PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-126 | BULKHEAD ENLARGED POWER PLANS CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-127 | 3RD-10TH FLOOR ENLARGED POWER PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-128 | 11TH FLOOR ENLARGED POWER PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-129 | 12TH FLOOR ENLARGED POWER PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-130 | 13TH FLOOR ENLARGED POWER PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-131 | 14TH FLOOR ENLARGED POWER PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-132 | 15TH FLOOR ENLARGED POWER PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-133 | ROOF FLOOR ENLARGED POWER PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-134 | BULKHEAD ENLARGED POWER PLANS KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-210 | CELLAR FLOOR ENLARGED LIGHTING CEILING PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-211 | CELLAR FLOOR ENLARGED LIGHTING CEILING PLAN COURTYARD | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-212 | CELLAR FLOOR ENLARGED LIGHTING CEILING PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-213 | FIRST FLOOR ENLARGED LIGHTING CEILING PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-214 | FIRST FLOOR ENLARGED LIGHTING CEILING PLAN COURTYARD | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-215 | FIRST FLOOR ENLARGED LIGHTING CEILING PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-216 | 2ND FLOOR ENLARGED LIGHTING CEILING PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-217 | 2ND FLOOR ENLARGED LIGHTING CEILING PLAN COURTYARD | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-218 | 2ND FLOOR ENLARGED LIGHTING CEILING PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-219 | 3RD-11TH FLOOR ENLARGED LIGHTING CEILING PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-221 | 12TH FLOOR ENLARGED LIGHTING CEILING PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-222 | 13TH FLOOR ENLARGED LIGHTING CEILING PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-223 | 14TH FLOOR ENLARGED LIGHTING CEILING PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-224 | 15TH FLOOR ENLARGED LIGHTING CEILING PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-225 | ROOF FLOOR ENLARGED LIGHTING CEILING PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-226 | BULKHEAD ENLARGED LIGHTING CEILING PLANS CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-227 | 3RD-11TH FLOOR ENLARGED LIGHTING CEILING PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-229 | 12TH FLOOR ENLARGED LIGHTING CEILING PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-230 | 13TH FLOOR ENLARGED LIGHTING CEILING PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-231 | 14TH FLOOR ENLARGED LIGHTING CEILING PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-232 | 15TH FLOOR ENLARGED LIGHTING CEILING PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |

Initials AP    TRM

| Spec Section/ Sheet No. | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| E-233 | ROOF FLOOR ENLARGED LIGHTING CEILING PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-234 | BULKHEAD ENLARGED LIGHTING CEILING PLANS KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-300 | ELECTRICAL-POWER RISER DIAGRAM | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-304 | ELECTRICAL-WIRELESS ACCESS RISER DIAGRAM | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-305 | ELECTRICAL-DIMMER RISER | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-306 | ELECTRICAL-DIMMER RISER | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-400 | ELECTRICAL-LV DETAILS | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-401 | ELECTRICAL-LV DETAILS | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-600 | ELECTRICAL-SCHEDULES | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-601 | ELECTRICAL-SCHEDULES | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| E-700 | ELECTRICAL-DETAILS | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |

FIRE ALARM

| | | | | |
|---|---|---|---|---|
| FA-001 | FIRE ALARM - SYMBOLS, ABBREVIATIONS AND NOTES | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-110 | FIRE ALARM - CELLAR FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-111 | FIRE ALARM - CELLAR FLOOR ENLARGED PLAN COURTYARD | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-112 | FIRE ALARM - CELLAR FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-113 | FIRE ALARM - FIRST FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-114 | FIRE ALARM - FIRST FLOOR ENLARGED PLAN COURTYARD | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-116 | FIRE ALARM - 2ND FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-117 | FIRE ALARM - 2ND FLOOR ENLARGED PLAN -COURTYARD | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-118 | FIRE ALARM - 2ND FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-119 | FIRE ALARM - 3RD-10TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-120 | FIRE ALARM - 11TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-121 | FIRE ALARM - 12TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-122 | FIRE ALARM - 13TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-123 | FIRE ALARM - 14TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-124 | FIRE ALARM - 15TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-125 | FIRE ALARM - ROOF FLOOR ENLARGED CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-126 | FIRE ALARM - BULKHEAD ENLARGED PLANS CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-127 | FIRE ALARM - 3RD-10TH FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-128 | FIRE ALARM - 11TH FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-129 | FIRE ALARM - 12TH FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-130 | FIRE ALARM - 13TH FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-131 | FIRE ALARM - 14TH FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-132 | FIRE ALARM - 15TH FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-133 | FIRE ALARM - ROOF FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-134 | FIRE ALARM - BULKHEAD ENLARGED PLANS KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| FA-200 | FIRE ALARM RISER DIAGRAM SECTION 1 | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |

AUDIO/VISUAL

| | | | | |
|---|---|---|---|---|
| AV-000 | AV TITLE SHEET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AV-001 | AV MATRIX | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AV-110 | AV CELLAR PLAN - KING ST. | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AV-112 | AV CELLAR PLAN -CHARLSTON ST. | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AV-113 | AV - FIRST FLOOR PLAN -KING ST. | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AV-115 | AV - FIRST FLOOR PLAN -CHARLTON ST. | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AV-122 | AV - 14TH FLOOR PLAN - | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| AV-400 | AV - ELEVATIONS | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |

Initials AP   TRM

| Spec Section/ Sheet No. | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| AV-500 | AV - DETAILS | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |

**MECHANICAL**

| Spec Section/ Sheet No. | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| M-001 | MECHANICAL - SYMBOLS, ABBREVIATIONS AND NOTES | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-002 | MECHANICAL -SCHEDULES #1 | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-003 | MECHANICAL SCHEDULES #2 | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-004 | MECHANICAL SCHEDULES #3 | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-110 | MECHANICAL - CELLAR FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-111 | MECHANICAL - CELLAR FLOOR ENLARGED PLAN COURTHYARD | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-112 | MECHANICAL - CELLAR FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-113 | MECHANICAL - FIRST FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-114 | MECHANICAL - FIRST FLOOR ENLARGED PLAN COURTYARD | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-115 | MECHANICAL - FIRST FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-116 | MECHANICAL - 2ND FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-118 | MECHANICAL - 2ND FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-119 | MECHANICAL - 3RD-10TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-120 | MECHANICAL - 11TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-121 | MECHANICAL - 12TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-122 | MECHANICAL - 13TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-123 | MECHANICAL - 14TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-124 | MECHANICAL - 15TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-125 | MECHANICAL - ROOF FLOOR ENLARGED CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-126 | MECHANICAL -BULKHEAD ENLARGED PLANS CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-127 | MECHANICAL - 3RD-10TH FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-128 | MECHANICAL - 11TH FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-129 | MECHANICAL - 12TH FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-130 | MECHANICAL - 13TH FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-131 | MECHANICAL - 14TH FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-132 | MECHANICAL - 15TH FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-133 | MECHANICAL - ROOF FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-134 | MECHANICAL -BULKHEAD ENLARGED PLANS KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-210 | MECHANICAL - CELLAR FLOOR ENLARGED PIPING PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-211 | MECHANICAL - CELLAR FLOOR ENLARGED PIPING PLAN COURTYARD | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-212 | MECHANICAL - CELLAR FLOOR ENLARGED PIPING PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-213 | MECHANICAL - FIRST FLOOR ENLARGED PIPING PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-214 | MECHANICAL - FIRST FLOOR ENLARGED PIPING PLAN COURTYARD | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-215 | MECHANICAL - FIRST FLOOR ENLARGED PIPING PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-216 | MECHANICAL - 2ND FLOOR ENLARGED PIPING PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-218 | MECHANICAL - 2ND FLOOR ENLARGED PIPING PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-219 | MECHANICAL - 3RD-10TH FLOOR ENLARGED PIPING PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |

Initials  

| Spec Section/ Sheet No. | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| M-220 | MECHANICAL - 11TH FLOOR ENLARGED PIPING PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-221 | MECHANICAL - 12TH FLOOR ENLARGED PIPING PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-222 | MECHANICAL - 13TH FLOOR ENLARGED PIPING PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-223 | MECHANICAL - 14TH FLOOR ENLARGED PIPING PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-224 | MECHANICAL - 15TH FLOOR ENLARGED PIPING PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-225 | MECHANICAL - ROOF FLOOR ENLARGED PIPING PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-226 | MECHANICAL -BULKHEAD ENLARGED PIPING PLANS CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-227 | MECHANICAL - 3RD-10TH FLOOR ENLARGED PIPING PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-228 | MECHANICAL - 11TH FLOOR ENLARGED PIPING PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-229 | MECHANICAL - 12TH FLOOR ENLARGED PIPING PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-230 | MECHANICAL - 13TH FLOOR ENLARGED PIPING PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-231 | MECHANICAL - 14TH FLOOR ENLARGED PIPING PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-232 | MECHANICAL - 15TH FLOOR ENLARGED PIPING PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-233 | MECHANICAL - ROOF FLOOR ENLARGED PIPING PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-234 | MECHANICAL -BULKHEAD ENLARGED PIPING PLANS KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-301 | MECHANICAL AIR RISER DIAGRAM KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-302 | MECHANICAL AIR RISER DIAGRAM CHARLTON | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-303 | MECHANICAL AIR RISER DIAGRAM CHARLTON 2 | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-304 | MECHANICAL AIR RISER DIAGRAM KING STREET 2 | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-305 | MECHANICAL WATER RISER DIAGRAM | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-306 | MECHANICAL WATER RISER DIAGRAM 2 | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-307 | MECHANICAL AIR RISER DIAGRAM - COMMON | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-701 | MECHANICAL - DETAILS | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-702 | MECHANICAL - DETAILS | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-703 | MECHANICAL - DETAILS | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-704 | MECHANICAL - DETAILS | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-705 | MECHANICAL DETAILS | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-706 | MECHANICAL DETAILS | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-707 | MECHANICAL - DETAILS | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-708 | MECHANICAL - DETAILS | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| M-709 | MECHANICAL DETAILS | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |

**PLUMBING**

| Spec Section/ Sheet No. | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| P-001 | PLUMBING - SYMBOLS, ABBREVIATIONS AND NOTES | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-002 | PLUMBING SCHEDULES | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-107 | PLUMBING -UNDERGROUND FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-108 | PLUMBING -UNDERGROUND FLOOR ENLARGED PLAN COURTYAR | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-109 | PLUMBING -UNDERGROUND FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-110 | PLUMBING - CELLAR FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-111 | PLUMBING - CELLAR FLOOR ENLARGED PLAN COURTYARD | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-112 | PLUMBING - CELLAR FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |

Initials 



| Spec Section/ Sheet No. | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| P-113 | PLUMBING - FIRST FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-114 | PLUMBING - FIRST FLOOR ENLARGED PLAN COURTYARD | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-115 | PLUMBING - FIRST FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-116 | PLUMBING - 2ND FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-117 | PLUMBING - 2ND FLOOR ENLARGED PLAN COURTYARD | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-118 | PLUMBING - 2ND FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-119 | PLUMBING - 3RD-10TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-120 | PLUMBING - 11TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-121 | PLUMBING - 12TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-122 | PLUMBING - 13TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-123 | PLUMBING - 14TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-124 | PLUMBING - 15TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-125 | PLUMBING - ROOF FLOOR ENLARGED CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-126 | PLUMBING - BULKHEAD ENLARGED PLANS CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-127 | PLUMBING - 3RD-10TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-128 | PLUMBING - 11TH FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-129 | PLUMBING - 12TH FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-130 | PLUMBING - 13TH FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-131 | PLUMBING - 14TH FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-132 | PLUMBING - 15TH FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-133 | PLUMBING - ROOF FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-134 | PLUMBING - BULKHEAD ENLARGED PLANS KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-200 | SANITARY RISER DIAGRAM | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-201 | SANITARY RISER DIAGRAM | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-202 | WATER RISER DIAGRAM | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-203 | WATER RISER DIAGRAM | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-204 | STORM WATER RISER DIAGRAM | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-205 | GAS RISER DIAGRAM | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-300 | PLUMBING - DETAILS 1 OF 2 | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-301 | PLUMBING DETAILS 2 OF 2 | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-400 | PLUMBING - BACKFLOW PREVENTER PLAN | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-500 | SUBSURFACE INJECTIO AND MONITORING WEL NETWORK LAYOUT | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-501 | INJECTION AND MONITORING WELL NETWORK LAYOUT | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| P-502 | INJECTION AND MONITORING WELL NETWORK DETAILS | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |

| SPRINKLER | | | | |
|---|---|---|---|---|
| SP/SD-001 | SPRINKLER/STANDPIPE -LEAD SHEET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-002 | SPRINKLER/STANDPIPE SCHEDULE | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-110 | SPRINKLER/STANDPIPE -CELLAR FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-111 | SPRINKLER/STANDPIPE -CELLAR FLOOR ENLARGED PLAN | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-112 | SPRINKLER/STANDPIPE -CELLAR FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-113 | SPRINKLER/STANDPIPE -FIRST FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-114 | SPRINKLER/STANDPIPE -FIRST FLOOR ENLARGED PLAN COURTYARD | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-115 | SPRINKLER/STANDPIPE -FIRST FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-116 | SPRINKLER/STANDPIPE -2ND FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |

Initials  AP        TRM

| Spec Section/ Sheet No. | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| SP/SD-118 | SPRINKLER/STANDPIPE -2ND FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-119 | SPRINKLER/STANDPIPE -3RD-10TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-120 | SPRINKLER/STANDPIPE -11TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-121 | SPRINKLER/STANDPIPE -12TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-122 | SPRINKLER/STANDPIPE -13TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-123 | SPRINKLER/STANDPIPE -14TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-124 | SPRINKLER/STANDPIPE -15TH FLOOR ENLARGED PLAN CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-125 | SPRINKLER/STANDPIPE -ROOF FLOOR ENLARGED CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-126 | SPRINKLER/STANDPIPE -BULKHEAD ENLARGED PLANS CHARLTON STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-127 | SPRINKLER/STANDPIPE -3RD-10TH FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-128 | SPRINKLER/STANDPIPE -11TH FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-129 | SPRINKLER/STANDPIPE -12TH FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-130 | SPRINKLER/STANDPIPE -13TH FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-131 | SPRINKLER/STANDPIPE -14TH FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-132 | SPRINKLER/STANDPIPE -15TH FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-133 | SPRINKLER/STANDPIPE -ROOF FLOOR ENLARGED PLAN KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-134 | SPRINKLER/STANDPIPE -BULKHEAD ENLARGED PLANS KING STREET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-200 | SPRINKLER/STANDPIPE RISER DIAGRAM | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-300 | SPRINKLER/STANDPIPE DETAILS 1 OF 2 | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SP/SD-301 | SPRINKLER/STANDPIPE DETAILS 2 OF 2 | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SD-001 | TEMPORARY FSP -LEAD SHEET | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SD-100 | TEMPORARY FSP -CELLAR FLOOR PLAN | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SD-101 | TEMPORARY FSP -FIRST FLOOR PLAN | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SD-103 | TEMPORARY FSP -ROOF FLOOR PLAN | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SD-200 | TEMPORARY FSP -RISER DIAGRAM AND DETAILS | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |
| SD-300 | TEMPORARY FSP -DETAILS | ETTINGER ENGINEERING ASSOC | Bulletin #1 | 01/19/18 |

**SUPPORT OF EXCAVATION**

| | | | | |
|---|---|---|---|---|
| SOE-001 | SUPPORT OF EXCAVATION GENERAL NOTES | PILLORI | Bulletin #1 | 01/19/18 |
| SOE-002 | SUPPORT OF EXCAVATION PLAN VIEW | PILLORI | Bulletin #1 | 01/19/18 |
| SOE-002A | SUPPORT OF EXCAVATION PLAN VIEW (North) | PILLORI | #N/A | 01/00/00 |
| SOE-002B | SUPPORT OF EXCAVATION PLAN VIEW (South) | PILLORI | #N/A | 01/00/00 |
| SOE-003 | SUPPORT OF EXCAVATION ELEVATION AND SECTION I | PILLORI | Bulletin #1 | 01/19/18 |
| SOE-004 | SUPPORT OF EXCAVATION ELEVATION AND SECTION II | PILLORI | Bulletin #1 | 01/19/18 |
| SOE-005 | SUPPORT OF EXCAVATION SECTION II CONTINUE | PILLORI | Bulletin #1 | 01/19/18 |
| SOE-006 | SUPPORT OF EXCAVATION ELEVATION AND SECTION III | PILLORI | Bulletin #1 | 01/19/18 |
| SOE-007 | SUPPORT OF EXCAVATION ELEVATION AND SECTION IV | PILLORI | Bulletin #1 | 01/19/18 |
| SOE-007A | SUPPORT OF EXCAVATION ELEVATION AND SECTION V | PILLORI | #N/A | 01/00/00 |
| SOE-008 | SUPPORT OF EXCAVATION DETAILS | PILLORI | Bulletin #1 | 01/19/18 |
| SOE-009 | MTA LOGISTIC PLAN | PILLORI | Bulletin #1 | 01/19/18 |
| SOE-010 | MTA SUBSURFACE SECTION A-A | PILLORI | Bulletin #1 | 01/19/18 |
| SOE-011 | SUPPORT OF EXCAVATION MTA NOTES | PILLORI | Bulletin #1 | 01/19/18 |

Initials 

| Spec Section/ Sheet No. | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| X-001.C | SUPPORT OF EXCAVATION MONITORING PLAN | PILLORI | Bulletin #1 | 01/19/18 |

**FOUNDATION**

| Spec Section/ Sheet No. | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| FO-001 | GENERAL NOTES EGENDS AND ABBREVIATIONS | WSP USA | Bulletin #1 | 01/19/18 |
| FO-010 | SITE PLAN | WSP USA | Bulletin #1 | 01/19/18 |
| FO-100 | FOUNDATION OVERAL PLAN | WSP USA | Bulletin #1 | 01/19/18 |
| FO-101 | FOUNDATION PLAN -PART 1 (CHARLTON S | WSP USA | Bulletin #1 | 01/19/18 |
| FO-102 | FOUNDATION PLAN - PART 2 (COURTYARD) | WSP USA | Bulletin #1 | 01/19/18 |
| FO-103 | FOUNDATION PLAN - PART 3 (KING ST) | WSP USA | Bulletin #1 | 01/19/18 |
| FO-105 | PART PLAN AT HIGH POOL DECK SLAB | WSP USA | Bulletin #1 | 01/19/18 |
| FO-200 | TYPICAL OUNDATION DETAILS 1 | WSP USA | Bulletin #1 | 01/19/18 |
| FO-201 | TYPICAL OUNDATION DETAILS 3 | WSP USA | Bulletin #1 | 01/19/18 |
| FO-202 | TYPICAL OUNDATION DETAILS 2 | WSP USA | Bulletin #1 | 01/19/18 |
| FO-203 | TYPICAL OUNDATION DETAILS 4 | WSP USA | Bulletin #1 | 01/19/18 |
| FO-300 | FOUNDATION SECTIONS 1 | WSP USA | Bulletin #1 | 01/19/18 |
| FO-301 | FOUNDATION SECTIONS 2 | WSP USA | Bulletin #1 | 01/19/18 |
| FO-310 | SITE SECTION | WSP USA | Bulletin #1 | 01/19/18 |

**STRUCTURE**

| Spec Section/ Sheet No. | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| S-010 | FIRST FLOOR OVERALL PLAN | WSP USA | Bulletin #1 | 01/19/18 |
| S-011 | FIRST FLOOR FRAMING PLAN - PART 1 (CHARLTON ST) | WSP USA | Bulletin #1 | 01/19/18 |
| S-012 | FIRST FLOOR FRAMING PLAN - PART 2 (COURTYARD) | WSP USA | Bulletin #1 | 01/19/18 |
| S-013 | FIRST FLOOR FRAMING PLAN - PART 3 (KING ST) | WSP USA | Bulletin #1 | 01/19/18 |
| S-017 | FIRST FLOOR GENERAL ARRANGEMENT PLAN -PART 1 (CHARLTON ST) | WSP USA | Bulletin #1 | 01/19/18 |
| S-018 | FIRST FLOOR GENERAL ARRANGEMENT PLAN -PART 2 (COURTYARD) | WSP USA | Bulletin #1 | 01/19/18 |
| S-019 | FIRST FLOOR GENERAL ARRANGEMENT PLAN -PART 3 (KING ST) | WSP USA | Bulletin #1 | 01/19/18 |
| S-020 | 2ND FLOOR OVERALL PLAN | WSP USA | Bulletin #1 | 01/19/18 |
| S-021 | 2ND FLOOR FRAMING PLAN - PART 1 (CHARLTON ST) | WSP USA | Bulletin #1 | 01/19/18 |
| S-022 | 2ND FLOOR FRAMING PLAN - PART 2 (COURTYARD) | WSP USA | Bulletin #1 | 01/19/18 |
| S-023 | 2ND FLOOR FRAMING PLAN - PART 3 (KING ST) | WSP USA | Bulletin #1 | 01/19/18 |
| S-024 | CANOPY FRAMING PLANS, CHARLTON & KING STREET, SECTIONS & DETAILS | WSP USA | Bulletin #1 | 01/19/18 |
| S-027 | 2ND FLOOR GENERAL ARRANGEMENT PLAN -PART 1 (CHARLTON ST) | WSP USA | Bulletin #1 | 01/19/18 |
| S-028 | 2ND FLOOR GENERAL ARRANGEMENT PLAN -PART 2 (COURTYARD) | WSP USA | Bulletin #1 | 01/19/18 |
| S-029 | 2ND FLOOR GENERAL ARRANGEMENT PLAN -PART 3 (KING ST) 2ND FLOOR GENERAL ARRANGEMENT PLAN -PART 3 (KING ST) | WSP USA | Bulletin #1 | 01/19/18 |
| S-031 | 3RD-11TH FLOOR FRAMING PLAN -CHARLTON ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-033 | 3RD-11TH FLOOR FRAMING PLAN - KING ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-037 | 3RD-11TH FLOOR GENERAL ARRANGEMENT PLAN -CHARLTON ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-039 | 3RD-11TH FLOOR GENERAL ARRANGEMENT PLAN -KING ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-121 | 12TH FLOOR FRAMING PLAN - CHARLTON ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-123 | 12TH FLOOR FRAMING PLAN - KING ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-127 | 12TH FLOOR GENERAL ARRANGEMENT PLAN -CHARLTON ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-129 | 12TH FLOOR GENERAL ARRANGEMENT PLAN -KING ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-131 | 13TH FLOOR FRAMING PLAN - CHARLTON ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-133 | 13TH FLOOR FRAMING PLAN - KING ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-139 | 13TH FLOOR GENERAL ARRANGEMENT PLAN -KING ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-141 | 14TH FLOOR FRAMING PLAN - CHARLTON ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-143 | 14TH FLOOR FRAMING PLAN - KING ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-147 | 14TH FLOOR GENERAL ARRANGEMENT PLAN -CHARLTON ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-149 | 14TH FLOOR GENERAL ARRANGEMENT PLAN -KING ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-151 | 15TH FLOOR FRAMING PLAN - CHARLTON ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-153 | 15TH FLOOR FRAMING PLAN - KING ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-157 | 15TH FLOOR GENERAL ARRANGEMENT PLAN -CHARLTON ST | WSP USA | Bulletin #1 | 01/19/18 |

Initials

| Spec Section/ Sheet No. | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| S-159 | 15TH FLOOR GENERAL ARRANGEMENT PLAN -KING ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-161 | ROOF FRAMING PLAN -CHARLTON ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-163 | ROOF FRAMING PLAN -KING ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-167 | ROOF GENERAL ARRANGEMENT PLAN -CHARLTON ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-168 | ROOF GENERAL ARRANGEMENT PLAN -KING ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-171 | BH-1 & BH-2 FRAMING PLAN - CHARLTON ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-173 | BH-1 & BH-2 FRAMING PLAN - KING ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-177 | BH-1 & BH-2 GENERAL ARRANGEMENT PLAN -CHARLTON ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-179 | BH-1 & BH-2 GENERAL ARRANGEMENT PLAN -KING ST | WSP USA | Bulletin #1 | 01/19/18 |
| S-940 | SHEARWALL REINFORCEMENT PLAN - 1 | WSP USA | Bulletin #1 | 01/19/18 |
| S-941 | SHEARWALL REINFORCEMENT PLAN - 2 | WSP USA | Bulletin #1 | 01/19/18 |
| S-942 | SHEARWALL REINFORCEMENT PLAN - 3 | WSP USA | Bulletin #1 | 01/19/18 |
| S-945 | TYPICAL SHEARWALL DETAILS 1 | WSP USA | Bulletin #1 | 01/19/18 |
| S-950 | COLUMN SCHEDULE | WSP USA | Bulletin #1 | 01/19/18 |
| S-951 | TYPICAL COLUMN DETAILS | WSP USA | Bulletin #1 | 01/19/18 |
| S-955 | TYPICAL COLUMN DETAILS 1 | WSP USA | Bulletin #1 | 01/19/18 |
| S-960 | TYPICAL SUPERSTRUCTURE DETAILS 1 | WSP USA | Bulletin #1 | 01/19/18 |
| S-961 | TYPICAL SUPERSTRUCTURE DETAILS 3 | WSP USA | Bulletin #1 | 01/19/18 |
| S-962 | TYPICAL SUPERSTRUCTURE DETAILS 2 | WSP USA | Bulletin #1 | 01/19/18 |
| S-963 | TYPICAL SUPERSTRUCTURE DETAILS 4 | WSP USA | Bulletin #1 | 01/19/18 |
| S-964 | TYPICAL SUPERSTRUCTURE DETAILS 5 | WSP USA | Bulletin #1 | 01/19/18 |
| S-969 | TYPICAL MASONRY DETAILS | WSP USA | Bulletin #1 | 01/19/18 |
| S-970 | SUPERSTRUCTURE SECTIONS | WSP USA | Bulletin #1 | 01/19/18 |
| S-980 | TYPICAL STAIR DETAILS 1 | WSP USA | Bulletin #1 | 01/19/18 |

**SPECIFICATIONS**

| | | | | |
|---|---|---|---|---|
| 00 72 00 | GENERAL CONDITIONS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 00 73 00 | SUPPLEMENTARY CONDITIONS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 01 11 00 | SUMMARY OF WORK | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 01 21 00 | ALLOWANCES | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 01 22 00 | UNIT PRICES | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 01 23 00 | ALTERNATES | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 01 31 00 | PROJECT MANAGEMENT AND COORDINATION | DAGHER | Datum 0 | 10/13/17 |
| 01 31 19 | COORDINATION LEED | DAGHER | Datum 0 | 10/13/17 |
| 01 32 00 | CONSTRUCTION PROGRESS DOCUMENTATION | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 01 33 00 | SUBMITTAL PROCEDURES | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 01 40 00 | QUALITY REQUIREMENTS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 01 43 39 | MOCK-UPS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 01 50 00 | TEMPORARY FACILITIES AND CONTROLS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 01 57 13 | LEED TEMPORARY EROSION AND SEDIMENTATION CONTROL PLAN | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 01 74 19 | CONSTRUCTION WASTE MANAGEMENT | DAGHER | Datum 0 | 10/13/17 |
| 01 77 00 | PROJECT CLOSEOUT | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 01 78 23 | OPERATION AND MAINTENANCE DATA | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 01 81 13 | SUSTAINABLE DESIGN REQUIREMENTS - LEED | DAGHER | Datum 0 | 10/13/17 |
| 01 91 13 | GENERAL COMMISSIONING REQUIREMENTS | DAGHER | Datum 0 | 10/13/17 |
| 02 61 13 | EXCAVATION AND HANDLING OF CONTAMINATED MATERIAL | LANGAN | Bulletin #1 | 01/19/18 |
| 03 20 00 | CONCRETE FOUNDATION WORK | WSP USA | Datum 0 | 10/13/17 |
| 03 30 00 | CAST-IN-PLACE CONCRETE | WSP USA | Datum 0 | 10/13/17 |
| 03 33 00 | ARCHITECTURAL CONCRETE | WSP USA | Datum 0 | 10/13/17 |
| 04 20 00 | UNIT MASONRY | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 05 40 00 | COLD-FORMED METAL FRAMING | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 05 50 00 | METAL FABRICATIONS | WSP USA | Datum 0 | 10/13/17 |
| 05 52 13 | PIPE AND TUBE RAILINGS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 05 70 00 | DECORATIVE METAL | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 05 78 00 | MISCELLANEOUS LANDSCAPE METALS | FUTURE GREEN | Datum 0 | 10/13/17 |
| 06 10 00 | ROUGH CARPENTRY | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 06 20 00 | FINISH CARPENTRY | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 06 20 13 | TIMBER PLANTERS AND BENCHES | FUTURE GREEN | Datum 0 | 10/13/17 |
| 06 40 23 | ARCHITECTURAL WOODWORK | S9 ARCHITECTURE | Datum 0 | 10/13/17 |


TRM Initials AP

| Spec Section/ Sheet No. | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| 07 08 53 | ELECTRONIC LEAK DETECTION - HIGH & LOW VOLTAGE | GMS | Datum 0 | 10/13/17 |
| 07 13 00 | SHEET MEMBRANE WATERPROOFING | GMS | Datum 0 | 10/13/17 |
| 07 16 19 | DETENTION TANK COATING | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 07 18 14 | MECHANICAL ROOM WATERPROOFING | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 07 18 16 | VEHICULAR TRAFFIC COATINGS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 07 21 00 | THERMAL INSULATION | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 07 27 26 | FLUID APPLIED AIR BARRIERS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 07 42 13 | METAL WALL PANELS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 07 55 00 | PROTECTED MODIFIED BITUMEN MEMBRANE ROOFING | GMS | Datum 0 | 10/13/17 |
| 07 55 10 | MODIFIED BITUMEN MEMBRANE ROOFING | GMS | Datum 0 | 10/13/17 |
| 07 60 00 | FLASHING AND SHEET METAL | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 07 72 00 | ROOF ACCESSORIES | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 07 84 00 | FIRESTOPPING | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 07 92 00 | JOINT SEALANTS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 08 06 71 | DOOR HARDWARE SCHEDULE | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 08 11 13 | HOLLOW METAL DOORS AND FRAMES | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 08 14 16 | FLUSH WOOD DOORS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 08 16 00 | SLIDING METAL SERVICE DOORS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 08 17 00 | INTEGRATED DOOR OPENING ASSEMBLIES | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 08 31 00 | ACCESS DOORS AND PANELS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 08 41 23 | FIRE RATED GLASS AND FRAMING SYSTEMS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 08 41 76 | SLIDING GLASS WALL SYSTEM | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 08 44 00 | GLAZED ALUMINUM CURTAIN WALL AND STOREFRONT ENTRANCES | GMS | Datum 0 | 10/13/17 |
| 08 51 13 | ALUMINUM AND GLASS WINDOW WALL AND WINDOWS | GMS | Datum 0 | 10/13/17 |
| 08 63 00 | METAL FRAMED SKYLIGHTS | N/A | Datum 0 | 10/13/17 |
| 08 71 00 | DOOR HARDWARE | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 08 81 00 | GLASS GLAZING | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 08 90 00 | LOUVERS AND VENTS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 09 21 16 | GYPSUM BOARD ASSEMBLIES | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 09 21 17 | GYPSUM BOARD SHAFT-WALL ASSEMBLIES | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 09 26 00 | VENEER PLASTERING | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 09 30 13 | CERAMIC TILING | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 09 30 33 | STONE TILING | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 09 51 00 | ACOUSTICAL CEILINGS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 09 60 13 | ACOUSTIC UNDERLAYMENT | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 09 64 00 | WOOD FLOORING | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 09 65 47 | NATURAL CORK FLOORING | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 09 65 66 | RESILIENT ATHLETIC FLOORING | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 09 68 16 | SHEET CARPETING | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 09 72 00 | WALL COVERINGS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 09 91 00 | PAINTING | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 09 97 23 | CONCRETE COATINGS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 09 96 60 | POOL COATINGS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 10 14 11 | LIFE SAFETY SIGNAGE | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 10 28 00 | TOILET, BATH AND LAUNDRY ACCESSORIES | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 10 51 00 | LOCKERS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 10 52 00 | FIRE PROTECTIVE SMOKE CURTAINS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 10 55 00 | POSTAL SPECIALTIES | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 11 12 00 | PARKING CONTROL EQUIPMENT - TO BE DETERMINED | N/A | Datum 0 | 10/13/17 |
| 11 31 00 | RESIDENTIAL APPLIANCES | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 11 82 26 | WASTE COMPACTORS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 12 36 00 | COUNTERTOPS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 12 48 13 | ENTRANCE FLOOR MATS | S9 ARCHITECTURE | Datum 0 | 10/13/17 |
| 13 11 00 | SWIMMING POOLS - TO BE DETERMINED | TRACE | Datum 0 | 10/13/17 |
| 14 00 00 | GENERAL ELEVATORS | J&H | Datum 0 | 10/13/17 |
| 14 01 20 | ELEVATOR MAINTENANCE | J&H | Datum 0 | 10/13/17 |
| 14 06 20 | CONVEYING SYSTEM SCHEDULE | J&H | Datum 0 | 10/13/17 |
| 14 21 00 | TRACTION ELEVATORS | J&H | Datum 0 | 10/13/17 |
| 14 45 27 | AUTOMATED VEHICLE HANDLING- TO BE DETERMINED | N/A | Datum 0 | 10/13/17 |



Initials ____

TRM

| Spec Section/ Sheet No. | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| 14 91 82 | TRASH CHUTES | S8 ARCHITECTURE | Datum 0 | 10/13/17 |
| 21 05 00 | COMMON WORK RESULTS FOR FIRE SUPPRESSION | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 21 05 13 | COMMON MOTOR REQUIREMENTS FOR FIRE SUPPRESSION EQUIPMENT | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 21 05 48 | VIBRATION AND SEISMIC CONTROLS FOR FIRE SUPPRESSION PIPING AND EQUIPMENT | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 21 11 00 | FACILITY FIRE SUPPRESSION WATER SERVICE PIPING | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 21 12 00 | FIRE SUPPRESSION STANDPIPES | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 21 13 13 | WET-PIPE SPRINKLER SYSTEMS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 21 13 16 | DRY PIPE SPRINKLER SYSTEMS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 21 31 13 | ELECTRIC-DRIVE, CENTRIFUGAL FIRE PUMPS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 21 34 00 | PRESSURE MAINTENANCE PUMPS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 21 39 00 | CONTROLLERS FOR FIRE-PUMP DRIVERS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 22 05 00 | COMMON WORK RESULTS FOR PLUMBING | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 22 05 13 | COMMON MOTOR REQUIREMENTS FOR PLUMBING EQUIPMENT | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 22 05 16 | EXPANSION FITTINGS AND LOOPS FOR PLUMBING PIPING | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 22 05 19 | METERS AND GAGES FOR PLUMBING PIPING | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 22 05 23 | GENERAL DUTY VALVES FOR PLUMBING PIPING | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 22 05 29 | HANGERS AND SUPPORTS FOR PLUMBING PIPING AND EQUIPMENT | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 22 05 33 | HEAT TRACING FOR PLUMBING PIPING | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 22 05 48 | VIBRATION AND SEISMIC CONTROLS FOR PLUMBING PIPING AND EQUIPMENT | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 22 05 53 | IDENTIFICATION FOR PLUMBING PIPING AND EQUIPMENT | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 22 07 00 | PLUMBING INSULATION | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 22 11 13 | FACILITY WATER DISTRIBUTION PIPING | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 22 11 16 | DOMESTIC WATER PIPING | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 22 11 19 | DOMESTIC WATER PIPING SPECIALTIES | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 22 11 23.13 | DOMESTIC WATER PACKAGED BOOSTER PUMPS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 22 11 24 | FACILITY NATURAL GAS PIPING | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 22 13 16 | SANITARY WASTE AND VENT PIPING | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 22 13 19 | SANITARY WASTE PIPING SPECIALTIES | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 22 13 29 | SANITARY SEWAGE PUMPS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 22 14 13 | FACILITY STORM DRAINAGE PIPING | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 22 14 23 | STORM DRAINAGE PIPING SPECIALTIES | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 22 14 29 | SUMP PUMPS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 22 35 00 | DOMESTIC WATER HEAT EXCHANGERS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 22 40 00 | PLUMBING FIXTURES | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 05 00 | COMMON WORK RESULTS FOR HVAC | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 05 13 | COMMON MOTOR REQUIREMENTS FOR HVAC EQUIPMENT | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 05 16 | EXPANSION FITTINGS AND LOOPS FOR HVAC PIPING | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 05 19 | METERS AND GAGES FOR HVAC PIPING | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 05 23 | GENERAL-DUTY VALVES FOR HVAC PIPING | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 05 29 | HANGERS AND SUPPORTS FOR HVAC PIPING AND EQUIPMENT | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 05 33 | HEAT TRACING FOR HVAC PIPING | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 05 48 | VIBRATION AND SEISMIC CONTROLS FOR HVAC PIPING AND EQUIPMENT | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 05 53 | IDENTIFICATION FOR HVAC PIPING AND EQUIPMENT | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 05 93 | TESTING, ADJUSTING AND BALANCING FOR HVAC | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 07 00 | HVAC INSULATION | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 08 00 | LEED COMMISSIONING REQUIREMENTS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 09 00 | INSTRUMENTATION AND CONTROL FOR HVAC | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 09 93 | SEQUENCE OF OPERATION FOR HVAC CONTROLS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 21 13 | HYDRONIC PIPING | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 21 23 | HYDRONIC PUMPS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 23 00 | REFRIGERANT PIPING | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 25 00 | HVAC WATER TREATMENT | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 31 13 | METAL DUCTS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 33 00 | AIR DUCT ACCESSORIES | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |


Initials AP

| Spec Section/ Sheet No. | Title | Prepared by: | Release | Date |
|---|---|---|---|---|
| 23 34 23 | HVAC POWER VENTILATORS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 37 13 | DIFFUSERS, REGISTERS AND GRILLES | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 51 00 | BREECHINGS, CHIMNEYS AND STACK | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 52 33 | FIRE-TUBE BOILERS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 65 00 | COOLING TOWERS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 81 26 | SPLIT-SYSTEM AIR-CONDITIONERS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 81 46 | WATER SOURCE UNITARY HEAT PUMPS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 82 16 | AIR COILS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 23 82 39 | UNIT HEATERS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 26 05 00 | COMMON WORK RESULTS FOR ELECTRICAL | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 26 05 19 | LOW-VOLTAGE ELECTRICAL POWER CONDUCTORS AND CABLES | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 26 05 26 | GROUNDING AND BONDING FOR ELECTRICAL SYSTEMS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 26 05 29 | HANGERS AND SUPPORTS FOR ELECTRICAL SYSTEMS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 26 05 33 | RACEWAYS AND BOXES FOR ELECTRICAL SYSTEMS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 26 05 43 | UNDERGROUND DUCTS AND RACEWAYS FOR ELECTRICAL SYSTEMS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 26 05 48 | VIBRATION AND SEISMIC CONTROLS FOR ELECTRICAL SYSTEMS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 26 05 53 | IDENTIFICATION FOR ELECTRICAL SYSTEMS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 26 09 23 | LIGHTING CONTROL DEVICES | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 26 22 00 | LOW VOLTAGE TRANSFORMERS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 26 24 13 | SWITCHBOARDS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 26 24 16 | PANELBOARDS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 25 25 00 | ENCLOSED BUS ASSEMBLIES | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 26 27 13 | ELECTRICITY METERING | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 26 27 26 | WIRING DEVICES | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 26 28 13 | FUSES | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 26 33 13 | NATURAL GAS PACKAGED ENGINE GENERATORS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 26 36 00 | TRANSFER SWITCHES | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 26 50 00 | ARCHITECTURAL LIGHTING | VENTRESCA DESIGN LLC | Datum 0 | 10/13/17 |
| 26 51 00 | INTERIOR LIGHTING | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 27 05 00 | COMMON WORK RESULTS FOR COMMUNICATIONS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 27 11 00 | COMMUNICATIONS EQUIPMENT ROOM FITTINGS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 27 13 00 | COMMUNICATIONS BACKBONE CABLING | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 27 15 00 | COMMUNICATIONS HORIZONTAL CABLING | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 27 51 23 | RESIDENTIAL INTERCOMMUNICATIONS AND PROGRAM SYSTEMS | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 28 13 00 | ACCESS CONTROL | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 28 23 00 | VIDEO SURVEILLANCE | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 28 31 11 | HIGH RISE R2 APARTMENT BUILDING FIRE ALARM SYSTEM | ETTINGER ENGINEERING ASSOC | Datum 0 | 10/13/17 |
| 32 14 00 | UNIT PAVERS | FUTURE GREEN | Datum 0 | 10/13/17 |
| 32 40 00 | MISCELLANEOUS LANDSCAPE SPECIALTIES | FUTURE GREEN | Datum 0 | 10/13/17 |
| 32 84 00 | IRRIGATION | FUTURE GREEN | Datum 0 | 10/13/17 |
| 32 90 00 | PLANTING | FUTURE GREEN | Datum 0 | 10/13/17 |
| 32 91 13 | PLANTING SOILS | FUTURE GREEN | Datum 0 | 10/13/17 |
| 33 20 00 | INJECTION WELLS | LANGAN | Bulletin #1 | 01/19/18 |
| 119 Pages | INTERIOR DESIGN SPECIFICATIONS | INC ARCHITECTURE & DESIGN, PLLC | Bulletin #1 | 01/19/18 |
| 336 Pages | LIGHTING SPECIFICATIONS | VENTRESCA DESIGN LLC | Datum 0 | 10/13/17 |

**MISC. DOCUMENTS**

| | | | | |
|---|---|---|---|---|
| 6 Pages | SITE SAFETY AND LOGISTICS PLANS | MCCOY | Sketches/ Misc. Docs | 10/21/16 |
| 32 Pages | GEOTECH REPORT | PILLORI | Sketches/ Misc. Docs | 02/02/18 |
| 2186 Pages | BROWNFIELD RAWP | LANGAN | Sketches/ Misc. Docs | 07/24/17 |
| 0 | SAFETY PROGRAM | 0 | | 01/00/00 |
| 0 | 0 | 0 | | 01/00/00 |
| 0 | 0 | 0 | | 01/00/00 |
| 0 | 0 | 0 | | 01/00/00 |
| 0 | 0 | 0 | | 01/00/00 |



EXHIBIT "C"

INSURANCE REQUIREMENTS

TRM



## CERTIFICATE OF LIABILITY INSURANCE

**ACORD**

DATE (MM/DD/YYYY)
xx/xx/xxxx

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

PRODUCER
Insurance Agent / Broker Information
Broker Address
City, State, ZIP

INSURED
Your Company Name
Your Address
City, State, ZIP

CONTACT NAME:
PHONE (A/C, No, Ext):  FAX (A/C, No):
E-MAIL ADDRESS:

INSURER(S) AFFORDING COVERAGE  NAIC #
INSURER A : Insurance Carrier A
INSURER B : Insurance Carrier B
INSURER C :
INSURER D :
INSURER E :
INSURER F :

COVERAGES  CERTIFICATE NUMBER:  REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

SAMPLE

(General Liability, Automobile Liability, Umbrella Liab, Workers Compensation sections with limits $2,000,000 / $4,000,000 / $5,000,000 / $1,000,000 etc.)

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)
Toll Brothers, Inc., Toll Bros., Inc., their subsidiaries and affiliates are named as additional insureds on the General Liability policy for both ongoing and completed operations and on the Auto Liability policy. The CGL shall contain no exclusions for residential construction, condominiums or multi-family or multi-unit dwellings. Coverage afforded to the additional insured will be primary and non-contributory. A waiver of subrogation applies on all policies in favor of Toll Brothers, Inc., Toll Bros., Inc., their subsidiaries and affiliates.

CERTIFICATE HOLDER
Toll Brothers, Inc.
250 Gibraltar Rd
Horsham, PA 19044

CANCELLATION
SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.

AUTHORIZED REPRESENTATIVE

TRM

ACORD 25 (2010/05)  Cert Holder #  © 1988-2010 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD

Exhibit C to Contract

**Insurance Requirements**

1) Prior to commencing the Work, Subcontractor shall maintain at its own expense the following insurance coverages as provided in this Section against claims for injuries to persons or damages to property which may arise out of or result from the performance of the work by the Subcontractor, its Consultants, Subcontractors or Sub-subcontractors, by anyone directly or indirectly employed by any of them, or by anyone, for whose acts any of them many be liable.

2) The following policies and coverages shall be furnished by Subcontractor.

   a) Commercial General Liability Insurance written on an ISO (or comparable) Occurrence per project form including: broad form contractual liability, completed operations and explosion, collapse and underground hazards in the amount of:
   
   | | | |
   |---|---|---|
   | i) | Personal liability, Bodily injury and Property damage | |
   | | Each Occurrence | $2,000,000 |
   | ii) | General Aggregate | $4,000,000 |
   | iii) | Products and Completed Operations Aggregate | $4,000,000 |

   b) General Liability Deductible or self-insured retention not to exceed $50,000 on a per occurrence basis, unless agreed to in advance by Owner and Contractor..

   c) Comprehensive Automobile Liability Insurance to cover owned, long term leased, hired and non-owned automobiles (including medical payments on uninsured motorist's coverage) in the minimum amount of $2,000,000 Combined Single Limit for Bodily Injury & Property Damage.

   d) Workers' Compensation Insurance in the amount not less than the limits required by law, with employers' liability insurance, in a minimum amount of $1,000,000. It shall suffice for the purposes of this subparagraph (d) if Subcontractor holds a New York State Policy and produces a certificate indicating that with respect to its operations outside of New York that the Policyholder's regular New York State Employees are covered. Such certificate must in all other respects conform to the requirements of this Exhibit.

   e) Excess/Umbrella Liability Insurance providing coverage in excess of the limits specified above for Commercial General Liability, Automobile and Employers Liability Insurance (except Worker's Compensation Insurance) in a minimum amount of $5,000,000 per occurrence and in the aggregate.

   f) Liability limits may be obtained using primary and excess policies.

   g) Such other insurance as Owner or Contractor may reasonably require.

TRM



3) The Commercial General Liability, Comprehensive Automobile Liability Insurance and Excess/Umbrella Liability Insurance policies shall be endorsed to include and the certificate of insurance shall reflect the following:

   a) Toll Bros. Inc., Toll Brothers, Inc., its subsidiaries and affiliates are to be included as additional insured on a Primary & Non-contributory basis. On the General Liability and Excess/Umbrella Liability policies this must be accomplished by adding this via Insurance Services Office (ISO) endorsement CG 20 10 11 85 or its equivalent acceptable by the Owner or Contractor.
   b) Policy must be endorsed to provide sixty (60) days notice of cancellation, Non-Renewal and/or material change to Toll Brothers.
   c) Waiver of Subrogation endorsement has been attached to all policies.
   d) Owner reserves the right to add other additional insureds upon written notification. Such notification shall be deemed to be an amendment to the contract.

4) Subcontractor's insurance coverage shall be primary insurance with respect to any other insurance or self-insurance programs maintained by Owner and the above mentioned additional insured. There shall be no endorsement or modification of the CGL to make it excess over other available insurance, alternately, if the CGL states that it is excess or pro rata, the policy shall be endorsed to be primary with respect to each additional insured.

5) The required policies are to be placed with insurance carriers with a current A.M. Best rating of "A-" or higher and the Financial Size Category (FSC) must be at least VII.

6) If Subcontractor, for any reason, fails to maintain insurance coverage, which is required pursuant to the Contract, the same shall be deemed a material breach of Contract. Owner and/or Contractor at its sole option may terminate the Contract and or seek damages from Subcontractor resulting from said breach.

7) Within 30 days of signing this agreement and annually thereafter, but before Subcontractor will commence services, Subcontractor shall furnish Owner and Contractor with an Acord form Certificate of Insurance and a copy of the additional insured endorsements and/or appropriate insurance policy language evidencing coverage required under this Agreement. Work cannot commence until the certificates and endorsements are approved by Owner and Contractor. The certificate of insurance and endorsements for each policy are to be signed by a person authorized by the insurer to bind coverage on its behalf. Owner and Contractor reserve the right to require complete, certified copies of all required insurance policies, including endorsements affecting the coverage required at any time.

8) PDF certificates of insurance shall be sent to sbranca@tollbrothersinc.com with a copy to jlaguna@tollbrothersinc.com .

9) Other Provisions:
   a) The insurance provisions set out above shall not be considered as a limitation of the liability of the Subcontractor.
   b) All deductibles and self-insured retention amounts are the responsibility of the





            Subcontractor, and not that of Owner or Contractor.

c) Except as otherwise provided, it is expressly agreed and understood that the cost of premiums for insurance maintained by Subcontractor shall be at their own expense and shall not be reimbursed by Owner or Contractor.

d) The required limits may be satisfied by any combination of primary, umbrella or excess liability insurances, provided the primary policy complies with the above requirements and the excess umbrella is following-form.

e) The General Liability coverage required must not contain any of the following policy Exclusions, either by name or with the same intention as:

    i) Attached products Exclusions (i.e. Townhouses or condominiums)

    ii) Multi-Unit and Tract Housing Residential Exclusion – (i.e. claims arise from construction operations being performed at a residential subdivision containing more than a specific number of dwelling units built, owned or developed by the same entity are excluded)

    iii) Height limit, if any, shall be no less than 140 feet.

f) The attached questionnaire must be completed by your broker and submitted with the other required documents each time a new insurance submission is required.

10) Subcontractor shall cause each subcontractor retained to purchase, obtain and maintain the Required Insurance under this Exhibit C prior to commencing any portion of the Work. Upon request of Contractor, Subcontractor and each of Subcontractor's Subcontractors shall provide Contractor with copies of certificates of insurance evidencing the Required Insurance for each subcontractor. With the exception of Workers' Compensation, and Employers Liability Insurance, such policies shall name Toll Bros. Inc., Toll Brothers, Inc., its subsidiaries and affiliates as additional insured.





EXHIBIT "D"

VENDOR SET-UP



**Form W-9**

(Rev. December 2014)
Department of the Treasury
Internal Revenue Service

**Request for Taxpayer Identification Number and Certification**

Give Form to the requester. Do not send to the IRS.

1 Name (as shown on your income tax return). Name is required on this line; do not leave this line blank.

2 Business name/disregarded entity name, if different from above

3 Check appropriate box for federal tax classification; check only one of the following seven boxes:

☐ Individual/sole proprietor or single-member LLC   ☐ C Corporation   ☐ S Corporation   ☐ Partnership   ☐ Trust/estate

☐ Limited liability company. Enter the tax classification (C=C corporation, S=S corporation, P=partnership) ▶

Note. For a single-member LLC that is disregarded, do not check LLC; check the appropriate box in the line above for the tax classification of the single-member owner.

☐ Other (see instructions) ▶

4 Exemptions (codes apply only to certain entities, not individuals; see instructions on page 3):

Exempt payee code (if any)

Exemption from FATCA reporting code (if any)

(Applies to accounts maintained outside the U.S.)

5 Address (number, street, and apt. or suite no.)

6 City, state, and ZIP code

Requester's name and address (optional)

7 List account number(s) here (optional)

Print or type
See Specific Instructions on page 2.

**Part I    Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. The TIN provided must match the name given on line 1 to avoid backup withholding. For individuals, this is generally your social security number (SSN). However, for a resident alien, sole proprietor, or disregarded entity, see the Part I instructions on page 3. For other entities, it is your employer identification number (EIN). If you do not have a number, see How to get a TIN on page 3.

Note. If the account is in more than one name, see the instructions for line 1 and the chart on page 4 for guidelines on whose number to enter.

Social security number

or

Employer identification number

**Part II    Certification**

Under penalties of perjury, I certify that:

1. The number shown on this form is my correct taxpayer identification number (or I am waiting for a number to be issued to me); and

2. I am not subject to backup withholding because: (a) I am exempt from backup withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to backup withholding; and

3. I am a U.S. citizen or other U.S. person (defined below); and

4. The FATCA code(s) entered on this form (if any) indicating that I am exempt from FATCA reporting is correct.

**Certification instructions.** You must cross out item 2 above if you have been notified by the IRS that you are currently subject to backup withholding because you have failed to report all interest and dividends on your tax return. For real estate transactions, item 2 does not apply. For mortgage interest paid, acquisition or abandonment of secured property, cancellation of debt, contributions to an individual retirement arrangement (IRA), and generally, payments other than interest and dividends, you are not required to sign the certification, but you must provide your correct TIN. See the instructions on page 3.

Sign Here

Signature of U.S. person ▶

Date ▶

## General Instructions

Section references are to the Internal Revenue Code unless otherwise noted.

Future developments. Information about developments affecting Form W-9 (such as legislation enacted after we release it) is at www.irs.gov/fw9.

## Purpose of Form

An individual or entity (Form W-9 requester) who is required to file an information return with the IRS must obtain your correct taxpayer identification number (TIN) which may be your social security number (SSN), individual taxpayer identification number (ITIN), adoption taxpayer identification number (ATIN), or employer identification number (EIN), to report on an information return the amount paid to you, or other amount reportable on an information return. Examples of information returns include, but are not limited to, the following:

• Form 1099-INT (interest earned or paid)

• Form 1099-DIV (dividends, including those from stocks or mutual funds)

• Form 1099-MISC (various types of income, prizes, awards, or gross proceeds)

• Form 1099-B (stock or mutual fund sales and certain other transactions by brokers)

• Form 1099-S (proceeds from real estate transactions)

• Form 1099-K (merchant card and third party network transactions)

• Form 1098 (home mortgage interest), 1098-E (student loan interest), 1098-T (tuition)

• Form 1099-C (canceled debt)

• Form 1099-A (acquisition or abandonment of secured property)

Use Form W-9 only if you are a U.S. person (including a resident alien), to provide your correct TIN.

If you do not return Form W-9 to the requester with a TIN, you might be subject to backup withholding. See What is backup withholding? on page 2.

By signing the filled-out form, you:

1. Certify that the TIN you are giving is correct (or you are waiting for a number to be issued),

2. Certify that you are not subject to backup withholding, or

3. Claim exemption from backup withholding if you are a U.S. exempt payee. If applicable, you are also certifying that as a U.S. person, your allocable share of any partnership income from a U.S. trade or business is not subject to the withholding tax on foreign partners' share of effectively connected income, and

4. Certify that FATCA code(s) entered on this form (if any) indicating that you are exempt from the FATCA reporting, is correct. See What is FATCA reporting? on page 2 for further information.

Cat. No. 10231X          Form W-9 (Rev. 12-2014)

Form W-9 (Rev. 12-2014)

Page **2**

Note. If you are a U.S. person and a requester gives you a form other than Form W-9 to request your TIN, you must use the requester's form if it is substantially similar to this Form W-9.

**Definition of a U.S. person.** For federal tax purposes, you are considered a U.S. person if you are:

• An individual who is a U.S. citizen or U.S. resident alien;

• A partnership, corporation, company, or association created or organized in the United States or under the laws of the United States;

• An estate (other than a foreign estate); or

• A domestic trust (as defined in Regulations section 301.7701-7).

**Special rules for partnerships.** Partnerships that conduct a trade or business in the United States are generally required to pay a withholding tax under section 1446 on any foreign partners' share of effectively connected taxable income from such business. Further, in certain cases where a Form W-9 has not been received, the rules under section 1446 require a partnership to presume that a partner is a foreign person, and pay the section 1446 withholding tax. Therefore, if you are a U.S. person that is a partner in a partnership conducting a trade or business in the United States, provide Form W-9 to the partnership to establish your U.S. status and avoid section 1446 withholding on your share of partnership income.

In the cases below, the following person must give Form W-9 to the partnership for purposes of establishing its U.S. status and avoiding withholding on its allocable share of net income from the partnership conducting a trade or business in the United States:

• In the case of a disregarded entity with a U.S. owner, the U.S. owner of the disregarded entity and not the entity;

• In the case of a grantor trust with a U.S. grantor or other U.S. owner, generally, the U.S. grantor or other U.S. owner of the grantor trust and not the trust; and

• In the case of a U.S. trust (other than a grantor trust), the U.S. trust (other than a grantor trust) and not the beneficiaries of the trust.

**Foreign person.** If you are a foreign person or the U.S. branch of a foreign bank that has elected to be treated as a U.S. person, do not use Form W-9. Instead, use the appropriate Form W-8 or Form 8233 (see Publication 515, Withholding of Tax on Nonresident Aliens and Foreign Entities).

**Nonresident alien who becomes a resident alien.** Generally, only a nonresident alien individual may use the terms of a tax treaty to reduce or eliminate U.S. tax on certain types of income. However, most tax treaties contain a provision known as a "saving clause." Exceptions specified in the saving clause may permit an exemption from tax to continue for certain types of income even after the payee has otherwise become a U.S. resident alien for tax purposes.

If you are a U.S. resident alien who is relying on an exception contained in the saving clause of a tax treaty to claim an exemption from U.S. tax on certain types of income, you must attach a statement to Form W-9 that specifies the following five items:

1. The treaty country. Generally, this must be the same treaty under which you claimed exemption from tax as a nonresident alien.

2. The treaty article addressing the income.

3. The article number (or location) in the tax treaty that contains the saving clause and its exceptions.

4. The type and amount of income that qualifies for the exemption from tax.

5. Sufficient facts to justify the exemption from tax under the terms of the treaty article.

**Example.** Article 20 of the U.S.-China income tax treaty allows an exemption from tax for scholarship income received by a Chinese student temporarily present in the United States. Under U.S. law, this student will become a resident alien for tax purposes if his or her stay in the United States exceeds 5 calendar years. However, paragraph 2 of the first Protocol to the U.S.-China treaty (dated April 30, 1984) allows the provisions of Article 20 to continue to apply even after the Chinese student becomes a resident alien of the United States. A Chinese student who qualifies for this exception (under paragraph 2 of the first protocol) and is relying on this exception to claim an exemption from tax on his or her scholarship or fellowship income would attach to Form W-9 a statement that includes the information described above to support that exemption.

If you are a nonresident alien or a foreign entity, give the requester the appropriate completed Form W-8 or Form 8233.

## Backup Withholding

**What is backup withholding?** Persons making certain payments to you must under certain conditions withhold and pay to the IRS 28% of such payments. This is called "backup withholding." Payments that may be subject to backup withholding include interest, tax-exempt interest, dividends, broker and barter exchange transactions, rents, royalties, nonemployee pay, payments made in settlement of payment card and third party network transactions, and certain payments from fishing boat operators. Real estate transactions are not subject to backup withholding.

You will not be subject to backup withholding on payments you receive if you give the requester your correct TIN, make the proper certifications, and report all your taxable interest and dividends on your tax return.

**Payments you receive will be subject to backup withholding if:**

1. You do not furnish your TIN to the requester,

2. You do not certify your TIN when required (see the Part II instructions on page 3 for details),

3. The IRS tells the requester that you furnished an incorrect TIN,

4. The IRS tells you that you are subject to backup withholding because you did not report all your interest and dividends on your tax return (for reportable interest and dividends only), or

5. You do not certify to the requester that you are not subject to backup withholding under 4 above (for reportable interest and dividend accounts opened after 1983 only).

Certain payees and payments are exempt from backup withholding. See *Exempt payee code* on page 3 and the separate Instructions for the Requester of Form W-9 for more information.

Also see *Special rules for partnerships* above.

## What is FATCA reporting?

The Foreign Account Tax Compliance Act (FATCA) requires a participating foreign financial institution to report all United States account holders that are specified United States persons. Certain payees are exempt from FATCA reporting. See *Exemption from FATCA reporting code* on page 3 and the Instructions for the Requester of Form W-9 for more information.

## Updating Your Information

You must provide updated information to any person to whom you claimed to be an exempt payee if you are no longer an exempt payee and anticipate receiving reportable payments in the future from this person. For example, you may need to provide updated information if you are a C corporation that elects to be an S corporation, or if you no longer are tax exempt. In addition, you must furnish a new Form W-9 if the name or TIN changes for the account; for example, if the grantor of a grantor trust dies.

## Penalties

**Failure to furnish TIN.** If you fail to furnish your correct TIN to a requester, you are subject to a penalty of $50 for each such failure unless your failure is due to reasonable cause and not to willful neglect.

**Civil penalty for false information with respect to withholding.** If you make a false statement with no reasonable basis that results in no backup withholding, you are subject to a $500 penalty.

**Criminal penalty for falsifying information.** Willfully falsifying certifications or affirmations may subject you to criminal penalties including fines and/or imprisonment.

**Misuse of TINs.** If the requester discloses or uses TINs in violation of federal law, the requester may be subject to civil and criminal penalties.

## Specific Instructions

### Line 1

You must enter one of the following on this line; do not leave this line blank. The name should match the name on your tax return.

If this Form W-9 is for a joint account, list first, and then circle, the name of the person or entity whose number you entered in Part I of Form W-9.

**a. Individual.** Generally, enter the name shown on your tax return. If you have changed your last name without informing the Social Security Administration (SSA) of the name change, enter your first name, the last name as shown on your social security card, and your new last name.

**Note.** ITIN applicant: Enter your individual name as it was entered on your Form W-7 application, line 1a. This should also be the same as the name you entered on the Form 1040/1040A/1040EZ you filed with your application.

**b. Sole proprietor or single-member LLC.** Enter your individual name as shown on your 1040/1040A/1040EZ on line 1. You may enter your business, trade, or "doing business as" (DBA) name on line 2.

**c. Partnership, LLC that is not a single-member LLC, C Corporation, or S Corporation.** Enter the entity's name as shown on the entity's tax return on line 1 and any business, trade, or DBA name on line 2.

**d. Other entities.** Enter your name as shown on required U.S. federal tax documents on line 1. This name should match the name shown on the charter or other legal document creating the entity. You may enter any business, trade, or DBA name on line 2.

**e. Disregarded entity.** For U.S. federal tax purposes, an entity that is disregarded as an entity separate from its owner is treated as a "disregarded entity." See Regulations section 301.7701-2(c)(2)(iii). Enter the owner's name on line 1. The name of the entity entered on line 1 should never be a disregarded entity. The name on line 1 should be the name shown on the income tax return on which the income should be reported. For example, if a foreign LLC that is treated as a disregarded entity for U.S. federal tax purposes has a single owner that is a U.S. person, the U.S. owner's name is required to be provided on line 1. If the direct owner of the entity is also a disregarded entity, enter the first owner that is not disregarded for federal tax purposes. Enter the disregarded entity's name on line 2, "Business name/disregarded entity name." If the owner of the disregarded entity is a foreign person, the owner must complete an appropriate Form W-8 instead of a Form W-9. This is the case even if the foreign person has a U.S. TIN.

Form W-9 (Rev. 12-2014)    Page **3**

**Line 2**

If you have a business name, trade name, DBA name, or disregarded entity name, you may enter it on line 2.

**Line 3**

Check the appropriate box in line 3 for the U.S. federal tax classification of the person whose name is entered on line 1. Check only one box in line 3.

Limited Liability Company (LLC). If the name on line 1 is an LLC treated as a partnership for U.S. federal tax purposes, check the "Limited Liability Company" box and enter "P" in the space provided. If the LLC has filed Form 8832 or 2553 to be taxed as a corporation, check the "Limited Liability Company" box and in the space provided enter "C" for C corporation or "S" for S corporation. If it is a single-member LLC that is a disregarded entity, do not check the "Limited Liability Company" box; instead check the first box in line 3 "Individual/sole proprietor or single-member LLC."

**Line 4, Exemptions**

If you are exempt from backup withholding and/or FATCA reporting, enter in the appropriate space in line 4 any code(s) that may apply to you.

Exempt payee code.

• Generally, individuals (including sole proprietors) are not exempt from backup withholding.

• Except as provided below, corporations are exempt from backup withholding for certain payments, including interest and dividends.

• Corporations are not exempt from backup withholding for payments made in settlement of payment card or third party network transactions.

• Corporations are not exempt from backup withholding with respect to attorneys' fees or gross proceeds paid to attorneys, and corporations that provide medical or health care services are not exempt with respect to payments reportable on Form 1099-MISC.

The following codes identify payees that are exempt from backup withholding. Enter the appropriate code in the space in line 4.

1—An organization exempt from tax under section 501(a), any IRA, or a custodial account under section 403(b)(7) if the account satisfies the requirements of section 401(f)(2)

2—The United States or any of its agencies or instrumentalities

3—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

4—A foreign government or any of its political subdivisions, agencies, or instrumentalities

5—A corporation

6—A dealer in securities or commodities required to register in the United States, the District of Columbia, or a U.S. commonwealth or possession

7—A futures commission merchant registered with the Commodity Futures Trading Commission

8—A real estate investment trust

9—An entity registered at all times during the tax year under the Investment Company Act of 1940

10—A common trust fund operated by a bank under section 584(a)

11—A financial institution

12—A middleman known in the investment community as a nominee or custodian

13—A trust exempt from tax under section 664 or described in section 4947

The following chart shows types of payments that may be exempt from backup withholding. The chart applies to the exempt payees listed above, 1 through 13.

| IF the payment is for . . . | THEN the payment is exempt for . . . |
| --- | --- |
| Interest and dividend payments | All exempt payees except for 7 |
| Broker transactions | Exempt payees 1 through 4 and 6 through 11 and all C corporations. S corporations must not enter an exempt payee code because they are exempt only for sales of noncovered securities acquired prior to 2012. |
| Barter exchange transactions and patronage dividends | Exempt payees 1 through 4 |
| Payments over $600 required to be reported and direct sales over $5,000[1] | Generally, exempt payees 1 through 5[2] |
| Payments made in settlement of payment card or third party network transactions | Exempt payees 1 through 4 |

[1] See Form 1099-MISC, Miscellaneous Income, and its instructions.

[2] However, the following payments made to a corporation and reportable on Form 1099-MISC are not exempt from backup withholding: medical and health care payments, attorneys' fees, gross proceeds paid to an attorney reportable under section 6045(f), and payments for services paid by a federal executive agency.

Exemption from FATCA reporting code. The following codes identify payees that are exempt from reporting under FATCA. These codes apply to persons submitting this form for accounts maintained outside of the United States by certain foreign financial institutions. Therefore, if you are only submitting this form for an account you hold in the United States, you may leave this field blank. Consult with the person requesting this form if you are uncertain if the financial institution is subject to these requirements. A requester may indicate that a code is not required by providing you with a Form W-9 with "Not Applicable" (or any similar indication) written or printed on the line for a FATCA exemption code.

A—An organization exempt from tax under section 501(a) or any individual retirement plan as defined in section 7701(a)(37)

B—The United States or any of its agencies or instrumentalities

C—A state, the District of Columbia, a U.S. commonwealth or possession, or any of their political subdivisions or instrumentalities

D—A corporation the stock of which is regularly traded on one or more established securities markets, as described in Regulations section 1.1472-1(c)(1)(i)

E—A corporation that is a member of the same expanded affiliated group as a corporation described in Regulations section 1.1472-1(c)(1)(i)

F—A dealer in securities, commodities, or derivative financial instruments (including notional principal contracts, futures, forwards, and options) that is registered as such under the laws of the United States or any state

G—A real estate investment trust

H—A regulated investment company as defined in section 851 or an entity registered at all times during the tax year under the Investment Company Act of 1940

I—A common trust fund as defined in section 584(a)

J—A bank as defined in section 581

K—A broker

L—A trust exempt from tax under section 664 or described in section 4947(a)(1)

M—A tax exempt trust under a section 403(b) plan or section 457(g) plan

Note. You may wish to consult with the financial institution requesting this form to determine whether the FATCA code and/or exempt payee code should be completed.

**Line 5**

Enter your address (number, street, and apartment or suite number). This is where the requester of this Form W-9 will mail your information returns.

**Line 6**

Enter your city, state, and ZIP code.

**Part I. Taxpayer Identification Number (TIN)**

Enter your TIN in the appropriate box. If you are a resident alien and you do not have and are not eligible to get an SSN, your TIN is your IRS individual taxpayer identification number (ITIN). Enter it in the social security number box. If you do not have an ITIN, see How to get a TIN below.

If you are a sole proprietor and you have an EIN, you may enter either your SSN or EIN. However, the IRS prefers that you use your SSN.

If you are a single-member LLC that is disregarded as an entity separate from its owner (see Limited Liability Company (LLC) on this page), enter the owner's SSN (or EIN, if the owner has one). Do not enter the disregarded entity's EIN. If the LLC is classified as a corporation or partnership, enter the entity's EIN.

Note. See the chart on page 4 for further clarification of name and TIN combinations.

How to get a TIN. If you do not have a TIN, apply for one immediately. To apply for an SSN, get Form SS-5, Application for a Social Security Card, from your local SSA office or get this form online at www.ssa.gov. You may also get this form by calling 1-800-772-1213. Use Form W-7, Application for IRS Individual Taxpayer Identification Number, to apply for an ITIN, or Form SS-4, Application for Employer Identification Number, to apply for an EIN. You can apply for an EIN online by accessing the IRS website at www.irs.gov/businesses and clicking on Employer Identification Number (EIN) under Starting a Business. You can get Forms W-7 and SS-4 from the IRS by visiting IRS.gov or by calling 1-800-TAX-FORM (1-800-829-3676).

If you are asked to complete Form W-9 but do not have a TIN, apply for a TIN and write "Applied For" in the space for the TIN, sign and date the form, and give it to the requester. For interest and dividend payments, and certain payments made with respect to readily tradable instruments, generally you will have 60 days to get a TIN and give it to the requester before you are subject to backup withholding on payments. The 60-day rule does not apply to other types of payments. You will be subject to backup withholding on all such payments until you provide your TIN to the requester.

Note. Entering "Applied For" means that you have already applied for a TIN or that you intend to apply for one soon.

Caution: A disregarded U.S. entity that has a foreign owner must use the appropriate Form W-8.

TRM

Form W-9 (Rev. 12-2014).                                                                 Page 4

## Part II. Certification

To establish to the withholding agent that you are a U.S. person, or resident alien, sign Form W-9. You may be requested to sign by the withholding agent even if items 1, 4, or 5 below indicate otherwise.

For a joint account, only the person whose TIN is shown in Part I should sign (when required). In the case of a disregarded entity, the person identified on line 1 must sign. Exempt payees, see Exempt payee code earlier.

Signature requirements. Complete the certification as indicated in items 1 through 5 below.

**1. Interest, dividend, and barter exchange accounts opened before 1984 and broker accounts considered active during 1983.** You must give your correct TIN, but you do not have to sign the certification.

**2. Interest, dividend, broker, and barter exchange accounts opened after 1983 and broker accounts considered inactive during 1983.** You must sign the certification or backup withholding will apply. If you are subject to backup withholding and you are merely providing your correct TIN to the requester, you must cross out item 2 in the certification before signing the form.

**3. Real estate transactions.** You must sign the certification. You may cross out item 2 of the certification.

**4. Other payments.** You must give your correct TIN, but you do not have to sign the certification unless you have been notified that you have previously given an incorrect TIN. "Other payments" include payments made in the course of the requester's trade or business for rents, royalties, goods (other than bills for merchandise), medical and health care services (including payments to corporations), payments to a nonemployee for services, payments made in settlement of payment card and third party network transactions, payments to certain fishing boat crew members and fishermen, and gross proceeds paid to attorneys (including payments to corporations).

**5. Mortgage interest paid by you, acquisition or abandonment of secured property, cancellation of debt, qualified tuition program payments (under section 529), IRA, Coverdell ESA, Archer MSA or HSA contributions or distributions, and pension distributions.** You must give your correct TIN, but you do not have to sign the certification.

## What Name and Number To Give the Requester

| For this type of account: | Give name and SSN of: |
|---|---|
| 1. Individual | The individual |
| 2. Two or more individuals (joint account) | The actual owner of the account or, if combined funds, the first individual on the account[1] |
| 3. Custodian account of a minor (Uniform Gift to Minors Act) | The minor[2] |
| 4. a. The usual revocable savings trust (grantor is also trustee)<br>b. So-called trust account that is not a legal or valid trust under state law | The grantor-trustee[1]<br><br>The actual owner[1] |
| 5. Sole proprietorship or disregarded entity owned by an individual | The owner[3] |
| 6. Grantor trust filing under Optional Form 1099 Filing Method 1 (see Regulations section 1.671-4(b)(2)(i) (A)). | The grantor[4] |

| For this type of account: | Give name and EIN of: |
|---|---|
| 7. Disregarded entity not owned by an individual | The owner |
| 8. A valid trust, estate, or pension trust | Legal entity[4] |
| 9. Corporation or LLC electing corporate status on Form 8832 or Form 2553 | The corporation |
| 10. Association, club, religious, charitable, educational, or other tax-exempt organization | The organization |
| 11. Partnership or multi-member LLC | The partnership |
| 12. A broker or registered nominee | The broker or nominee |
| 13. Account with the Department of Agriculture in the name of a public entity (such as a state or local government, school district, or prison) that receives agricultural program payments | The public entity |
| 14. Grantor trust filing under the Form 1041 Filing Method or the Optional Form 1099 Filing Method 2 (see Regulations section 1.671-4(b)(2)(i) (B)) | The trust |

[1] List first and circle the name of the person whose number you furnish. If only one person on a joint account has an SSN, that person's number must be furnished.
[2] Circle the minor's name and furnish the minor's SSN.

[1] You must show your individual name and you may also enter your business or DBA name on the "Business name/disregarded entity" name line. You may use either your SSN or EIN (if you have one), but the IRS encourages you to use your SSN.
[2] List first and circle the name of the trust, estate, or pension trust. (Do not furnish the TIN of the personal representative or trustee unless the legal entity itself is not designated in the account title.) Also see Special rules for partnerships on page 2.
*Note. Grantor also must provide a Form W-9 to trustee of trust.

Note. If no name is circled when more than one name is listed, the number will be considered to be that of the first name listed.

## Secure Your Tax Records from Identity Theft

Identity theft occurs when someone uses your personal information such as your name, SSN, or other identifying information, without your permission, to commit fraud or other crimes. An identity thief may use your SSN to get a job or may file a tax return using your SSN to receive a refund.

To reduce your risk:
• Protect your SSN,
• Ensure your employer is protecting your SSN, and
• Be careful when choosing a tax preparer.

If your tax records are affected by identity theft and you receive a notice from the IRS, respond right away to the name and phone number printed on the IRS notice or letter.

If your tax records are not currently affected by identity theft but you think you are at risk due to a lost or stolen purse or wallet, questionable credit card activity or credit report, contact the IRS Identity Theft Hotline at 1-800-908-4490 or submit Form 14039.

For more information, see Publication 4535, Identity Theft Prevention and Victim Assistance.

Victims of identity theft who are experiencing economic harm or a system problem, or are seeking help in resolving tax problems that have not been resolved through normal channels, may be eligible for Taxpayer Advocate Service (TAS) assistance. You can reach TAS by calling the TAS toll-free case intake line at 1-877-777-4778 or TTY/TDD 1-800-829-4059.

Protect yourself from suspicious emails or phishing schemes. Phishing is the creation and use of email and websites designed to mimic legitimate business emails and websites. The most common act is sending an email to a user falsely claiming to be an established legitimate enterprise in an attempt to scam the user into surrendering private information that will be used for identity theft.

The IRS does not initiate contacts with taxpayers via emails. Also, the IRS does not request personal detailed information through email or ask taxpayers for the PIN numbers, passwords, or similar secret access information for their credit card, bank, or other financial accounts.

If you receive an unsolicited email claiming to be from the IRS, forward this message to phishing@irs.gov. You may also report misuse of the IRS name, logo, or other IRS property to the Treasury Inspector General for Tax Administration (TIGTA) at 1-800-366-4484. You can forward suspicious emails to the Federal Trade Commission at spam@uce.gov or contact them at www.ftc.gov/idtheft or 1-877-IDTHEFT (1-877-438-4338).

Visit IRS.gov to learn more about identity theft and how to reduce your risk.

## Privacy Act Notice

Section 6109 of the Internal Revenue Code requires you to provide your correct TIN to persons (including federal agencies) who are required to file information returns with the IRS to report interest, dividends, or certain other income paid to you; mortgage interest you paid; the acquisition or abandonment of secured property; the cancellation of debt; or contributions you made to an IRA, Archer MSA, or HSA. The person collecting this form uses the information on the form to file information returns with the IRS, reporting the above information. Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation and to cities, states, the District of Columbia, and U.S. commonwealths and possessions for use in administering their laws. The information also may be disclosed to other countries under a treaty, to federal and state agencies to enforce civil and criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism. You must provide your TIN whether or not you are required to file a tax return. Under section 3406, payers must generally withhold a percentage of taxable interest, dividend, and certain other payments to a payee who does not give a TIN to the payer. Certain penalties may also apply for providing false or fraudulent information.


TRM

EXHIBIT "E"

GENERAL CONDITIONS



## INDEX

ARTICLE 1:     Subcontractor's Contract Documents ................................................... 2

ARTICLE 2:     The Architect .................................................................................... 4

ARTICLE 3:     Hazardous Material ........................................................................... 6

ARTICLE 4:     Subcontractor's Responsibilities ........................................................ 6

ARTICLE 5:     Legal Obligations .............................................................................. 10

ARTICLE 6:     Testing and Inspection ...................................................................... 12

ARTICLE 7:     Guarantees ........................................................................................ 13

ARTICLE 8:     Indemnification, Insurance and Bonds ............................................... 14

ARTICLE 9:     Administration and Supervision of the Work ..................................... 19

ARTICLE 10:   Shop Drawings and Samples .............................................................. 21

ARTICLE 11:   Construction Practices at the Site, Protection of Work and Property Protection of Work and Property .......................................................................... 24

ARTICLE 12:   Correction of Work ............................................................................ 31

ARTICLE 13:   Substantial Completion ...................................................................... 31

ARTICLE 14:   Payments ........................................................................................... 33

ARTICLE 15:   Change Orders and Claims for Extra Cost or Time Extensions ........... 40

ARTICLE 16:   Fast Track/Time Extension Delays ..................................................... 44

ARTICLE 17:   Taxes ................................................................................................. 47

ARTICLE 18:   Cooperation With Lender ................................................................... 48

ARTICLE 19:   Disputes ............................................................................................. 48

ARTICLE 20:   Ethics and Compliance ...................................................................... 50

ARTICLE 21:   Miscellaneous .................................................................................... 51



## ARTICLE 1:     Subcontractor's Contract Documents

A.  The drawings and specifications are "scope" documents which indicate the general scope of the Project in terms of the architectural design concept, the dimensions of the building(s) or other improvements, the type of structural, mechanical, electrical and utility systems and an outline of major architectural elements of construction. As "scope" documents the drawings and specifications do not necessarily indicate or describe all work required for the full performance and completion of the work. Contracts and agreements for material will be let on the basis of such documents with the understanding that Subcontractor shall furnish all items required for proper completion of the Work, including all work reasonably inferable from the drawings, specifications and Scope of Work, without adjustment to Contract Price. It is intended that the Work be of sound and quality construction and Subcontractor shall be responsible for the inclusion of adequate amounts to cover installation of items indicated, described or implied in the portion of the Work to be performed by them. Subsequent drawings and specifications required for the reasonable development of the Work may be issued for purposes of construction which will more completely detail all requirements of the Work. Subcontractor must provide all design and engineering work necessary to produce a final working and completely operational design (including details), taking into consideration the design intent, economy, fabrication and installation schedules.

B.  Generally, the Specifications (1) describe work which cannot be readily indicated on the Drawings and (2) indicate types, qualities and methods of installation of the various materials and equipment required for the Work. The Specifications are not intended to mention every item of work which can be adequately shown on the Drawings nor are the Drawings intended to show all items of work described or required by the Specifications even if they could have been shown. All materials or labor for work shown on the Drawings or that is reasonably inferable therefrom as being necessary to produce a finished job shall be provided whether or not the work is expressly covered in the Specifications or on the Drawings.

C.  In the event there is a discrepancy between the various Contract Documents, the document imposing the greater duty or greater quantity shall control. If the difference is between the requirements of the Drawings or Specifications or differences within the Drawings or the Specifications themselves, then they shall be submitted to Contractor who shall decide which of the conflicting requirements shall govern and Subcontractor shall perform work in accordance with such decision and without any change in Contract Price. All the Contract Documents shall be read together as complementary and rights and obligations thereunder shall be cumulative.

D.  The Work includes the complete coordination of the Work with the work of other trades and the complete integration of the various systems furnished and installed as part of this Contract with the systems provided by others. As part of the coordination procedure, Subcontractor shall attend meetings as required by Contractor and provide information for review by other trade subcontractors, as well as review information provided by others. Such coordination shall be done in such a manner as to be expeditious and in no way

5.121.18 03435                                    2.                    Subcontractor Initials 

·causing delay to other trades or the Project in general. Coordination and integration of systems and/or equipment will also include the development of composite drawings, and includes, but is not limited to, the following:

(a)     Location and/or relocation of equipment with the confines of a given space or general area prior to installation to maximize accessibility, serviceability and improve operations as well as resolve conflicts between trades.

(b)     Provide adequate qualified personnel to install, check out and/or verify operation of equipment and/or systems which require the involvement of Subcontractor as defined in the Contract Documents. This includes testing by representatives of the Owner, Architect or Contractor.

(c)     Provide all necessary preparatory work to permit attachment, connection and/or integration of any kind for and/or with the work of other trades. No additional costs will be accepted for any relocations or equipment or appurtenances due to conflicts . with existing or new systems.

E.     It is understood and agreed that refinement and detailing will be accomplished from time to time with respect to the Drawings and Specifications. No adjustment shall be made to the price or time for completion of the work unless such refinement or detailing results in material changes in the scope of quality, function and/or intent of the Drawings and Specifications not reasonably inferable or anticipatable by a trade contractor of Subcontractor's expertise and experience.

F.     By execution of this Subcontract, Subcontractor acknowledges having previously visited the job site to understand and include every aspect of Work required, whether or not shown on the Drawings and Specifications but as required in a Project of this nature. Further, Subcontractor has reviewed the constraints of loading material delivery and material storage and will comply with any and all of Contractor's requirements.

G.     Before proceeding with the Work, Subcontractor will use all reasonable efforts to accurately check all previous and surrounding work and dimensions and determine the correctness of the same. Failure of Subcontractor to detect discrepancies and report same to Contractor will relieve Contractor of liability from any and all claims to pay for Subcontractor cost, expense, loss or damage resulting therefrom. Subcontractor shall take, determine, investigate and verify all field measurements, dimensions, field construction criteria and observable conditions (which shall include observable conditions indicated in tests and reports provided to Subcontractor by or through Contractor) for the performance of Work and shall check and coordinate this information with the information contained in the Contract Documents. Subcontractor shall be responsible for determining the exact location of all Work. Subcontractor shall promptly investigate all existing conditions and before such conditions are further disturbed notify Contractor in writing within three (3) days of discovering (i) physical conditions at the job site differing materially from those indicated in the Contract Documents, or (ii) unknown physical conditions at the job site of an unusual nature, differing materially from those ordinarily encountered and generally

Subcontractor Initials 

TRM

recognized as inherent in work of the character provided for in the Contract Documents.

H.    In the event Contract Documents are revised, Subcontractor must notify Contractor of any proposed change to Contract Price in accordance with the General Conditions within ten (10) calendar days from receipt of Contract Documents. ~~If said notice is not made within this time period, then said revised Contract Documents shall become part of contractual obligations with no change in Contract Price.~~ Contractor will calculate the credit where work is deleted.

## ARTICLE 2:    The Architect

A.    The Architect shall be Owner's representative during the construction period and shall review the Work in progress on behalf of Owner. The Architect will not be responsible for construction means, methods, techniques, sequences or procedures or for safety precautions and programs in connection with the Work and he will not be responsible for any Subcontractor's failure to carry out the Work in accordance with the Contract Documents.

B.    The Architect shall be the interpreter of the Drawings and Specifications. In the event of dispute, the Architect shall render an impartial decision as to the items to be included within the scope of the work, which decision is advisory only and, shall be, in part, aided by the scope of the Contract Documents.

C.    The Architect shall furnish with reasonable promptness, additional instructions whether by means of drawings or otherwise necessary for the proper execution of the work. All such instructions shall be consistent with the Contract Documents, or approved modifications, or developments thereof and inferable therefrom. The Work shall be executed in conformity therewith and Subcontractor shall do no work without approved drawings and instructions.

D.    Wherever typical parts or sections of the Work are completely detailed on the Drawings and other parts or sections which are essentially of the same construction are shown in outline only, the complete details shall apply to the Work parts or sections shown in the outline.

E.    Dimensions shall not be determined by scale or rule. Figured dimensions shall be followed at all times. If figured dimensions are lacking on Drawings, Subcontractor shall provide field dimensions for Contactor's and Architect's review and approval.

F.    Unless otherwise provided in the Contract Documents, Subcontractor will be furnished, free of charge, one copy of Drawings and Specifications reasonably necessary for the execution of the Work.

G.    All copies of Drawings and Specifications furnished by the Architect are the property of Owner. Such copies are not to be used on any other work or projects whatsoever and, with the exception of any Contract Sets, are to be returned to Owner and Contractor on request

Subcontractor Initials 



at the completion of the Work. All models and mock-ups are the property of Owner.

H.  Owner, the Architect and Contractor shall at all times have access to the Work wherever it is in preparation. Subcontractor, its Sub-subcontractors and suppliers, shall provide proper and safe facilities for such access and for inspection at the site, at the place of manufacture or elsewhere.

I.  If the Specifications, the Architect's instructions, Laws, or any public authority require any Work to be specifically tested or reviewed, Subcontractor, through Contractor, shall give the Architect timely written notice of the readiness for inspection.

J.  If any Work has been covered contrary to the specific requirements of the Contract Documents or instructions of Contractor or Architect before it has been observed by Contractor or Architect, such Work must, if required by Contractor or Architect, be uncovered for its observation and replaced and recovered, at the expense of Subcontractor and without reimbursement.

K.  If any questioned Work has been covered up which has not been specifically required to be observed by the Architect prior to being covered, the Architect may request to see the Work in question and it shall be uncovered by Subcontractor as directed. If such Work is found to be in accordance with the requirements of the Contract Documents, the Contractor shall reimburse Subcontractor for the reasonable cost of such uncovering and recovering. If such Work is found to be not in accordance with the Contract Documents, the cost of uncovering, replacement and recovering shall be borne solely by Subcontractor without reimbursement.

L.  Subcontractor shall place its engineering force at the Architect's disposal for field checking during any inspection period. When layouts of the building and site Work are to be made Subcontractor doing such work shall notify the Architect in sufficient time so that the Architect may be present.

M.  The Architect is not authorized to make any changes or modifications in the Contract Documents, to direct additional work not required thereby or to waive the performance by Subcontractor of any requirements of the Contract Documents except as provided therein. Subcontractor shall not carry out any scope changes to the work as a result of changes made by the Architect or shop drawing submissions without advising Contractor of such change and receiving Contractor's consent.

N.  The Architect, Owner and Contractor each will have the authority to reject any of Subcontractor's work which does not conform to the Contract Documents.

O.  The Architect may conduct inspections to determine the dates of Substantial Completion and Final Completion, will receive and review written guarantees and related documents required by the Contract Documents and will issue a final Certificate of Payment.

P.  Neither the Architect, Owner nor Contractor will be responsible for the acts, omissions or



performance of Subcontractor, it being expressly understood that neither the presence nor the absence of the Architect, Owner or Contractor on the job shall relieve Subcontractor from responsibility for compliance with the Contract Documents, nor from responsibility for removal and replacement of Work not in accordance therewith.

### ARTICLE 3:    Hazardous Material

A. In the event Subcontractor encounters on the site material reasonably believed to be asbestos, polychlorinated biphenyls (PCB), lead, heavy metals or other hazardous substances (hereinafter called "Hazardous Material") which has not been rendered harmless, Subcontractor shall immediately stop Work in the area affected and report the condition to Contractor in writing. The Work in the affected area shall not thereafter be resumed except at Contractor's direction.

B. Prior to commencement of the Work, Subcontractor shall require manufacturers of all materials and equipment for the Work to provide certifications, warranties, Material Safety Data Sheets ("MSDS") or statements that such materials or equipment (1) are free of Hazardous Materials, or (2) contain specific amounts of Hazardous Materials and recommendations regarding handling such. Such certifications, warranties, MSDS or statements shall be in writing in a form acceptable to Contractor, and shall be forwarded by Contractor to the Architect. If the Manufacturer states that a material or equipment contains Hazardous Materials, Contractor shall be afforded adequate and timely opportunity to order that other materials be substituted without causing delay to the Project.

### ARTICLE 4:    Subcontractor's Responsibilities

A. Unless specifically noted to the contrary in the Scope of Work.

B. Subcontractor agrees:

1. It shall at all times enforce strict discipline and good order among its Sub-subcontractors, suppliers and employes and shall not employ on the Work any unfit person or anyone not skilled in the task assigned to him.

2. Should the proper and accurate performance of the Work depend upon the proper and accurate performance of other work not included in this Subcontract, Subcontractor shall use all necessary means to discover any defect in such other work and shall allow Contractor or other subcontractors as Contractor elects a reasonable amount of time to remedy such defects. If Subcontractor proceeds with its Work it shall be considered to have accepted such other work, unless Subcontractor shall have proceeded pursuant to instructions in writing by Contractor over Subcontractor's written objection.

3. To submit to Contractor promptly when requested by Contractor information with respect to the names, responsibilities and titles of the principal members of Subcontractor's staff.



4.  To furnish at its expense its own temporary facilities for storage except those specifically agreed to be furnished to him by Contractor in the Subcontract. Subcontractor's shanties, material, trailers, storage rooms, field offices, etc. ("Field Facilities") will be placed in locations designated by Contractor. All services to Field Facilities will be provided by Subcontractor, including temporary fire protection. When it becomes necessary, due to the progress of the Project, for Subcontractor to relocate its field operations, including any Field Facilities, Subcontractor will do so in an expeditious manner and at no additional cost. The construction of Field Facilities will be of fireproof material only with walls extending to the underside of the slab above (i.e., concrete or gypsum block, rated drywall or sheet metal), contain a minimum of one (1) 20 lb. dry ABC Fire Extinguisher and comply with any applicable federal, state or local requirements. Subcontractor shall remove all of its Field Facilities within seven (7) days of written notification from Architect, Owner or Contractor and in conformance with all Laws. If Subcontractor fails to remove its Field Facilities within seven (7) days of written notification by Architect, Owner or Contractor, Contractor shall have the right but not the obligation to remove Field Facilities with all costs back charged to Subcontractor's account. Subcontractor shall place trash in containers it has provided for that purpose and keep its work areas neat, clean and free of rubbish and fire hazards. Should Subcontractor fail to maintain proper housekeeping in Contractor's opinion, Contractor shall have the right but not the obligation to clean the area with all costs incurred back charged to Subcontractor's account.

*center pile A.P.*

5.  To lay out all Work and be responsible for all lines, elevations, and measurements of the work. Subcontractor shall be responsible for all field dimensions prior to fabrication of the Work. Subcontractor must verify the figures shown on drawings before laying out the Work and shall be responsible for any error resulting from the failure to exercise such precaution.

6.  To pay Contractor's reasonable charges caused by the fault or negligence of Subcontractor.

*None A.P.*

7.  To comply with all Laws, including, without limitation, paying prevailing wages as may be required, OSHA and those of other authorities having jurisdiction of the safety of persons or property, and to pay fines or penalties imposed for violation thereof. Subcontractor accepts responsibility of any and all fines relating to the Work, as may be imposed by authorities having jurisdiction and shall indemnify Owner and Contractor against any loss or expense consequent to fine or violations pertaining to Subcontractor's performance.

8.  Not to display on the Work or, on or about the Project Site any sign, trademark or other advertisement, and to remove everything of an advertising nature when so directed by Contractor.

9.  Before Subcontractor employs any Sub-subcontractor, the name of such Sub-

TRM

S.121.18 03435    7    Subcontractor Initials  *AP*



subcontractor shall be submitted to Contractor in advance for its acceptance or rejection and no Sub-subcontractor shall be employed except those who have been accepted by Contractor in accordance with such submission. Such submissions and such approvals shall be in writing. For all purposes hereof, each Sub-subcontractor shall be bound by all of the provisions of the Contract Documents and Subcontractor shall be fully responsible for all the acts, omissions and performance of its Sub-subcontractors and their suppliers and all persons either directly or indirectly employed by any of the foregoing, and for all the work performed by any of the foregoing.

10. In the event of any dispute as to whether or not any portion of the Work is within the Scope of the Work to be performed by Subcontractor or any dispute as to whether or not Subcontractor is entitled to a Change Order for any work requested of him, Subcontractor shall continue to proceed diligently with the performance as required by Contractor and the resolution with respect to whether or not Subcontractor shall be paid therefore shall be determined by the respective parties with reasonable promptness, but in no event shall delay in such determination excuse prompt performance of the work requested.

11. Should the Work require the removal or displacement of any barricade, railing or other means of protection, Subcontractor shall replace or reinstall the item in question immediately upon completion of the work which necessitated the removal or displacement, but not later than the end of the work day regardless of whether the item of Work is completed or not. Similarly, Subcontractor must not leave such areas unattended and shall be fully responsible for any damages, injury, citations, fines, penalties, etc., resulting from such negligence or omission.

C. Contractor and Owner reserve the right to let other contracts in connection with the Project. Subcontractor shall afford other subcontractors reasonable opportunity for introduction and storage of their materials and for the execution of their work. *As-Builts of our Work only (AP)*

D. As the Work progresses, Subcontractor shall maintain in the field an up to date set of as-built drawings showing all Work, including but not limited to steam conduits, sewers, water, gas, or other piping, conduits, cable, similar structures, piping, gas and water curb boxes, valves, steam loops, electric splices or pull boxes. Subcontractor shall record final and actual sizes, locations and elevations of all Work by figures and offset distances, in feet and inches, to permanent improvements such as buildings, retaining walls, or curbs. Sufficient measurements shall be given to locate and define all structures. Include all bends, valves, ends of sewers, existing lines and other items which may be exposed due to installation of the plumbing, heating and electrical work. At the completion of the work, Subcontractor shall deliver to Contractor accurate as-built drawings on media and in format directed by Contractor. These shall be properly titled, dated and signed by Subcontractor and duly certified by Subcontractor as correct. Subcontractor shall prepare four (4) complete sets of manufacturer's catalogues, operating and maintenance instruction and other similar data, including the necessary photographic cuts, diagrams and value charts covering all plumbing, sprinklers and electrical, mechanical and manually operated devices

5.121.18 03435         8         TRM   *AP*

Subcontractor Initials

furnished or installed as part of Subcontractor's work.

E.

In order to provide for the uninterrupted and efficient construction of the Project in accordance with the approved construction schedule and contract sum, Subcontractor agrees that it shall only employ or otherwise utilize such labor in the performance of its work (the "labor force") that will work in harmony with all others working on or associated with the Project. Subcontractor shall be responsible for labor disputes arising from failure of the labor force to work in harmony with each other and with the labor and trades of other contractors and/or subcontractors on the Project, including without limitation such disputes arising from any use of both union labor and non-union labor on the Project. Subcontractor shall be responsible for taking all available measures to settle any labor disputes that may arise and for insuring job continuity. Labor disturbances shall not result in any extension to the approved construction schedule and/or increase in the contract sum.

In the event that Subcontractor employs or otherwise hires union labor, Subcontractor agrees that all disputes as to jurisdiction of trades shall be adjusted in accordance with any plan for the settlement of jurisdictional disputes which may be in effect either nationally or in the locality in which the Work is being done and that Subcontractor shall be bound and abide by all such adjustments and settlements of jurisdictional disputes, provided that the provisions of this Article 4 shall not be in violation of or in conflict with any provisions of law applicable to the settlement of such disputes. If required by the Scope of Work, Subcontractor shall execute and be bound by all terms and conditions of a Project Labor Agreement applicable to the Project.

Should Subcontractor fail to carry out or comply with any of the foregoing provisions, Contractor shall have the right, in addition to any other rights and remedies provided by the Contract Documents or by law, after three (3) days written notice mailed or delivered to the last known address of Subcontractor, to terminate this Subcontract or any part thereof or the employment of Subcontractor for all or any portion of the Work, and, for the purpose of completing the Work, to enter upon the Project Site and take possession, in the same manner, to the same extent and upon the same terms and conditions as set forth in Article 8 of the Subcontract.

Subcontractor's adherence to the provisions set forth above is a material obligation of the Subcontract.

F.

Subcontractor shall employ upon all parts of the work competent and trustworthy workers, including an expert and reliable foreman or superintendent. Subcontractor shall not employ workers or means which may cause strikes, stoppages, or similar trouble by workers whose services affect the progress of the Work. Should Contractor at any time give notice in writing to Subcontractor or its representative that any employee is insolent, disorderly, careless, unobservant of the instructions, dishonest, or in any way a detriment to the satisfactory progress of the work, or whom Contractor deems incompetent or a hindrance to the proper progress of the Project, such employee shall at once be dismissed and not again be allowed to engage in any part of the Work.

Subcontractor Initials 



G.   The books and records of Subcontractor, as they relate to the Project, shall be maintained in a condition that will be auditable at any time and from time to time by Owner and Contractor. Subcontractor shall keep in accordance with generally accepted accounting principles, accurate records of account with respect to all costs allocable to the Work. Subcontractor shall maintain and make available upon request, for a period six (6) years after Final Payment, the contract, books, documents and records necessary to certify the nature and extent of the costs of the Work and demonstrate compliance with Laws and the requirements of the Contract Documents, including, without limitation, those set forth in Article 20 of these General Conditions when requested by Owner or Contractor, or any of their duly authorized representatives. Subcontractor shall make all contracts and all such records and invoices, vouchers, purchase orders, time sheets, receipts, subcontracts, documents and any other information pertaining to the performance or furnishing of the Work available for inspection and audit by Contractor or Owner, or any designee thereof; from time to time at the request of Owner or Contractor in order to substantiate claims with respect to change orders, records relating to change orders shall be so maintained as to permit the cost of the change order work to be clearly distinguishable from all other costs. Copies of canceled checks evidencing payment to Sub-subcontractors and suppliers shall be supplied upon request. *others.* (A.P.) *on*

H.   Initial protection of openings is by ~~Subcontractor~~ unless specifically noted otherwise in Exhibit A - Scope of Work. If Subcontractor removes any protection in order to perform work, it shall during the course of its work provide whatever safety planking and temporary protection is necessary to protect all openings in accordance with the regulations of all governmental agencies having jurisdiction.

I.   Subcontractor shall immediately replace any protection removed for any reason. Should Subcontractor remove protection for the installation of its work, Subcontractor shall provide manpower to continually safeguard opening until temporary protection is reinstalled by Subcontractor. Failure to replace protection will result in Subcontractor being charged for cost of replacement by others.

## ARTICLE 5:      Legal Obligations

A.   Subcontractor shall comply, at its own expense, with all Laws relating to the terms and conditions of employment of any employee who is employed in connection with the work to be performed under the Subcontract, including without limitation by reason of specification, the applicable provisions of the Construction Safety Act, Fair Labor Standards Act, the Fair Employment Practices Law, the Equal Pay Act, and Americans with Disabilities Act, all as amended from time to time.

B.   Subcontractor shall not discriminate against any employee or applicant for employment because of race, creed, color, sex, handicap or national origin, and shall take affirmative action and cause all of its respective Sub-subcontractors of any tier to take affirmative action to afford equal employment opportunities without discrimination because of race, creed, color, sex, handicap or national origin. Such action shall be taken with reference,

Subcontractor Initials  

TRM

but not limited to, recruitment, employment, job assignment, promotion, upgrading, demotion, transfer, layoff, termination, rates of pay or other forms of compensation and selection for training including apprenticeship or on-the-job training.

C.    Subcontractor shall comply, at its own expense, with all plans, guidelines and policy determinations relating to the employment of minority groups, established by any public authority or trade association, or any other appropriate organization designated by Contractor.

D.    Subcontractor shall obtain and pay for all permits, licenses and certificates of inspection necessary for the prosecution and completion of the Work. Subcontractor shall give all notices and comply with all Laws bearing on the conduct of the Work, including, without limitation, OSHA, and shall be solely responsible for all loss, cost, damage or expense (including attorney's fees) arising out of its failure to give any such notices or to so comply. If Subcontractor observes that the Drawings and/or Specifications are at variance therewith, it shall promptly notify Contractor and the Architect in writing and any necessary changes shall be made in accordance with the General Conditions.

E.    Without limitation of any other provision hereof, if Subcontractor performs any Work which is contrary to any laws, ordinances, codes, rules or regulations, he shall make all changes as required to comply therewith and bear all costs arising therefrom without additional reimbursement.

F.    Subcontractor shall pay all royalties and license fees applicable to the Work. Subcontractor shall defend and shall indemnify and save Owner, Contractor and Architect harmless from any and all suits, demands, or claims for infringement of any patent rights except if a particular design, process or product is specified in the Contract Documents. If such specification is made and Subcontractor has reason to believe it is an infringement of a patent, Subcontractor shall notify Contractor and the Architect.

G.    The review by the Architect or Contractor of any method of construction, invention, appliance, process, article, device, or material of any kind shall be for its adequacy for the Work, and shall not be deemed an approval thereof for use by Subcontractor in violation of any patent or other rights of any third person.

H.    Without limitation of any other provision hereof, Subcontractor shall cooperate with the other contractors and with Contractor in connection with compliance with regulations of OSHA, including as may be relevant, appealing decisions, performing corrective work on the Work within abatement periods, appealing from or requesting extensions or abatement periods when work has been done by other contractors, and furnishing such supporting information or material as may be necessary to fully protect the rights of Owner, Contractor, and other contractors on pending or prospective violation orders.

I.    CODE OF ETHICS. Contractor shall notify Toll, either through its General Counsel at 215-938-8122 or anonymously by either calling 1-877-628-7892 or on line at

TRM

5.121.18 03435                                    11

Subcontractor Initials   

https://tollbrothers.alertline.com/gcs/welcome of any illegal, unethical, or other improper conduct by any Toll employee or subcontractor, including, but not limited to, violations by a Toll employee or subcontractor of Toll Brothers' Code of Ethics and Business Conduct (found at: http://www.tollbrothers.com/pdfs/ethics_policy.pdf ), including but not limited to requests to provide goods or services for free or at discounts. Contractor shall include this provision in all of its subcontracts and make all of its employees and subcontractors aware of this requirement. Toll and Contractor agree that neither will take any retaliatory action against Contractor, employees or subcontractors as a result of providing any notification to Toll pursuant to this Section.

**ARTICLE 6:      Testing and Inspection**

A.      Contractor may retain the services of a testing laboratory to perform tests and make the required inspections and reports as specified in the various sections of the Specifications or as required by the Architect in the case of a question as to the strength or suitability of materials. Testing laboratories shall be responsible for conducting and interpreting the tests. A copy of each test report shall be made available to Subcontractor.

B.      The testing of interior and exterior piping systems and mechanical equipment and the testing of electrical wiring systems and electrical equipment, as specified under the mechanical and electrical sections of the Specifications, shall be done by Subcontractor at its own expense. Subcontractor is to notify the Architect and Contractor of such tests at least three (3) days in advance.

C.      The cost of testing services solely for the convenience of Subcontractor in its scheduling and performance of the Work, and the cost of testing services related to remedial operations performed to correct deficiencies in the work shall be borne solely by Subcontractor.

D.      The nature and scope of testing services performed by agencies retained by Contractor or Subcontractor shall be in accordance with requirements of governing authorities having jurisdiction over the work and as otherwise specified, and shall be consistent with reasonable standards of engineering practice. All testing laboratories and companies shall be subject to Contractor's prior approval.

E.      If, in the performance of any testing, control, balancing, adjusting or similar work to be performed by Subcontractor or any agent of Subcontractor, it is the opinion of Contractor or the Architect that Subcontractor or said agent has failed to substantiate its ability to perform such work, Subcontractor shall, at its expense, retain the services of a testing laboratory or service organization satisfactory to Contractor for the performance of such work.

F.      If after the commencement of the Work the Architect determines that any of the Work requires special inspection, testing or approval, the Architect will, upon written authorization from Contractor order such special inspection, testing or approval. If such special inspection or testing reveals a failure of the Work to comply (1) with the requirements of the Contract Documents, or (2) with respect to the performance of the

5.J21.18 03435                                   12                      Subcontractor Initials 

Work, with laws, ordinances, codes, rules, regulations or orders of any public authority having jurisdiction, Subcontractor shall bear all costs thereof, including the Architect's and Contractor's additional services made necessary by such failure. Otherwise Contractor shall bear such costs and an appropriate Change Order shall be issued.

G. Neither the observations of the Architect, nor Contractor in their administration of the Subcontract, nor inspections, tests or approvals by persons other than Subcontractor, shall relieve Subcontractor from its obligations to perform the work in accordance with the Contract Documents.

**ARTICLE 7:    Guarantees**

A. Subcontractor guarantees to Contractor that the Work and all materials and equipment furnished therein under the Subcontract shall be of good quality, new and free from defects in materials and workmanship and shall conform to the requirements of the Contract Documents for a period of two (2) years from the date of final payment by Contractor, or for a longer period if so specified in the Contract Documents, provided, however, that if the Work and any materials or equipment incorporated therein is found after such final payment not to comply with the Contract Documents, the guarantee period thereon shall commence on the date it is corrected to comply to Contractor's satisfaction with the Contract Documents. Additionally, Subcontractor shall guarantee the Work and the materials and equipment therein in accordance with any special warranties that may be set forth in the Contract Documents. Delivery of Subcontractor's guarantee is one of the conditions to Subcontractor's final payment, and by execution of this Subcontract, Subcontractor consents to the assignment of all guarantees and warranties to Contractor.

B. Subcontractor shall, within a reasonable time after receipt of written notice thereof, make good any defects in materials, equipment and otherwise in the Work which may develop within any guarantee periods, and also make good any damage to other work caused by the repairing of such defects at his own expense, and without reimbursement under the Subcontract.

C. The foregoing remedies shall not deprive Contractor of any action, right, or remedy otherwise available to it for breach of any of the provisions of the Contract Documents by Subcontractor and the periods referred to above, or such longer time as may be specified elsewhere, shall not be construed as a limitation on the time in which Contractor may pursue such other action, right or remedy against Subcontractor, nor Subcontractor's responsibility to have complied with the Contract Documents.

D. Subcontractor shall furnish a written guarantee to Contractor at the completion of the Project and prior to receiving final payment. The guarantee shall read as follows:

1. Subcontractor guarantees that all Work is and will remain free from defects in workmanship and materials for a period of two (2) years from the date of Final Payment, and that Subcontractor agrees that it will, at its own expense, repair and replace all defective work and all other work damaged thereby, which becomes

5.121.18 03435                        13                   Subcontractor Initials



effective during the term of this guarantee at a time and in a manner convenient to Contractor.

2.  This guarantee shall be in addition to any other guarantees called for in the Contract Documents.

3.  All guarantees required of Subcontractor, Sub-subcontractors and material suppliers in the various sections of the specifications shall be in the same form as set forth herein.

4.  All guarantees required by the Contract Documents shall commence upon Substantial Completion of the Project as defined by Contractor. The guarantee for punch list items shall commence upon completion of the work for the item as set forth in the punch list. For any repair work performed under this contract, it shall be deemed that the guarantee work shall recommence for its original time period after repair or replacement work is completed and accepted.

5.  This guarantee shall cover a period of two (2) years commencing from the date of Substantial Completion of the Project or other period stipulated by the Contract Documents for any specific portion or phase of the Work if such a period is of a longer duration. If Subcontractor is required to do any work under this guarantee following Final Payment, the two (2) year period for this guarantee with respect to such corrective work shall commence on the completion thereof.

6.  Neither Final Payment, nor any provision in the Contract Documents, nor partial or entire occupancy of the premises by Contractor, shall constitute acceptance of Work not done in accordance with the Contract Documents, or relieve Subcontractor of liability in respect to any express warranties or guarantees or responsibility for faulty or defective equipment, materials or workmanship. Subcontractor shall remedy any defects in the Work and pay for any damage to other work resulting therefrom, which shall appear within the guarantee period. Contractor shall, with reasonable promptness, give Subcontractor notice of defects observed.

7.  Subcontractor consents to the assignment by Contractor of any and all guarantees and warranties required of Subcontractor and shall execute all necessary documents required by Contractor to effect such assignment.

## ARTICLE 8:    Indemnification, Insurance and Bonds

A.  To the fullest extent permitted by law, Subcontractor shall indemnify, defend, save and hold Owner, Contractor, and Architect (excluding with respect to the Architect, claims arising out of (i) the preparation or approval of maps, drawings, opinions, reports, survey, Change Orders, designs or specifications, or (ii) the giving of or the failure to give directions or instructions by the Architect, his agent or employees, provided such giving or failure to give is the primary cause of the injury or damage), their respective partners,

TRM

5,121,18 03435                                      14


Subcontractor Initials

